UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:00 cv 637 |
| | ) | |
| DANIEL GREEN, et al., | ) | Judge Susan J. Dlott |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE
THIRD AMENDED COMPLAINT
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Pursuant to Rules 15(a), 19, and 21 of the Federal Rules of Civil Procedure, the United States seeks leave to file a Third Amended Complaint (a "redlined" version of which is attached hereto as Attachment 1) in order to add Omni Industrial Properties, Inc. ("Omni Industrial") as a Rule 19 defendant. Defendant L.W.G. Co., Inc. ("LWG") and its President, Daniel Green, sought to shield LWG's assets from its environmental liabilities by fraudulently transferring them to Omni Industrial; a holding company owned by Daniel Green's then 27-year old brother, Samuel Green. LWG, while acknowledging its CERCLA liability, now alleges that it has no remaining assets with which to satisfy any judgment against it.[1] LWG's fraudulent transfer should be declared null and void. Thus, as the recipient of LWG's fraudulently transferred assets, the addition of Omni Industrial as a Rule 19 defendant is necessary to the full and fair adjudication of this action. The United States' proposed amendment is made in good faith, in a

---

[1] See Mem. of LWG Co., Inc. in Opp'n to Plaintiff's Motion for Summary Judgment at p.1.

timely manner, and does not unduly prejudice the Defendants. Therefore, this Court should grant the requested leave to amend. See Foman v. Davis, 371 U.S. 178, 182 (1962); Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 519 (6th Cir. 2001).

## BACKGROUND

Daniel Green and Maurice Green owned and operated LWG (then known as Creutz Plating Corp. and Green Industries, Inc.) which operated an electroplating facility at the 3603 East Kemper Road, Sharonville, Hamilton County, Ohio ("Green Industries Site") from 1978-1988. See United States' Mem. in Support of Motion for Partial Summary Judgment Against L.W.G. Co., Inc., Daniel Green, and the Estate of Maurice Green ("US Mtn. Against LWG") at pp. 2-3.[2] During that period there were numerous and varied releases and disposals of hazardous substances at the Site. Id. at pp. 3-9. In 1988, the Greens sold the Green Industries Site to H.R.W. Industries Inc. ("HRW Industries") and changed their company's name to LWG. See United States' Mem. in Support of Motion for Partial Summary Judgment Against Hard Surface Technology as the Successor-In-Liability to L.W.G. Co., Inc. / L.W.G. Finishing Corp. ("US Mtn. Against HST") at pp. 3-4.

In May 1988, using $880,000 from the sale of the Green Industries Site, LWG purchased real property located at 9461 LeSaint Drive, Cincinnati, Ohio ("LeSaint Drive Property"). Dep.

---

[2] In October 2002, the United States filed a Motion for Partial Summary Judgment against L.W.G. Co., Inc., Daniel Green, and the Estate of Maurice Green and a Motion for Partial Summary Judgment against Hard Surface Technology as the Successor-In-Liability to L.W.G. Co., Inc. / L.W.G. Finishing Corp. To date, no decision has been entered on the United States' motions.

of D. Green at p. 296.[3]  Since 1988, the Greens have made repeated efforts to insulate their ongoing business operations from LWG's environmental liabilities.  In 1989, the Greens incorporated Norwood Hard Chrome (later renamed LWG Finishing Corp.) to serve as the operating plating business, while LWG transitioned into a mere holding company of LWG Finishing Corp.'s stock and the LeSaint Drive Property.  See US Mtn. Against HST at p. 4.

During the early 1990s, LWG was a defendant in various lawsuits relating to its environmental liabilities.  In 1991, HRW Industries brought an action alleging, among other things, that LWG had fraudulently concealed various environmental violations at the Green Industries Site.  See US Mtn. Against HST at p. 4.  In September 1993, LWG and Maurice Green plead guilty to the felony of having knowingly failed to evaluate waste generated at the Green Industries Site and disposed of at 1924 Dana Avenue, Cincinnati, Ohio ("Dana Avenue Site"), Ohio Rev. Code § 3734.11.  Id.  Pursuant to a plea agreement with the State of Ohio, LWG was required to clean up the Dana Avenue Site.  Id.

LWG purchased the LeSaint Drive Property with proceeds from the sale of the Green Industries Site and it was not initially encumbered with a mortgage.  See Dep. of D. Green at pp. 298-299.  In September 1991, following entry of judgment against LWG in the HRW Industries lawsuit, LWG and Daniel and Maurice Green in their individual capacities executed a promissory note in the amount of $640,000 with 1st National Bank in order to secure a bond for appeal.  See Attachment 2; Dep. of D. Green at p. 299.  Daniel Green testified that the $640,000 was later transferred to HRW Industries as part of a settlement.  See Dep. of D. Green at p. 299.

---

[3]     In October 2002, the United States filed the complete deposition of Daniel Green with the Court.

In early 1994, following LWG's guilty plea regarding environmental violations relating to the Green Industries and Dana Avenue Sites, the Greens sought to make LWG effectively judgment proof by transferring its remaining assets to companies affiliated with Green family members.  In January 1994, Daniel Green, then President of both LWG and LWG Finishing, incorporated Hard Surface Technology, Inc. ("HST") and subsequently transferred all of LWG Finishing's business assets to HST.  This transaction rendered LWG's ownership of LWG Finishing's stock valueless.  See U.S. Mtn. Against HST at p. 6.

Then, in April 1994, LWG divested itself of its sole remaining asset, the LeSaint Drive Property, through a "Purchase and Sale Agreement" with Omni Industrial.  See Attachment 2.  Samuel Green, Daniel Green's then 27 year-old brother, had incorporated Omni Industrial shortly before the sale as an apparent vehicle for the transfer of the LeSaint Drive Property.  See Dep. of D. Green at pp. 305, 307.

Omni Industrial "paid" for the LeSaint Drive Property by assuming LWG's mortgage.  The 1st National Bank, however, refused to release Daniel Green or Maurice Green from the mortgage, because it determined that Omni Industrial lacked sufficient financial strength to obtain the loan itself.  See Dep. of D. Green at pp. 309-310.  Likewise the bank required HST to deposit its "rent" into an Omni Industrial savings account from which automatic payment of the monthly mortgage amount would occur.  See Attachment 2; Dep. of D. Green at p. 311.  While Daniel Green remained personally liable for the mortgage on the LeSaint Drive Property and continued to make the requisite payments using HST funds, ownership of the property had passed to his brother's company, and LWG was effectively judgment proof.

**ARGUMENT**

In accordance with Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should, as the rules require, be freely given". Foman, 371 U.S. at 182. The United States Court of Appeals for the Sixth Circuit has emphasized a "liberality in allowing amendments to a complaint." Janikowski v. Bendix Corp., 823 F.2d 945, 951 (6th Cir. 1987). Leave to amend should be granted absent a showing that the amendment would be futile, the moving party has acted in bad faith, the opposing party would be subjected to unfair prejudice, or the moving party has unduly delayed in seeking the amendment. See In re Southdown, Inc., Litigation, 104 F. Supp.2d 765, 767 (S.D. Ohio, 1999). As none of the above elements are present here, the United States' motion should be granted.

A plaintiff should be granted leave to amend its complaint so as to include entities whom newly discovered evidence identifies as proper parties to the litigation. See Southdown, 104 F. Supp.2d at 766-767 (granting leave to amend complaint to add two successor-in-liability defendants in Clean Water Act matter). The Sixth Circuit has held that "delay that is not intended to harass the defendant is not in itself a permissible reason to refuse leave to amend." Janikowski, 823 F.2d at 951. Frequently the need to amend may not appear until after some discovery is completed.

For example, in Donovan v. Gillmor, 535 F. Supp. 154 (S.D. Ohio 1982), the District Court allowed the plaintiff to amend his complaint to add new defendants some two years after the matter was originally filed, when information supporting plaintiff's new allegations had been obtained through discovery responses. Donovan 535 F. Supp. at 156-157. Here too, the United States seeks to add a defendant whose liability was only made clear through discovery.

On February 12, 2002, subsequent to the filing of the United States' Second Amended Complaint, the United States took the deposition of defendant Daniel Green. It was only during this deposition that the United States discovered the details of the transfer of the ownership of the LeSaint Drive Property from LWG to Omni Industrial. Prior to Daniel Green's deposition, the United States lacked sufficient evidence to require Omni Industrial's participation in this action. Now that the insider nature of this transaction has been exposed, however, it is clear that Omni Industrial should be added as a Rule 19 defendant so that it might have the opportunity to participate in litigation regarding whether its acquisition of the LeSaint Drive Property constituted a fraudulent transfer.[4]

A motion for leave to amend a complaint should not be denied absent "some significant showing of prejudice to the opponent." Janikowski, 823 F.2d at 951. Neither Omni Industrial nor the current Defendants would be prejudiced by the addition of Omni Industrial as a Rule 19 defendant at this stage of the litigation. Under the Case Management Order entered by the Court on March 14, 2001, this matter has been divided into three phases - Phase I (liability), Phase II (costs), and Phase III (assets) - with issues relating to fraudulent transfers reserved to Phase III. Case Management Order at 4. Omni Industrial's interest in this litigation is limited to Phase III, which has yet to commence. Thus, Omni Industrial will in no way be prejudiced by its being

---

[4] Federal Rule of Civil Procedure 19(a) provides for joinder where "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . impair or impede the person's ability to protect that interest . . . ." Here the United States is alleging that LWG fraudulently transferred the LeSaint Drive Property to Omni Industrial and requests that the Court void such transfer, returning the property to LWG. Thus, Omni Industrial should be joined as a party so it may seek to protect its interest in the property and to provide for complete relief if the United States prevails in this action.

6

added to the litigation at this date. Omni Industrial will have a full opportunity to defend its transaction with LWG and seek to protect its ownership of LWG's transferred assets.

Nor is there a question as to the potential "futility" of the United States' proposed amendment. The conveyance of the LeSaint Drive Property from LWG to Omni Industrial constitutes a fraudulent transfer under Section 3304(b)(1)(A) of the Federal Debt Collections Procedures Act, 28 U.S.C. § 3304(b)(1)(A). This Section provides in pertinent part that:

> [A] transfer made . . . by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made . . . if the debtor makes the transfer . . . (A) with actual intent to hinder, delay, or defraud a creditor . . . .

Section 3304(b)(2) provides a list of factors to which consideration should be given in determining whether the requisite "intent" existed. These include:

(A)   the transfer . . . was to an insider,

(B)   the debtor retained possession or control of the property transferred after the transfer, . . .

(D)   before the transfer was made . . ., the debtor had been sued or threatened with suit,

(E)   the transfer was of substantially all the debtor's assets, . . .

(H)   the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred . . . ,

(I)   the debtor . . . became insolvent shortly after the transfer was made . . .,

(J)   the transfer occurred shortly before . . . a substantial debt was incurred . . .

The transfer of the LeSaint Drive Property meets the criteria of Section 3304(b)(1)(A). As of April 1994, the Greens were well aware that they had environmental liabilities associated

with LWG's operation of the Green Industries Site, including EPA's involvement in the State of Ohio's 1993 prosecution of LWG and Maurice Green for the felony of having knowingly failed to evaluate waste generated at the Green Industries Site and disposed of at the Dana Avenue Site. Recognizing that it was only a matter of time before LWG would be required to pay for at least a portion of the eventual remediation of the Site, the Greens transferred the LeSaint Drive Property with the intent of defrauding its environmental creditors.

Such intent is clear by looking at the statutory hallmarks of a fraudulent transfer set forth in FDCPA Section 3304(b)(2)(B). The LeSaint Drive Property was transferred to an "insider" in Samuel Green (Daniel Green's brother / Maurice Green's younger son). The Green's operating company, LWG Finishing/HST, continued to operate at the property and pay the mortgage with "rent" to the holding company.[5] Moreover, this transaction effectively left LWG without any assets with which it could pay its environmental liabilities.

The addition of Omni Industrial is timely, will not prejudice the interests of any party, and is necessary to the full and fair adjudication of this action. Information obtained during discovery demonstrates persuasively that LWG's "sale" of the LeSaint Drive Property constituted a fraudulent transfer that should be voided. As a participant in the fraudulent transfer and the current owner of the LeSaint Drive Property, Omni Industrial's presence in the litigation is essential to ensure full relief.

---

[5] The actions of 1st National Bank are particularly telling as to the suspect nature of the transfer. The bank only agreed to replace LWG on the mortgage with Omni Industrial if Omni Industrial opened a savings account at the bank, HST agreed to deposit its rent directly into that account, and Omni Industrial authorized automatic payment of the mortgage from that account. Even with such an arrangement, the bank still refused to release Maurice and Daniel Green from their personal liability under the mortgage.

## CONCLUSION

For the reasons stated above, the United States' Motion for Leave to File Third Amended Complaint should be granted.

                                                    Respectfully submitted,

Dated: February 9, 2004              THOMAS L. SANSONNETTI
                                                    Assistant Attorney General
                                                    Environment and Natural Resources Division
                                                    United States Department of Justice


                                                    _____/s/_____
                                                    JEFFREY A. SPECTOR
                                                    Trial Attorney
                                                    Environmental Enforcement Section
                                                    Environment and Natural Resources Division
                                                    U.S. Department of Justice
                                                    P.O. Box 76ll
                                                    Washington, D.C.  20044-7611
                                                    Tel: (202) 514-4432
                                                    Fax: (202) 616-6584

                                                    GREGORY G. LOCKHART
                                                    United States Attorney
                                                    GERALD F. KAMINSKI (OO12532)
                                                    Deputy Civil Chief
                                                    Office of the United States Attorney
                                                    221 East Fourth Street, Suite 400,
                                                    Cincinnati, OH  45202
                                                    Tel:  (513) 684-3711
                                                    Fax:  (513) 684-6710

OF COUNSEL:

RICHARD R. WAGNER
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL   60604
(312) 886-7947

## **CERTIFICATE OF SERVICE**

      I, Jeffrey A. Spector, an attorney, certify that on February 9, 2004 I caused a true and correct copy of the attached **PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF** to be served via overnight delivery to:

> David A. Owen
> GREENEBAUM DOLL
>  & MCDONALD PLLC
> 333 West Vine Street, Suite 1400
> Lexington, Kentucky 40507-1665
>
> David J. Schmitt
> CORS & BASSETT
> 537 East Pete Rose Way
> Cincinnati, Ohio 45202

                                      /s/
                              Jeffrey A. Spector