UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>  Plaintiff, )<br>)<br>      v. )<br>)<br>DANIEL GREEN, L.W.G. CO., )<br>INC. f/k/a GREEN INDUSTRIES, )<br>INC., THE ESTATE OF MAURICE )<br>GREEN, DANIEL GREEN IN HIS )<br>CAPACITY AS THE PERSONAL )<br>REPRESENTATIVE OF THE ESTATE )<br>OF MAURICE GREEN, and HARD )<br>SURFACE TECHNOLOGY, INC. )<br>)<br>  Defendants, )<br>)<br>and )<br>)<br>SAUNDRA GREEN, wife of )<br>DEFENDANT DANIEL GREEN, ~~—~~ and )<br>OMNI INDUSTRIAL PROPERTIES, )<br>INC., )<br>)<br>  Rule 19 Defendant**s**. ~~——~~  ) | Civil Action No. 1:00cv637 |

### ~~SECON~~**THIR**D AMENDED COMPLAINT

The United States of America, by and through the undersigned attorneys, by authority of the Attorney General of the United States and acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this claim and alleges that:

**STATEMENT OF THE CASE**

1. This is a civil action for recovery of costs brought pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), and pursuant to Sections 3304 and 3306 of the Federal Debt Collections Procedure Act, 28 U.S.C. §§ 3304 and 3306.  In this action, the United States seeks to recover costs incurred in conducting response actions pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, in response to the release or threatened release of hazardous substances at a site formerly owned by Green Industries, Inc., located at 3603 East Kemper Road in Sharonsville, Hamilton County, Ohio ("the Site").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b) and (c) because the release or threatened release of hazardous substances that gave rise to the United States' claims occurred in this district and the Site is located in this district.

**DEFENDANTS**

4. Daniel Green is an individual who resides in the State of Ohio.

5. L.W.G. Co., Inc., formerly known as Green Industries, Inc., is a corporation organized under the laws of the State of Ohio.

6. Hard Surface Technology, Inc. is a corporation organized under the laws of the State of Ohio and, on information and belief, is the successor-in-liability to L.W.G. Co., Inc.

7. Maurice Green was an individual who resided in the State of Ohio. On information and belief, Maurice Green died on December 29, 1999, and his estate was admitted to probate in the Probate Court of Butler County, Ohio on April 11, 2000.

8. Daniel Green is the personal representative of the Estate of Maurice Green.

9. Each of the above referenced defendants is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**RULE 19 DEFENDANTS**

10. Saundra Green is an individual who resides in the State of Ohio.

11. At all times relevant to the allegations in this complaint, Saundra Green has been the wife of defendant Daniel Green.

12. On information and belief, Saundra Green is an individual without whom complete relief cannot be afforded in this action.

13. On information and belief, the disposition of this action in the absence of Saundra Green may impair or impede her ability to protect her interests in certain assets, including banking accounts, investment accounts, stocks, bonds, cash and real property, that were transferred to her by defendant Daniel Green.

14. Omni Industrial Properties, Inc. is a corporation organized under the laws of the State of Ohio.

15. On information and belief, Omni Industrial Properties, Inc. is an entity without whom complete relief cannot be afforded in this action.

16. On information and belief, the disposition of this action in the absence of Omni Industrial Properties, Inc. may impair or impede its ability to protect its interest in certain real property that was transferred to it by defendant L.W.G. Co., Inc.

**GENERAL FACTUAL ALLEGATIONS**

17. The Site is a former electroplating and metal finishing facility located at 3603 East Kemper Road, Sharonsville, Hamilton County, Ohio.

**A.   Ownership of the Site**

18.   In 1978, Defendant Maurice Green purchased the Site.

19.   Between 1981 and 1985, Maurice Green transferred ownership of the Site to Creutz Plating Corporation.  Maurice Green was an Owner, Chairman of the Board and Corporate Officer of Creutz Plating Corporation.

20.   On May 15, 1987, Creutz Plating Corporation was merged into Green Industries, Inc.  As a result of this merger, Green Industries, Inc., became the owner of the Site.  By virtue of this merger, Green Industries, Inc., also assumed the liabilities of Creutz Plating Corporation.

21.   On May 1, 1988, Green Industries, Inc., sold the Site to H.R.W. Industries Inc.

22.   On June 3, 1988, Green Industries, Inc., changed its name to LWG Co., Inc.

**B.   Operations at the Site**

23.   From approximately 1978 to 1988, several corporations, including Creutz Plating Corporation and Green Industries, Inc., conducted electroplating and metal finishing operations at the Site.

24.   The electroplating and metal finishing operations conducted at the Site by Green Industries, Inc., and other defendants used materials that contained, among other things, cyanide, chromium, cadmium, zinc, nickel, and chromic acid.

25. The electroplating and metal finishing operations conducted at the Site by Green Industries, Inc., and other defendants generated waste materials that contained, among other things, cyanide, chromium, cadmium, zinc, nickel, and chromic acid.

26. The waste materials generated by the electroplating and metal finishing operations conducted at the Site by Green Industries, Inc., and other defendants contained "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including, among others, cyanide, chromium, cadmium, zinc, nickel, and chromic acid.

27. The waste materials generated by the electroplating and metal finishing operations of Green Industries, Inc., and other defendants were disposed of by, among other methods, being dumped into an open pit at the Site. Waste materials were also discharged into the sanitary sewer system at the Site. In addition, waste materials from the electroplating and metal finishing operations of Green Industries, Inc., and others were placed in floor pits and sumps at the facility, and numerous tanks, drums and vats, from which the waste materials leaked, spilled, leached or otherwise escaped into the environment at the Site.

28. There were "releases" of hazardous substances into the environment at the Site within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

29. The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

30. From approximately 1978 to 1988, Maurice Green controlled and directed the activities of at least some of the companies conducting electroplating and metal finishing operations at the Site, including Green Industries, Inc.

31. Maurice Green made day-to-day operational decisions for Creutz Plating Corporation and Green Industries, Inc., including decisions regarding environmental matters, such as how to handle and dispose of wastes from electroplating and metal finishing operations.

32. On March 18, 1986, Green Industries, Inc., Creutz Plating Corporation and Maurice Green pleaded No Contest in the Criminal Division of the Court of Common Pleas in Hamilton County, Ohio, to two counts of Unlawful Disposal of Hazardous Wastes at the Site in violation of 3734.02(F) and 3734.99 of the Ohio Revised Code, and one count of Operation of an Unpermitted Hazardous Waste Disposal Facility at the Site in violation of 3734.02(E) and 3734.99 of the Ohio Revised Code.

33. As he admitted in his plea agreement, Maurice Green, as Owner and Chairman of the Board of Green Industries, Inc., and

Creutz Plating Corporation, had personal knowledge of and approved of employees disposing of hazardous waste by dumping it into a pit that had been constructed at the Site for this purpose.

34. Maurice Green so controlled and dominated the daily activities of Green Industries, Inc., and Creutz Plating Corporation that those entities were in essence his alter-egos. Among other things, Green Industries, Inc. and Creutz Plating Corporation failed to observe corporate formalities, and corporate funds were diverted for the personal use of Maurice Green.

35. From approximately 1978 to 1988, Daniel Green controlled and directed the activities of at least some of the companies conducting electroplating and metal finishing operations at the Site, including Green Industries, Inc.

36. Daniel Green made day-to-day operational decisions for Green Industries, Inc., including decisions regarding environmental matters, such as how to handle and dispose of wastes from electroplating and metal finishing operations.

37. Daniel Green so controlled and dominated the daily activities of L.W.G. Co., Inc., f/k/a Green Industries, Inc., that that entity was in essence his alter-ego. Among other things, L.W.G. Co., Inc., f/k/a/ Green Industries, Inc., failed

to observe corporate formalities, and corporate funds were diverted for the personal use of Daniel Green.

**C.     Transfer of Assets**

38.  In approximately 1990, Daniel Green transferred assets within the meaning of Sections 3301(2) and 3301(6) of the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3301(2) and 3301(6), including but not limited to the transfer of approximately $200,000 into Saundra Green's account, the transfer of title to Daniel Green's house and car to Saundra Green, the transfer of approximately $100,000 to $150,000 of stock in Afton Development Corp. to Saundra Green, and the transfer of a formerly joint account worth approximately $500,000 into Saundra Green's name. Repayments on a $100,000 loan Daniel Green made to a business partner in Afton Development Corp. were also paid to Saundra Green.  On information and belief, Daniel Green may have transferred additional assets within the meaning of Sections 3301(2) and 3301(6) of the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3301(2) and 3301(6), that will subsequently be discovered during the pendency of this action.

39.  The transfers of assets described in paragraph 348 above were made at a time when Daniel Green knew or should have known that he may be held liable for costs incurred by the United States in the cleanup of the Site.

40. In approximately 1994, L.W.G. Co., Inc. transferred assets within the meaning of Sections 3301(2) and 3301(6) of the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3301(2) and 3301(6), to Omni Industrial Properties, Inc., including, but not necessarily limited to, the transfer of real property located at 9461 Le Saint Drive, Fairfield, Ohio.

41. The transfer of assets described in paragraph 40 above was made at a time when L.W.G. Co., Inc. knew or should have known that it might be held liable for costs incurred by the United States in the cleanup of the Site.

**D.  Successor-In-Liability**

42. In 1993, Daniel Green was a Director of LWG Co., Inc. and also served as its President and Treasurer. Upon information and belief, in 1993, Daniel Green owned 2/3 of LWG Co., Inc.'s stock, with his father, Maurice Green, owning the remaining 1/3.

43. On December 30, 1993, Articles of Incorporation were filed on behalf of Hard Surface Technology, Inc., identifying Daniel Green as the Incorporator and Statutory Agent for Hard Surface Technology, Inc. On January 6, 1994, the State of Ohio issued a Certificate of Incorporation for Hard Surface Technology, Inc.

44. On January 6, 1994, Daniel Green was issued 80 shares of Hard Surface Technology stock, which constituted 80% of the company. Since 1994 Daniel Green has been a Director of Hard

Surface Technology, Inc. and has also served as its President from 1994 through the present.

45. Upon information and belief, in early 1994, LWG Co. sold all of its assets to Hard Surface Technology and ceased operations. Upon information and belief, Hard Surface Technology continued the previous business activities of LWG Co.; continued to use the LWG Co. business name; continued to use the same facility located at 9461 Le Saint Drive, Cincinnati, Ohio; and retained LWG Co.'s workforce and supervisory and corporate personnel.

46. The asset transfer from LWG Co. to Hard Surface Technology amounts to a *de facto* consolidation or merger. Hard Surface Technology is merely a continuation of LWG Co. There was a substantial continuity from LWG Co. to Hard Surface Technology.

**E.    Removal Activities**

47. EPA responded to the release or threatened release hazardous substances at the Site by conducting, among other activities, a Site Assessment/Removal Evaluation at the Site in December 1995.

48. Between March 18, 1996 and August 21, 1997, EPA conducted a number of response activities at the Site, including identifying and properly disposing of electroplating process wastes and other hazardous substances stored in vats, drums, tanks and floor sumps, decontaminating buildings and waste

11

containers, excavating and disposing of soils contaminated with hazardous substances and removing contaminated sewer lines from the property.

49. EPA's actions at the Site, as described in paragraphs 4~~2~~7 and 4~~3~~8 above, constitute "response" actions within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

50. In undertaking response actions to address the release or threat of release of hazardous substances at the Site, the United States incurred response costs in excess of $3,000,000.00 within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25). The United States continues to incur response costs within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

51. The response actions taken and the response costs incurred by the United States at the Site were not inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), which was promulgated pursuant to Section 105(a) of CERCLA and is codified at 40 C.F.R. Part 300.

52. Defendants have not reimbursed the United States for the response costs the United States incurred, and continues to incur, for response actions taken at the Site.

### CLAIM FOR RELIEF

53. Paragraphs 1 through ~~47~~52 are re-alleged and incorporated herein.

54. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, in pertinent part, as follows:

> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,. . .
>
> shall be liable for
>
> (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan . . .
>
> The amounts recoverable in an action under this section shall include interest on the amounts recovered under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned. The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is specified for interest on investments of the Hazardous Substance Superfund established under sub-chapter A of chapter 98 of Title 26.

55. Defendant Daniel Green was an operator of the Site at the time of disposal of hazardous substances.

56. Defendant Daniel Green was an alter ego of L.W.G. Co., Inc., f/k/a Green Industries, Inc.

57. Daniel Green so dominated and controlled the daily operations of defendant L.W.G. Co., Inc., f/k/a Green Industries, Inc., that recognizing the separate corporate existence of defendant L.W.G. Co., Inc. would result in an injustice, and therefore this Court should pierce the corporate veil and hold Daniel Green liable for the liabilities of L.W.G. Co., Inc.,

f/k/a Green Industries, Inc., to the United States under Section 107 of CERCLA.

58. Defendant L.W.G. Co., Inc., f/k/a Green Industries, Inc., was an owner and operator of the Site at the time of disposal of hazardous substances.

59. Hard Surface Technology, Inc. is a successor-in-liability to L.W.G. Co., Inc.

60. Maurice Green was an owner and operator of the Site at the time of disposal of hazardous substances.

61. Maurice Green so dominated and controlled the daily operations of defendant L.W.G. Co., Inc., f/k/a Green Industries, Inc., that recognizing the separate corporate existence of defendant L.W.G. Co., Inc. would result in an injustice, and therefore this Court should pierce the corporate veil and hold Maurice Green to have been liable for the liabilities of L.W.G. Co., Inc., f/k/a Green Industries, Inc., to the United States under Section 107 of CERCLA.

62. Defendants, Daniel Green, L.W.G. Co., Inc., f/k/a/ Green Industries, Inc., the Estate of Maurice Green, and Daniel Green in his capacity as the personal representative of the Estate of Maurice Green, are jointly and severally liable to the United States pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all costs of response actions, including enforcement costs, incurred by the United States in connection

with the release of hazardous substances at the Site, and interest as provided for in that provision.

63. The amount owing to the United States for response costs incurred in connection with the Site constitutes a debt within the meaning of Section 3002(3) of the Federal Debt Collection Procedure Act, 28 U.S.C. § 3002(3), and the Defendants in this action are debtors within the meaning of Section 3002(4) of the Federal Debt Collection Procedure Act, 28 U.S.C. § 3002(4).

64. On information and belief, Daniel Green ~~and~~ L.W.G. Co., Inc. made the transfers of assets described in paragraph~~s~~ 3~~5~~ ~~above~~8 and 40, respectively, with actual intent to hinder, delay, or defraud the United States, within the meaning of Section 3304(b)(1)(A) of the Federal Debt Procedures Act, 28 U.S.C. § 3304(b)(1)(A).

65. On information and belief, Daniel Green and L.W.G. Co., Inc. made the transfers of assets described in paragraph 35 above 8 and 40, respectively, without receiving a reasonably equivalent value within the meaning of Section 3304(b)(1)(B) of the Federal Debt Procedures Act, 28 U.S.C. § 3304(b)(1)(B).

66. The transfers of assets described in paragraphs 38 and 40 above were made at a time when Daniel Green and L.W.G. Co., Inc., respectively, believed or reasonably should have believed that they would incur debts beyond their ability to

15

pay as they became due, within the meaning of Section 3304(b)(1)(B)(ii) of the Federal Debt Procedures Act, 28 U.S.C. § 3304(b)(1)(B)(ii).

67. By reason of the foregoing, the transfers of assets described in paragraphs 38 and 40 above are fraudulent within the meaning of Section 3304(b) of the Federal Debt Collections Procedure Act, 28 U.S.C. § 3304(b), with respect to respective debts of Daniel Green and L.W.G. Co., Inc. to the United States for the response costs incurred in connection with the Site.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, respectfully requests that the Court:

1. Order Defendants, jointly and severally, to reimburse the United States for all costs of the response actions taken at the Site, including interest, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a);

2. Enter a declaratory judgment that Defendants are liable for all future response costs incurred by the United States in connection with the Site pursuant to CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2);

3. Pierce the corporate veil to hold Maurice Green to have been liable for the debts and liabilities of L.W.G. Co., Inc., f/k/a Green Industries, Inc., and pierce the corporate veil to

16

hold Daniel Green liable for the debts and liabilities of L.W.G. Co., Inc.;

4. Hold Hard Surface Technology, Inc. liable for the debts and liabilities of L.W.G. Co., Inc. as its successor-in-liability;

5. Enter a declaratory judgment, pursuant to Section 3306(a) of the Federal Debt Collection Procedure Act, 28 U.S.C. § 3306(a), that transfers of assets from Daniel Green described in paragraph 3~~5~~8 above were fraudulent conveyances with respect to Daniel Green's debt to the United States and therefore the transfers are null and void to the extent necessary to satisfy Daniel Green's debt to the United States;

6. Award the United States a remedy pursuant to Section 3306(a) of the Federal Debt Collection Procedure Act, 28 U.S.C. § 3306(a), against the assets transferred or other property of the transferee necessary to satisfy Daniel Green's debt to the United States;

    <u>7.  Enter a declaratory judgment, pursuant to Section 3306(a) of the Federal Debt Collection Procedure Act, 28 U.S.C. § 3306(a), that transfers of assets from L.W.G. Co., Inc. described in paragraph 40 above were fraudulent conveyances with respect to L.W.G. Co., Inc.'s debt to the United States and therefore the transfers are null and void to the extent necessary to satisfy L.W.G. Co., Inc.'s debt to the United States;</u>

    <u>8.  Award the United States a remedy pursuant to Section 3306(a) of the Federal Debt Collection Procedure Act, 28 U.S.C. § 3306(a), against the assets transferred or other property of the transferee necessary to satisfy L.W.G. Co., Inc.'s debt to the United States;</u>

    7.  Award the United States its costs in this action; and

    8.  Award other relief as this Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES

THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural
  Resources Division

BRUCE S. GELBER
~~Principal Deputy~~ Chief
Environmental Enforcement Section
Environment and Natural Resources
  Division

```
                              _____
                              JEFFREY A. SPECTOR
                              STACEY H. O'BRYAN
                              Trial Attorney
                              Environmental Enforcement Section
                              Environment and Natural Resources
                                 Division
                              U.S. Department of Justice
                              Ben Franklin Station, PO Box 7611
                              Washington, DC 20044
                              Tel:  (202) 514-4432
                              Fax:  (202) 616-6584

                              GREGORY G. LOCKHART
                              United States Attorney
                              Southern District of Ohio
                              GERALD F. KAMINSKI (OO12532)
                              Deputy Civil Chief
                              Office of the United States Attorney
                              221 East Fourth Street, Suite 400,
                              Cincinnati, OH  45202
                              Tel:  (513) 684-3711
                              Fax:  (513) 684-6710
```

OF COUNSEL:

RICHARD R. WAGNER
Associate Regional Counsel
U.S. Environmental Protection
   Agency-Region 5
77 West Jackson Blvd.
Chicago, IL 60604
Tel: (312) 886-7947
Fax: (312) 886-0747

19