UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. C-1-00-637 |
| v. | ) | |
| | ) | |
| DANIEL GREEN, L.W.G. CO., | ) | |
| INC. f/k/a GREEN INDUSTRIES | ) | Judge Susan J. Dlott |
| INC., THE ESTATE OF MAURICE GREEN | ) | |
| and DANIEL GREEN IN HIS CAPACITY AS | ) | |
| THE PERSONAL REPRESENTATIVE OF THE | ) | |
| ESTATE OF MAURICE GREEN, | ) | |
| | ) | |
| Defendants | ) | |
| and | ) | |
| | ) | |
| SAUNDRA GREEN, wife of | ) | |
| DEFENDANT DANIEL GREEN, | ) | |
| | ) | |
| Rule 19 Defendant. | ) | |

\* \* \* \* \* \* \* \* \* \*

**OPPOSITION TO PLAINTIFF'S MOTION
FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**
\* \* \* \* \* \* \* \* \* \*

Defendants, Daniel Green, L.W.G. Co. Inc. f/k/a Green Industries Inc. ("L.W.G.") and Hard

Surface Technology, Inc. ("HST") submit this response in opposition to the United States' motion

for leave to file a third amended Complaint in this action adding Omni Properties, Inc. ("Omni

Properties") as a Rule 19 party Defendant.

### INTRODUCTION

Will this never end? Plaintiff filed this Motion to name yet another individual related to

Maurice Green more than three years after this case was filed, months after dispositive motions on

the underlying liability claims have been submitted to the Court, and a decade after the United States

first had information about this very transaction. To say that the motion is not tendered in good faith, is untimely, and would give rise to a futile amendment not able to withstand a motion to dismiss is a colossal understatement. The United States' motion for leave should be denied.

Omni Properties does not and has not ever owned, operated at, held any interest in, or otherwise been affiliated with the property that is the subject of this CERCLA cost recovery action. Omni Properties purchased from LWG a piece of real estate wholly unrelated to this action in 1994, six years after LWG sold to HRW Industries, Inc. ("HRW Industries") the property that is the subject of this action. The United States' efforts to drag Omni Properties into this litigation, despite its complete lack of involvement with the subject of this case, is completely without basis.

If looked at in a vacuum, one might conclude that the United States' motion resulted merely from undue delay. A review of the United States' prior actions in this case indicate more. In similar fashion to the character attack on Saundra Green effectively alleging that she is dishonest, the United States now attempts to embarrass and interfere with Samuel Green's ability to conduct business by naming him in this suit. Incredibly, this is done a decade after the United States knew that the property in question had been sold to Omni Properties, and more than one year after the most recent discovery act was taken in this case. The only possible motive for this motion is to continue to harass the relatives of Maurice Green in an effort to force them to come to an inequitable compromise. That will not happen. This motion should be denied and this entire case should be dismissed.

## COUNTER STATEMENT OF THE FACTS

In 1978, Creutz Plating, Maurice Green's company, purchased the real property that is the subject of this litigation, 3603 Kemper Road, Sharonville, Ohio (the "Kemper Road Site" or "Site").

2

From 1981 to May 1988, LWG owned and operated a chrome plating business at the Kemper Road

Site. By Purchase and Sale Agreement dated May 1, 1988, HRW Industries purchased the Kemper

Road Site from LWG, continuing to operate it as a chrome plating business under the name Green

Industries Corporation until it abandoned the facility in 1995. (Exhibit A to HST Mem. in Supp. of

Motion for S.J., Docket Entry No. 44.)

With proceeds from the sale of the Site, LWG purchased real property at 9461 Le Saint

Drive, Fairfield, Ohio (See Exhibit B to HST Mem. in Supp. of Motion for S.J., Docket Entry No.

44) which it leased in parcels to several of Maurice Green's companies including Stamping

Technologies and LWG Finishing f/k/a/ Norwood Hard Chrome. (HST Mem. in Supp. of Motion

for S.J., Docket Entry No. 44 at p. 4.) By Purchase and Sale Agreement dated April of 1994, LWG

sold its 9461 Le Saint Drive property to Omni Properties, Inc. (United States Mem. in Supp. of

Motion for Leave at Exhibit 2.) That sale was completed after a third party, independent appraiser

assessed the fair market value of the property.

In 1994, just prior to the Kemper Road Site's abandonment by HRW Industries, the Ohio

EPA and U.S. EPA conducted extensive sampling at the Site, reportedly finding hazardous wastes

and materials improperly stored in violation of hazardous waste generation and storage regulations.

Ohio EPA conducted an emergency response removal action with regard to the materials found at

the Site, and subsequently - in December of 1995 - requested U.S. EPA's assistance in conducting

yet a further removal effort at the Site. (December 13, 1995 letter to U.S. EPA Region V from Ohio

EPA, attached as Exhibit G to HST Mem. in Supp. of Motion for S.J., Docket Entry No. 44.) In

December 1995, U.S. EPA conducted a Site Assessment/Removal Evaluation and from March 18,

3

1996 to August 21, 1997, completed the emergency removal clean-up effort at the Site. (Complaint at ¶¶ 42, 43.)

Section 104(e) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") grants U.S. EPA broad authority to enter facilities and/or obtain information regarding potentially responsible parties under CERCLA and hazardous substance releases. 42 U.S.C. §9604(e). By letter dated May 16, 1996, Daniel Green received a CERCLA §104(e) Request for Information from U.S. EPA concerning the Kemper Road Site. (Exhibit H to HST Mem. in Supp. of Motion for S.J., Docket Entry No. 44.) The request sought various information related to Daniel Green's and LWG's ability to pay for the United States' costs associated with its clean-up of the Kemper Road Site. In response, Daniel Green supplied, among other information, LWG's corporate tax returns for various years including 1994 under cover letter dated June 12, 1996. (Exhibit I to HST Mem. in Supp. of Motion for S.J., Docket Entry No. 44.) LWG's 1994 Corporate Tax Return expressly listed the sale of the 9461 Le Saint Drive building for a sales price of $612,043 as occurring in that year. (See Excerpt of June 12, 1996 submittal to U.S. EPA at Exhibit A, Document Bate Stamp No. LWG101501.)

Later, on November 22, 1996, in connection with an unrelated criminal investigation, Daniel Green was interviewed in a proffer session at the United States Courthouse in Cincinnati, Ohio. During that session, as documented by a confidential Memorandum Of Interview submitted to the Court by the United States under seal for in camera review on March 15, 2001, Daniel Green notified the U.S. EPA that Omni Properties purchased the 9461 Le Saint Drive building from LWG in 1994 and that Samuel Green, Daniel Green's brother, is "the owner" of Omni Properties. In this litigation, a copy of the LWG/Omni Properties April 1994 Purchase and Sale Agreement was produced to the

4

United States in early February 2002 and Daniel Green was questioned at length regarding the transaction at his deposition that same month. (See Transcript of February 12, 2002 Deposition of Daniel Green, Docket Entry No. 41 at pp. 305-316.)

## PROCEDURAL HISTORY

On August 2, 2000, the United States filed the current CERCLA cost recovery action. The original complaint named LWG, Daniel Green in both his personal capacity and as an officer of LWG, the estate of Maurice Green, and Daniel Green in his capacity of the representative of the estate of Maurice Green and sought to recover costs incurred by U.S. EPA during the March 18, 1996 through August 21, 1997 contamination removal effort conducted at the Kemper Road Site. The United States alleged that each named defendant was an "owner or operator" of the Site at the time hazardous substances were disposed of at the Site as defined in 42 U.S.C. §9607(a), and thus, are jointly and severally liable for response costs incurred by the United States in conducting the clean-up of the Site. By Case Management Order dated March 14, 2001, the Court provided that parties were permitted to amend the pleadings to add additional parties without leave of Court until August 1, 2001. The Order provides that after that date amendment of pleadings to add additional parties "shall be allowed by order of the Court for good cause shown." (Case Management Order, Docket Entry No. 21 (Emphasis added).)

On October 16, 2000, prior to the filing of responsive pleadings, the United States amended its Complaint to add a claim against Saundra Green, Daniel Green's wife, pursuant to the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. §3001 *et seq*., claiming that, in approximately 1990, Daniel Green fraudulently transferred certain assets to his wife. (First Amended Complaint, Docket Entry No. 2 at ¶¶ 34, 35, 51-55.)   On October 17, 2002, Saundra

Green moved for summary judgment on the United States' claim against her on the grounds that said claims were clearly barred by the FDCPA statute of limitations. (Docket Entry No. 42.) As demonstrated in that motion, the United States became aware of subject transfers well outside the FDCPA's two year "knowledge" limitations window, when Daniel Green testified regarding their occurrence in connection with the aforementioned 1996 proffer statement interview with U.S. EPA. Saundra Green's motion is currently pending with the Court.

On January 7, 2002, the United States was granted leave to file a Second Amended Complaint to add HST, claiming it was the successor-in-interest of LWG, and therefore is liable for the liabilities of LWG under CERCLA. (Second Amended Complaint, Docket Entry No. 28 at ¶¶ 6, 37-41.) On October 17, 2002, following the close of discovery, HST moved for summary judgment on the United States' claim on the grounds that it was brought well after CERCLA's three year statute of limitations for actions for recovery of costs associated with CERCLA removal actions. HST's motion is also currently pending with the Court.

Now, and also outside the deadline set forth in the Court's Case Management Order, the United States seeks leave to amend its Complaint yet again, to add Omni Properties as a Rule 19 Defendant. Similar to its claims against Daniel Green's wife, Saundra, the United States alleges that LWG's 1994 sale of its 9461 Le Saint Drive property to Omni Properties was a fraudulent attempt to avoid liabilities associated with the Kemper Road Site in violation of the FDCPA. F.R.C.P. 15(a) and 16(b) require that the United States' motion for leave at this late juncture be denied.

## ARGUMENT

Federal Rule of Civil Procedure 15(a) restricts the amendment of pleadings after a responsive pleading has been served to allow amendments "only by leave of court or by written consent of the

6

adverse party." It is undisputed that leave shall be freely granted when justice so requires. F.R.C.P.

15(a). Nevertheless, where a motion for leave to amend is the result of "undue delay, bad faith or

dilatory motive on the part of the movant" that has the potential to result in prejudice to the

Defendant, leave should be denied. Crawford v. Roane, 53 F.3d 750, 753 (6th Cir. 1995). That is

the case here. The longer the delay, the less prejudice the opposing party is required to show. Debuc

v. Green Oak Township, 312 F.3d 736, 752 (6th Cir. 2002). Here, the United States waited ten years.

It is equally well-settled that leave should be denied where the amendment would be futile. Crawford

v. Roane, 53 F.3d at 753. An amendment is futile where it could not withstand a motion to dismiss.

See Keweenaw Bay Indian Community v. State, 11 F.3d 1341, 1348 (6th Cir. 1993). Again, this is

the current case. Furthermore, as provided for by the Court's March 2001 Case Management Order,

requests for leave to add parties after August 2001 may be granted only where "good cause" is

shown by the movant. See also F.R.C.P. 16 (providing that modification of a case scheduling order

shall be permitted only upon "a showing of good cause.") In this matter, the circumstances compel

denial of the motion.

A.    The United States' Motion is Clearly a Result of Prejudicial Undue Delay and Bad Faith for
      Which the United States Has Offered No Good Cause.

The United States fails to state any cause, much less "good cause," for its undue delay in

seeking to add Omni Properties as a Rule 19 Defendant. Accordingly, its motion for leave must be

denied. The record clearly demonstrates that the United States has had express knowledge of LWG's

sale of its Le Saint Drive property to Omni Properties since at least June 1996 and was reinformed

of facts related to the same in detail in November of 1996 and again twice in February of 2002. (See

infra at pp.4-5.) Despite this, the United States has waited until February 2004, a full ten years since

7

the first time it was notified of the subject transfer and a full two years since the last time it was so notified, to seek leave to amend. The United States offers absolutely no explanation for its delay stating only that it did not know the "details" of the Omni transfer until Daniel Green's deposition in February 2002. (See United States Mem. in Supp. of Motion for Leave at p. 6.) "We didn't obtain this information until discovery in 2002" is not good cause to grant the United States leave to amend in 2004. Plaintiffs' motion must be denied.

The United States argues that even if its delay in seeking leave to amend is undue, Defendants must show that they will suffer prejudice in order to warrant a denial of leave to amend. (United States Motion for Leave at pp. 5-6.) The United States' argument ignores the Court's March 2001 Case Management Order and F.R.C.P. 16(b), which expressly require the United States to show "good cause" for their delay before the Court may grant leave. The recent Sixth Circuit Court of Appeals decision in Leary v. Daeschner, 349 F.3d 888, (6th Cir.2003), is instructive on the interplay between Rule 15(a) and Rule 16(b)'s good cause requirement. There the Court established that, although potential prejudice to the non-moving party is still a relevant consideration, once a scheduling order's amendment deadline passes, a party must first show good cause under Rule 16(b) for the failure to seek leave to amend prior to the expiration of the deadline before a court will consider whether the amendment is proper under Rule 15(a). Id. at 906-909 (affirming denial of motion for leave to amend after scheduling order deadline where movant "gave the district court no excuse for their considerable delay" in seeking the amendment, stating "Plaintiffs were obviously aware of the basis for the claim for many months"); see also Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999) (denying plaintiff's motion for leave to amend, in part, because plaintiff gave no justification for her delay). Here, the United States, which had already raised one

8

FDCPA claim and had been reminded numerous times of the sale of subject property, was obviously well aware of any potential claim it had against Omni Properties for years.  The United States has failed to show any good cause for its extreme delay in seeking leave to amend despite this long held knowledge.

Furthermore, Defendants and Sam Green would clearly suffer potential prejudice as a result of this amendment as it represents yet another in a string of blatant attempts by the United States to harass all who were connected with Maurice Green.[1]  The United States has stopped at nothing: sending threatening letters to any organization that Daniel Green has donated time to – including a soccer club (Exhibit A to Saundra Green's Mem. in Supp. of Motion for S.J., Docket Entry No. 42); naming Daniel Green's wife, Saundra, as a Rule 19 Defendant based on alleged fraudulent transactions occurring more than a decade prior; and naming HST, a company in which Daniel Green was a stockholder but which Maurice Green was not, as the alleged "successor-in-interest" of LWG's liabilities.  Adding yet another Defendant with a tie to Maurice Green under a claim that is clearly time-barred (See infra pp. 10-11) at this late juncture will only serve to further the United States efforts to harass and shame the Green family.  The United States has known of its potential claim against Omni Properties since prior to the inception of this suit.

This claim against Omni will impact Omni's ability to do business and for what - so that the United States can sometime two, three or four years down the road attempt to show that Omni benefitted from an allegedly fraudulent transaction when it purchased property at fair market value, and even then only if the United States can prevail on their underlying claims.  The United States'

---

[1] Maurice Green passed away in 1999. (Complaint at ¶ 7.)

9

motion for leave to amend its Complaint to add Omni Properties should be denied on the grounds

of undue prejudicial delay for which no good cause has been shown.

B.      Granting the United States' Leave to Amend is Clearly Futile As Any Claim Against Omni
        Properties is Clearly Time-Barred.

        Regardless, an amendment adding a claim against Omni Properties would be futile as it could

not withstand a motion to dismiss.  On pages 7 through 8 of the memorandum in support of its

motion, the United States argues that its amendment adding Omni Properties would not be futile,

pointing to the elements of a claim under the FDCPA and drawing unsupported assumptions from

Samuel Green's position with Omni Properties.  In so arguing, the United States completely ignored

the statute of limitations issue that is surrounding its virtually identical claim against Saundra Green.

(See Saundra Green Motion for S.J., Docket Entry No. 42.)

        The FDCPA contains the following statute of limitations:

                A claim for relief with respect to a fraudulent transfer or obligation
                under this subchapter is extinguished unless the action is brought -

                (1) under section 3304(b)(1)(A) within 6 years after the transfer was
                made . . . or, if later, within 2 years after the transfer or obligation was
                or could reasonably have been discovered by the claimant;

                (2) under subsection . . . b(1)(B) of section 3304 within 6 years after
                the transfer was made . . . .

28 U.S.C. § 3306(b).  The United States' proposed FDCPA claims against Omni Properties include

claims under both Section 3304(b)(1)(A) and (b)(1)(B) of the FDCPA.  (See United States Motion

for Leave at Exhibit A, ¶¶ 64-67.)  Again, it is undisputed that LWG's sale of its Le Saint Drive

property occurred in April 1994, nearly ten years ago and well beyond the above six year limitations

period. (United States Motion for Leave at p. 4.)  Furthermore, as the record clearly establishes, the

10

United States had direct knowledge of the subject transfer in 1996, more than seven years ago. Indeed, even if the knowledge that the United States gained in 1996 is ignored, the United States certainly cannot deny that it had knowledge of the transfer in March 2001, when it submitted the 1996 proffer statement memorandum to this Court for in camera review. Accordingly, the United States clearly had knowledge of the subject transfer more than two years ago and the United States' proposed claims against Omni Properties are plainly time-barred.

Defendants submit that the United States filed the current motion for leave fully aware that its claim against Omni Properties is time-barred, for, as previously mentioned, the FDCPA statute of limitations issue was fully briefed for the Court in Saundra Green's motion for summary judgment on the same grounds. In response to Saundra's Motion for Summary Judgment, the United States argued that, although its claim arose under the FDCPA, the CERCLA, not the FDCPA, statute of limitations applied. (See United States Response to Saundra Green Motion for S.J., Docket Entry No. 54.) Given this prior argument, the United States' motive for the current motion is especially troubling. Indeed, even the CERCLA statute of limitations could not save the United States' claim against Omni Properties, as the applicable CERCLA limitations period expired in August of 2000. (HST Mem. in Support of Motion for S.J. at p. 7; citing 42 U.S.C. §9613(g)(2)(A).)

Furthermore, and even if the CERCLA statute of limitations somehow applied to a FDCPA claim, Sixth Circuit law is well-settled that the United States' proposed claim against Omni Properties would not "relate back" to the date the United States' suit was originally filed under F.R.C.P. 15(c). Sixth Circuit law is clear that an amendment adding a party whose addition is not the result of a mistaken identity and who had no notice within 120 days of the suit's filing of the suit that but for said mistake it would have been named as a party to the action does not relate back to

11

the original filing. (See HST Mem. in Support of Motion for S.J. at pp. 8-12); citing In re Kent

Holland Die Casting & Plating, Inc. v. Lievense Ins., 928 F.2d 1448, 1449 (6th Cir. 1991) (amended

complaint adding insurer to action against broker did not relate back to date of original complaint

for statute of limitations purposes because addition was not the correction of a misnomer, stating "an

amendment which adds a new party creates a new cause of action and there is no relation back to the

original filing for purposes of limitations"); Cox v. Treadway, 75 F.3d 230 (6th Cir. 1996) (complaint

amended to substitute named defendants for "John Does" named in original complaint did not relate

back because amendments adding new parties do not satisfy the "mistaken identity" requirement of

Rule 15(c)(3)(B)); Collyer v. Darling, 98 F.3d 211 (6th Cir. 1996) (amendments adding a party to

an action survive the preclusive effect of the statute of limitations only where the amendments are

"corrections of misnomers"); Shiavone v. Fortune, 477 U.S. 21, 29 (1986) (stating that even in the

case of corrections of misnomers, in order for amended pleading to relate back, added party must

have known or should have known within 120 days from the filing of the original complaint that but

for the mistake it would have been named as a party to the action) and other cases cited therein.

Any claim against Omni Properties, whether couched as a claim under the FDCPA or

CERCLA, is clearly time-barred and thus could not withstand a motion to dismiss by Omni

Properties. For this reason, amendment of the Complaint as sought by the United States would be

futile and accordingly, leave should be denied by the Court. See Parry v. Mohawk Motors of Mich.,

Inc., 236 F.3d 299, 307 (6th Cir. 2000) (affirming denial of leave to amend because amendment

would not have stated a claim for relief); see also Lovelace v. O'Hara, 985 F.2d 847 (6th Cir. 1993)

(affirming denial leave to amend complaint to add additional party after expiration of the applicable

limitations period holding that since amendment was not to correct a misnomer it did not "relate

back" and thus would not withstand a motion to dismiss).

## **CONCLUSION**

For the foregoing reasons, the United States' Motion for Leave to File a Third Amended

Complaint should be denied.

Respectfully submitted,


/s/Philip J. Schworer
Philip J. Schworer (0036982)
Greenebaum Doll & McDonald PLLC
2800 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202-4728

-AND-

David A. Owen
Greenebaum Doll & McDonald PLLC
300 W. Vine Street, Suite 1100
Lexington, Kentucky 40507

COUNSEL FOR DEFENDANTS
DANIEL GREEN, L.W.G. CO. INC.,
AND HARD SURFACE TECHNOLOGY, INC

13

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

W. Benjamin Fisherow
Deputy Chief
Jeffrey A. Spector
Trial Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
Ben Franklin Station,
P.O. Box 7611
Washington, DC 20004

Gregory G. Lockhart
United States Attorney
Southern District of Ohio
Gerald F. Kaminski
Deputy Civil Chief
Office of the United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202

Richard R. Wagner
Associate Regional Counsel
U.S. Environmental Protection Agency-Region 5
77 West Jackson Blvd.
Chicago, IL 60604

David J. Schmitt
Cors & Bassett
537 E. Pete Rose Way
#400
Cincinnati, Ohio 45202

on this 4th day of March, 2004.

/s/ Philip J. Schworer
COUNSEL FOR DEFENDANT

LEX:643974.1

14