UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DANIEL GREEN, et al., )<br>)<br>Defendants. )<br>_____) | Civil Action No. 1:00 cv 637<br><br>Judge Susan J. Dlott |

**REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR LEAVE
TO FILE THIRD AMENDED COMPLAINT**

Defendant LWG Co., Inc. has admitted that if it possessed assets, it would be liable under CERCLA Section 107(a), 42 U.S.C. § 9607(a), for response costs incurred by the United States with regard to the Green Industries Site. See Mem. of LWG Co., Inc. in Opp'n to Pl.'s Mot. for Summ. J. at 1 (Docket No. 52). In February 2002, the United States discovered that LWG had fraudulently transferred one of its most significant assets, the LeSaint Drive Property, to Omni Industrial Properties – a shell company owned by Daniel Green's brother, Samuel Green. The United States now seeks to add Omni Industrial as a Rule 19 defendant and unwind the fraudulent transaction so that the United States may recoup at least a portion of the response costs expended in cleaning up the contaminated Green Industries Site. As the addition of Omni Industrial is timely and works no prejudice upon Omni Industrial or the current defendants, the United States' Motion for Leave to File the Third Amended Complaint should be granted.

Stripped of its innuendo and hyperbole, Defendants' Opposition to the United States' Motion for Leave to File a Third Amended Complaint boils down to the assertion that the United States' effort to add Omni Industrial as a Rule 19 defendant is untimely and, therefore, futile. The United States, however, has asserted that the proposed amendment falls within the statute of limitations period provided under Section 3306(b)(1) of the Federal Debt Collections Procedures Act ("FDCPA"), 28 U.S.C. § 3306(b)(1), in that the United States could not have reasonably discovered the fraudulent conveyance prior to Daniel Green's February 2002 deposition.

More than 50 years ago, Justice Frankfurter recognized that every federal statute of limitation incorporates the equitable doctrine that

> "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."

Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946). Congress explicitly made the traditional "discovery rule" a part of FDCPA Section 3306(b)(1), providing, *inter alia*, that a claim may be brought within two years after a fraudulent transfer was or could reasonably have been discovered by the claimants. 28 U.S.C. § 3306(1). Here, it was not until the February 2002 deposition of Daniel Green that the United States learned the details of the conveyance of the LeSaint Drive Property and the implicitly fraudulent nature of such transfer.

Defendants, however, argue that the statute of limitations has run because the conveyance of the LeSaint Drive Property was referenced in two items provided to the United States more than two years ago: (1) Daniel Green's June 1996 financial submittal to U.S. EPA; and (2) a

Memorandum of Interview memorializing Daniel Green's November 1996 proffer session. Daniel Green's June 1996 financial submittal to U.S. EPA included, among other things, LWG's 1993 Federal Tax Return. This tax return, however, contained but a single line-item regarding the LeSaint Drive Property and failed to even identify the party to whom the property was conveyed. See Ex. A to Opp'n to Pl.'s Mot. for Leave to File Third Am. Compl. at LWG101501. As nothing in LWG's 1993 tax return hinted at the fraudulent nature of the conveyance, disclosure of this document to U.S. EPA did not commence the running of the statute of limitations on the United States' fraudulent transfer claim.

Defendants also rely on a Memorandum of Interview report made by U.S. EPA Criminal Investigation Division Special Agent Nicholas Gillespie memorializing a November 22, 1996 proffer session with Daniel Green.[1] The information provided during the proffer session, however, was incomplete, misleading, and insufficient to trigger the statute of limitations period. In November 1996, Daniel Green informed the United States that (i) Omni Industrial had acquired the LeSaint Drive Property; (ii) Samuel Green owned Omni Industrial, and (iii) Daniel Green paid rent to Omni Industrial on behalf of his finishing company (Hard Surface Technology). See Ex. A at 3. Mr. Green also stated, however, that "neither he, nor his father had any involvement in the deal" and that he may have received $15,000 from the sale – statements which are in direct conflict with the purchase agreement itself. Compare Ex. A at 3 with Attach. 2 to Plaintiff's Mot. for Leave to File Third Am. Compl. ("US Motion to Amend").

---

[1] Despite relying on the Memorandum of Interview for their argument that the United States' motion is untimely, defendants declined to attach a copy of the Memorandum as an exhibit to their Opposition brief. A redacted copy of the Memorandum of Interview is attached hereto as Exhibit A.

Following the proffer session, however, the United States remained unaware of critical facts regarding the conveyance of the property, *i.e.* (i) no money was exchanged in the sale, with Omni Industrial merely taking partial responsibility for the mortgage; (ii) while Omni Industrial replaced LWG on the mortgage, 1st National Bank refused to release Maurice and Daniel Green from their personal liability under the mortgage; and (iii) 1st National Bank required a procedure whereby Omni Industrial established an account with the bank, Daniel Green's metal finishing company made "rent" payments directly into that account, and Omni Industrial authorized automatic withdrawal from that account to pay the mortgage. See Attach. 2 to US Motion to Amend.

Thus, the critical evidence implying to the fraudulent nature of the property conveyance was not imparted to the United States during the proffer session. Rather, Daniel Green concealed such facts by stating that neither he nor his father were involved in the deal – when both executed the loan agreement in both their individual capacities and as officer of LWG – and by indicating that he may have received $15,000 from the sale, when in fact no cash changed hands. The United States could not reasonably have discovered the fraudulent nature of the transaction until the February 2002 deposition of Daniel Green, at which Mr. Green was confronted with a copy of the Purchase and Sale Agreement relating to the conveyance of the LeSaint Drive Property and testified to the details of the transaction.[2]

Defendants further argue that the information provided in the 1996 proffer interview must have disclosed the fraudulent nature of the conveyance to Omni Industrial, because the United

---

[2] As recognized in Defendants' Opposition, Defendants did not provide the United States with a copy of the Purchase and Sale Agreement until the eve of Daniel Green's deposition.

States has acknowledged that information provided during that same interview regarding transfers of assets from Daniel Green to his wife Saundra Green was sufficient to trigger the discovery rule. The distinction, however, between the information provided regarding the conveyance to Omni Industrial as compared to what was disclosed regarding the transfer of funds to Saundra Green is quite striking. Whereas Daniel Green merely provided incomplete and misleading factual information regarding the Omni Industrial transaction (Samuel Green's ownership interest, alleged profit from sale, etc.), with regard to Saundra Green, the Memorandum of Interview states that

> "Green acknowledged that he had hid money from U.S. EPA after learning that he may be held partially responsible for cleanup of the Green Industries site on Kemper Road."[3]

The United States agrees that such an explicit statement is sufficient to trigger the discovery rule. The statements regarding Omni Industrial, however, simply do not rise to the same level and should not be construed as having put the United States on notice of the fraudulent nature of that transfer.[4]

Finally, the United States must take a moment to categorically reject defendants' assertion that the United States motion for leave to amend constitutes harassment of the Green

---

[3]    The memorandum then proceeds to identify the transfers: $200,000 cash, home valued at $200,000, stock valued at $100,000 - $150,000, and a car. Exhibit A at 4.

[4]    Defendants also challenge whether the United States has made the "good cause" showing necessary under the Case Management Order to amend its pleadings after August 1, 2001. Certainly where, as here, a party does not learn of a claim until some discovery has occurred, there is a sufficient showing of good cause for the delay in amending its pleadings. As stated above, the United States did not discover the basis for the proposed fraudulent transfer claim until February 2002, thus precluding the United States from meeting the original deadline of August 2001. See Leary v. Daeschner, 349 F.3d 888, 907 (6th Cir. 2003).

family. As stated above, LWG has ***admitted*** that if it possessed assets, it would be liable under CERCLA Section 107(a), 42 U.S.C. § 9607(a), for response costs incurred by the United States with regard to the Green Industries Site. See Mem. of LWG Co., Inc. in Opp'n to Pl.'s Mot. for Summ. J. at 1. In light of such an admission, certainly nothing could be more appropriate than to determine whether LWG achieved its judgment-proof state through the fraudulent transfer of assets. The appropriateness of this line of inquiry has been borne out by information obtained during discovery showing that LWG (Daniel Green) did in fact fraudulently transfer its primary asset, the LeSaint Drive Property, to Omni Industrial (Samuel Green).[5]

Defendant's further attempt to impugn the United States' motive in filing its motion for leave to amend by contrasting the statute of limitations argument set forth therein with that presented in the United States' Opposition to Saundra Green's Motion for Summary Judgment (Docket No. 54). Despite defendants' innuendo, there is nothing inconsistent in the United States' arguments. As the United States emphasized in its earlier filing, the FDCPA explicitly states that "the Act should be construed to make debt collection easier . . . ." 28 U.S.C. § 3003. Where the FDCPA's statute of limitations would cut off an action to recover a debt owed under CERCLA, the FDCPA's statute of limitations must give way to CERCLA's statute of limitations. See 28 U.S.C. § 3001(b). The converse, however, is likewise true – where the FDCPA's statute of limitations would not preclude an action to recover a debt, there is no need to

---

[5] Indeed, throughout this litigation the United States has focused on the issue of collecting on any judgment entered against defendants LWG and Daniel Green. The Greens have incorporated over a dozen companies and the United States has had to expend significant resources to determine which if any are responsible for the Green entities environmental liabilties as successors-in-liability, alter egos or recipients of fraudulently transferred assets. In October 2000, the United States put these entities on notice that they might be added to the action were the United States to discover evidence indicating that they were liable parties.

6

look beyond the Act to facilitate the United States' collection efforts and FDCPA Section 3306(b), 28 U.S.C. § 3306(b), provides the relevant limitation period. Congress provided that the United States is entitled to utilize the broadest limitations period, whether provided under the FDCPA or other relevant statute, in its effort to collect debts owed to the United States.

For the reasons stated above and in the United States' Motion for Leave to File Third Amended Complaint, the United States' motion should be granted.

Respectfully submitted,

Dated: March 15, 2004

THOMAS L. SANSONNETTI
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


 s/ Jeffrey A. Spector
JEFFREY A. SPECTOR
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-4432
Fax: (202) 616-6584

GREGORY G. LOCKHART
United States Attorney
GERALD F. KAMINSKI (OO12532)
Deputy Civil Chief
Office of the United States Attorney
221 East Fourth Street, Suite 400,
Cincinnati, OH 45202
Tel: (513) 684-3711
Fax: (513) 684-6710

OF COUNSEL:

RICHARD R. WAGNER
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL  60604
(312) 886-7947

## CERTIFICATE OF SERVICE

I, Jeffrey A. Spector, an attorney, certify that on March 15, 2004 I caused a true and correct copy of the attached **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** to be served via first-class mail to:

>David A. Owen
>GREENEBAUM DOLL
>  & MCDONALD PLLC
>333 West Vine Street, Suite 1400
>Lexington, Kentucky 40507-1665
>
>David J. Schmitt
>CORS & BASSETT
>537 East Pete Rose Way
>Cincinnati, Ohio 45202

>_s/ Jeffrey A. Spector_
>Jeffrey A. Spector