UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO - WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|       Plaintiff, | ) | Civil Action No. 1:00 cv 637 |
| | ) | |
| v. | ) | Judge Susan J. Dlott |
| | ) | |
| DANIEL GREEN, et al., | ) | |
| | ) | |
|       Defendants. | ) | |
| | ) | |

**UNITED STATES' MOTION FOR RECONSIDERATION
OF THE JULY 8, 2004 ORDER REGARDING UNITED STATES'
MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DANIEL GREEN**

On July 8, 2004, this Court denied the United States' Motion for Partial Summary Judgment Against Daniel Green on the grounds that it "cannot find that a person who is physically involved in the day-to-day operations of the facility but who does not have any ultimate decision-making authority can be subject to liability under CERCLA." Order at 15. In light of the explicit statement by the unanimous United States Supreme Court in <u>United States v. Bestfoods</u>, 524 U.S. 51, 61 (1998), that CERCLA "operator" liability encompasses individuals lacking such authority, the United States respectfully requests that this Court reconsider its Order of July 8, 2004. Moreover, review of this Court's findings of fact shows that Daniel Green's authority over the hard chrome plating department fulfills the criterion for operator liability announced in the Order. Summary judgment against Daniel Green is warranted under the standard for operator liability set forth by the Supreme Court in <u>Bestfoods</u> and, indeed, even under the standard stated in the July 8, 2004 Order.

I.  **"Decision-Making Authority" is not a Requirement for "Operator" Liability Under CERCLA**

As this Court recognized, the "purpose of CERCLA is to facilitate the prompt remedial clean-up of hazardous waste sites by assessing the costs of the cleanup to the persons found to be responsible for the presence of the hazardous substances." Order at 11. In <u>Bestfoods</u>, the Supreme Court reiterated the expansive nature of CERCLA, stating that the "remedy that Congress felt it needed in CERCLA is sweeping: *everyone* who is potentially responsible for hazardous-waste contamination may be forced to contribute to the costs of cleanup." <u>Bestfoods</u>, 524 U.S. at 56 n.1, quoting <u>Pennsylvania v. Union Gas, Co.</u>, 491 U.S. 1, 21 (1989) (plurality opinion of Brennan, J.) (emphasis in original).

In <u>Bestfoods</u>, the Supreme Court confirmed that this broad view of CERCLA liability likewise applied to "operators" under CERCLA Section 107(a), 42 U.S.C. § 9607(a), stating that "[u]nder the plain language of the statute, any person who operates a polluting facility is directly liable for the costs of cleaning up the pollution." <u>Bestfoods</u>, 524 U.S. at 65. The Supreme Court emphasized the breadth of such potential liability, stating that:

> This is so regardless of whether that person is the facility's owner, the owner's parent corporation or business partner, or even a saboteur who sneaks into the facility at night to discharge its poisons out of malice.

<u>Id.</u> In providing these three widely varying examples, the unanimous United States Supreme Court plainly recognized that liable "operators" can include not only those perhaps most obviously responsible for a facility's environmental harms, e.g. the facility's owner, but also potentially those whose authority at the facility initially appears indirect (the owner's parent corporation) and persons who lack any formal authority but nevertheless take actions that

contribute to pollution (the saboteur). The Supreme Court's examples illustrate that the definition of "operator" set forth in Bestfoods should be construed as inclusive, not exclusive.

After examining the dictionary meanings of the verb "to operate," the Supreme Court crafted the following definition of "operator" in the CERCLA context:

> To sharpen the definition for purposes of CERCLA's concern for environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.

Id. at 66-67. Here too, the Supreme Court used inclusive language: manage, direct, or conduct operations specifically related to pollution. The definition of operator encompasses everyone participating in the polluting event, from oversight (plant managers, hands-on presidents) to those conducting the action itself (button pushers).

In the July 8, 2004 Order, the Court adopted a definition of "operator" which would exclude the "button pushers" as well as the Supreme Court's example of the saboteur, by requiring that a liable operator have some ultimate decision-making authority. In support of this view, this Court referenced language from later in the Bestfoods decision, stating that the Supreme Court suggested "that 'mere mechanical activation of pumps and valves' is insufficient to subject oneself to liability . . . ." Order at 15, quoting Bestfoods, 524 U.S. at 71. The complete quotation, however, does not support this exclusionary interpretation:

> [In using the verb 'to operate'] the statute obviously meant something more than mere mechanical activation of pumps and valves, and must be read to contemplate "operation" as including the exercise of direction over the facility's activities.

Bestfoods, 524 U.S. at 71 (emphasis added).

It must be kept in mind that the issue specifically before the Supreme Court in Bestfoods was what actions are necessary to hold a parent corporation directly liable for environmental harm at its subsidiary's facility. Id. at 66. Thus, throughout the decision, the Supreme Court repeatedly emphasizes that the definition of "operator" is not limited to "mechanical operation of pumps and valves," but also includes the "exercise of direction over the facility's activities." When read in its entirety, there is nothing in this statement that serves as a basis for reducing the scope of CERCLA so as no longer to encompass those who physically conduct operations relating to pollution, regardless of whether such persons have any ultimate decision-making authority. Had the Supreme Court intended otherwise, the Court could simply have said that CERCLA must be read to contemplate "operation" as meaning the exercise of direction over the facility's activities, rather than including the exercise of such authority.

In restricting the scope of "operator" liability, this Court also referenced the Supreme Court's emphasis that the natural meaning of the verb "to operate" includes use of the verb in its "organizational sense," as in to "operate a business." Order at 15, quoting Bestfoods, 524 U.S. at 66. The Supreme Court, however, also discussed that the dictionary definition of "to operate" includes a "mechanical sense," e.g. to operate a machine. Bestfoods, 524 U.S. at 66. While the Supreme Court's focus on the organizational sense of "to operate" was appropriate considering that the Court was assessing the potential direct liability of a parent corporation, it did not adopt that definition to the exclusion of the mechanical sense of the verb.

When formulating a definition of "operator" for CERCLA, the Supreme Court drew from both dictionary definitions, including persons not only managing or directing operations related to pollution, but also encompassing those who physically conduct such operations. See id. at 67;

4

see also Harvey Gelb, CERCLA Versus Corporate Limited Liability, 48 U. Kan. L. Rev. 111, 128 (1999) ("The Court evidently accepts both the 'mechanical sense' and the 'organizational sense' for purposes of the CERCLA statute."). Under Bestfoods, those involved in the mechanical activation of pumps and valves -- be they button pushers, saboteurs, or managers who supervise day-to-day activities -- are included among those potentially liable as operators.

While the Court accurately noted the absence of reported decisions finding an individual liable based only on day-to-day participation in the work of a facility or the disposal of hazardous substances without having decision-making control over at least some part of the facility, the opposite is likewise true: No prior decision has rejected such an argument or postulated that the Supreme Court erred when it included the example of the saboteur – an individual obviously lacking any decision-making authority – as a liable "operator."[1]

The lack of prior caselaw on this point is not particularly surprising. The broad scope of potential liability under CERCLA gives the United States and other plaintiffs significant discretion in selecting potentially responsible parties to be named as defendants in cost recovery or other CERCLA enforcement matters.[2] Despite the existence of strict liability for all

---

[1] Indeed, in setting forth the standard for CERCLA operator liability, a number of courts and commentators have cited the Supreme Court's three examples. See United States v. Kayser-Roth Corp., 272 F.3d 89, 98 (1st Cir. 2001); United States v. Friedland, 173 F.2d 1077, 1093 (D. Colo. 2001); United States v. Alisal Water Corp., 114 F. Supp.2d 927, 939 (N.D. Cal. 2000); Shiavone v. Pearce, 77 F. Supp.2d 284, 288 (D. Conn. 1999); Norfolk S. Ry. Co. v. Gee Co., 1999 WL 286287 (N.D. Ill. 1999); Bob's Beverage, Inc. v. ACME, Inc., 169 F. Supp.2d 695, 721 (N.D. Ohio 1999); see also Harvey Gelb, CERCLA Versus Corporate Limited Liability, 48 U. Kan. L. Rev. 111, 128 (1999) ("Indeed the operator's scope of liability as envisioned by the Court is broad enough to encompass even the 'saboteur.'").

[2] To the extent that a defendant believes that the United States has failed to name an appropriate potentially liable party as a defendant, it may bring a cross-claim for contribution against such person under CERCLA Section 113, 42 U.S.C. § 9613.

responsible parties under CERCLA, plaintiffs generally look first to corporate operators, or to the one or two individuals with the greatest level of control, as potential defendants, as those entities possess the greatest equitable responsibility for the polluting actions and are also the most likely to be able to pay for the cleanup.

Here, where it appears that the corporate entity has dissolved or may no longer possess sufficient assets to fund a cleanup, the United States has been compelled to look to the entity's primary officers as the persons next bearing the greatest equitable responsibility for the hazardous conditions. Daniel Green – President, majority share holder, and plant manager – was named as a defendant under this analysis. That there is little or no caselaw concerning officers with such direct apparent responsibility is unsurprising, since few would contest "operator" status. Indeed, the only reason the United States seeks summary judgment on such a standard here is due to Daniel Green's somewhat incredible denial of any decision-making authority.[3]

In summary, while certain statements in Bestfoods, viewed in isolation, could cause reasonable minds to differ as to the standard for direct operator liability under CERCLA, the three varying examples of an operator cited by the unanimous Supreme Court leave no room for doubt about the broad scope of such liability. See Bestfoods, 51 U.S. at 65. One of those examples – the saboteur – establishes that decision-making authority over a facility is not a prerequisite for CERCLA operator liability.

The United States Court of Appeals for the Sixth Circuit has long recognized that "[e]ven the [Supreme] Court's dicta is of persuasive precedential value." Jordan v. Gilligan, 500 F.2d

---

[3] As stated below, however, Daniel Green in fact has admitted to having decision-making authority as the "plant manager" of the hard chrome plating department and, therefore should be found liable even under the more narrow standard set forth in the Court's July 8, 2004 Order.

701, 707 (6th Cir. 1974). See also Wright v. Morris, 111 F.3d 414, 419 (6th Cir. 1997) ("Where there is no clear precedent to the contrary, we will not simply ignore the Court's dicta."); Vergis v. Grand Victoria Casino & Resort, 199 F.R.D. 216, 218 (S.D. Ohio 2000) ("The Court of Appeals of this Circuit has consistently recognized the persuasive value of Supreme Court dicta."). The Sixth Circuit has even asserted that dicta from a Supreme Court opinion with a solid majority can have more precedential value than a holding from a split Court: "If anything, this particular 'dictum,' which eight Justices endorsed, commands more weight than much of the Landgraf analysis, which commanded a bare majority." Wright, 111 F.3d at 419.

       The saboteur example – endorsed by a unanimous Supreme Court – is consistent with the inclusive emphasis of the Bestfoods decision and CERCLA itself. Where multiple interpretations of a standard are possible, this Court should not dismiss statements by a unanimous Supreme Court that indicate its adoption of one particular interpretation. The Supreme Court's examples of potentially liable operators graphically illustrates that "ultimate decision-making authority" is not a prerequisite for CERCLA operator liability. Rather, a person may be directly liable as an "operator" where they "manage, direct, or conduct operations specifically related to pollution, that is operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." Bestfoods, 524 U.S. at 66-67. Liability lies with individuals who conduct such activities, regardless of whether they had ultimate decision-making authority for such actions or even – like the saboteur – no authority to engage in such actions at all.

**II.     The Undisputed Facts Show That Daniel Green is Liable as an "Operator" Under the Standard in the July 8, 2004 Order**

In the July 8, 2004 Order, the Court found that Daniel Green had provided sufficient evidence to create an issue of material fact regarding whether he met the Court's standard for "operator" liability, i.e. whether he exercised "ultimate decision-making control over the facility in question or any part thereof."  Order at 15-16.  Review of the undisputed facts in this matter, however, show that Daniel Green did in fact possess decision-making authority over plant operations having to do with the leakage of hazardous waste, specifically Green Industries' hard chrome plating department.  Thus, Daniel Green should be held liable even under the narrow definition of "operator" adopted in the July 8, 2004 Order.

As stated above, in Bestfoods, the unanimous Supreme Court held that "an operator must manage, direct, or conduct operations specifically related to pollution, that is operations having to do with the leakage or disposal of hazardous waste . . . ."  Bestfoods, 524 U.S. at 66-67.  It is uncontested that Daniel Green "supervised and acted as a 'plant manager' of the hard chrome plating, anodizing and sand blasting departments" and that his "responsibilities included scheduling jobs, . . . supervising quality control, . . . and purchasing raw materials and tooling."  Order at 3, citing Dep. of D. Green at 20-21.

This Court's findings of fact show that the hard chrome plating department constituted an operation related to the leakage of hazardous waste.  For example:

- Contaminated water spilled from hard chrome tanks on multiple occasions.  Cracks in the floor of the plant permitted spilled substances to reach ground below the floor.  Order at 5, citing Dep. of D. Green at 87-92, 147 and Dep. of M. Dedden at 77-78.

8

- The hard chrome tanks leaked on multiple occasions.  Order at 5, citing Dep. of J. Hoyle at 35-36, Dep. of M. Dedden at 17-19, Dep. of D. Emo at 24-25.

- Sumps servicing the hard chrome plating tanks lacked concrete bottoms and emptied directly into the ground.  Order at 5, citing Dep. of D. Green at 90-91.

- Fans designed to exhaust condensed chrome fumes from the hard chrome plating tanks cracked, leading chrome to leak from the bottom of the fans onto the ground.  Order at 5, citing Dep. of D. Green at 117-126.

- Chrome-contaminated storm water drained into the storm sewer through outdoor grates running along the south side of the Site and through the shipping dock floor drain; eventually the storm water discharged untreated into the drainage ditch running along the eastern edge of the Site.  Order at 5, citing Dep. of D. Green at 75-83 and Ex. 37 of Decl. of J. Spector.

As "plant manager" of the hard chrome plating department, Daniel Green spent "a good two hours" at the beginning of each day on the plant floor, providing his foreman with the day's schedule of plating jobs, personally inspecting the sumps to determine if chrome-contaminated water had flowed into them, and examining the quality of finished product.  See Dep. of D. Green at 41-42, 92.  If a problem developed on the line when Daniel Green was not present, the foreman would come and get him.  Id. at 42.

These facts establish that Daniel Green had decision-making authority over and directed the operations of the hard chrome plating department and these operations resulted in the leakage of hazardous waste, through leaks, spills and air emissions.  Thus, even under the standard announced by this Court that an operator must exercise ultimate decision-making authority over a facility or some portion thereof, Daniel Green should be found liable as an operator under CERCLA Section 107(a).

**CONCLUSION**

For the reasons stated above, the United States' Motion for Reconsideration should be granted and Daniel Green found jointly and severally liable for response costs incurred by the United States at the Green Industries Site.

Respectfully submitted,

Dated: July 19, 2004

THOMAS L. SANSONNETTI
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


   s/ Jeffrey A. Spector
JEFFREY A. SPECTOR
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 76ll
Washington, D.C.  20044-7611
Tel: (202) 514-4432
Fax: (202) 616-6584

GREGORY G. LOCKHART
United States Attorney
GERALD F. KAMINSKI (OO12532)
Deputy Civil Chief
Office of the United States Attorney
221 East Fourth Street, Suite 400,
Cincinnati, OH  45202
Tel:  (513) 684-3711
Fax:  (513) 684-6710

OF COUNSEL:

RICHARD R. WAGNER
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL   60604
(312) 886-7947

**CERTIFICATE OF SERVICE**

      I, Jeffrey A. Spector, an attorney, certify that on July 19, 2004 I caused a true and correct copy of the attached **UNITED STATES' MOTION FOR RECONSIDERATION OF ORDER OF JULY 8, 2004 REGARDING UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DANIEL GREEN** to be served via overnight delivery to:

    David A. Owen
    GREENEBAUM DOLL
     & MCDONALD PLLC
    333 West Vine Street, Suite 1400
    Lexington, Kentucky 40507-1665

    David J. Schmitt
    CORS & BASSETT
    537 East Pete Rose Way
    Cincinnati, Ohio 45202

                                                                                                      s/ Jeffrey A. Spector
                                                                                                     Jeffrey A. Spector