UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

    Plaintiff,

v.                                              Case No. 1:00cv637

Daniel Green, *et al.*,                Judge Michael H. Watson

    Defendants.

## MEMORANDUM OPINION & ORDER

This matter is before the Court upon Plaintiff United States of America's Motion for Leave to File Third Amended Complaint. (Doc. 63) Plaintiff's Motion was filed on February 9, 2004. Defendants Daniel Green, L.W.G. Co. Inc., and Hard Surface Technology filed a Response in Opposition (Doc. 64), and the United States filed a Reply. (Doc. 65) Defendants then filed a Motion for Leave to File Surreply. (Doc. 66)

Subsequent to the filing of these Motions, on July 8, 2004, the Court entered its Order ruling on the parties' motions for summary judgment as to liability. (Doc. 67) In its Order, the Court denied the United States' motion for partial summary judgment against Defendant Daniel Green. The United States has filed a Motion to Reconsider that portion of the Court's Order. (Doc. 68) [1] Defendant Daniel Green has filed a Response in Opposition. (Doc. 69)

---

[1] The Court also granted Defendant Hard Surface Technology's Motion for Summary Judgment, and dismissed Hard Surface Technology as a party. Therefore, to the extent that Defendants' opposition to the United States' Motion for Leave to Amend is made on behalf of Hard Surface Technology, that issue is now moot.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The factual background of this matter was set out in full detail in this Court's Order of July 8, 2004 (Doc. 67), and will only be repeated here in relevant part.

The United States' claims are brought under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") and the Federal Debt Collections Procedure Act ("FDCPA"). The United States is seeking to recover costs that it incurred in cleaning up hazardous substances at a site formerly owned by Green Industries, Inc. ("the Site"). The original entity on the Site was owned in part by Maurice Green, who is the father of Daniel Green. That original entity changed its name to Green Industries, and in 1972, Maurice and Daniel were elected directors of Green Industries. In 1978, Daniel became the majority shareholder. In 1979, Daniel became the vice president and secretary of Green Industries. In 1982, Daniel was elected president and treasurer. Daniel was involved in the day-to-day operations along with his father. Daniel supervised and acted as "plant manager." Daniel's responsibilities included scheduling, talking to customers, making sales calls, supervising quality control, scheduling deliveries, and purchasing raw materials and tooling. Daniel had authority to sign checks in Maurice's absence.

There is also evidence that Maurice was the dominant force and decision-maker for Green Industries. Employees and business associates testified that Maurice had a dominating personality and was the "boss" at Green Industries. Maurice made hiring decisions, controlled the books and the corporate finances, and made all major purchasing decisions.

There is evidence that Daniel personally participated in activities related to hazardous materials: (1) Daniel and Maurice frequently communicated with the EPA and OSHA; (2) Daniel would occasionally check and empty the pans which were placed under the leaking chrome blowers; (3) Daniel supervised the construction of an asphalt berm around a shed and over the area where the chrome was being caught under the blowers; (4) after receiving a call from a neighboring property owner that acid was draining from the Site onto its property, Daniel instructed an employee to give the neighbor soda ash with which to neutralize the leak; (5) Daniel signed a March 14, 1986 letter to the Ohio EPA submitting the plan to close the waste disposal pit on the Site; (6) Daniel worked with environmental consultants, showing them around the Site and discussing possible ways to contain or remove hazardous waste; and (7) Daniel would on a daily basis look down into the sump in the hard chrome department to make sure that the sump was dry.

However, there was evidence that Daniel did not exercise independent decision-making authority in taking these particular actions: (1) a former employee explained that building a shed over and a berm around the area where chrome was caught under the blowers was probably Maurice's idea; (2) Daniel testified that he decided to send over the soda ash as a way to contain the spill until Maurice returned to the Site; (3) Daniel explained that if the environmental consultants were on Site, his father was with them the whole time and Daniel was seldom present; (3) while Daniel recognized his signature on much of the correspondence to governmental agencies, he did not recall the letters, and someone else must have written the letters for him; and (4) an Ohio EPA inspector testified that it was Don Thurman and Al Flay, not Daniel, who made the day-to-day decisions regarding waste disposal and were the Site's main environmental contacts.

In 1998, Green Industries sold the Site to H.R.W. Industries, which had no known affiliation with the Green family. Green Industries then changed its name to L.W.G. Co., Inc. and purchased property on Le Saint Drive in Fairfield, Ohio with the proceeds from the sale of the Site. L.W.G. sold the Le Saint Drive property to Omni Industrial Properties, Inc., which was incorporated shortly before the sale by Daniel's brother, Samuel Green. In June of 1999, L.W.G. filed a certificate of dissolution. Maurice Green passed away on December 29, 1999.

## II.   ARGUMENTS OF THE PARTIES

### A.   United States' Motion for Leave to File Third Amended Complaint.

The United States is seeking to add Omni Industrial Properties, Inc. as a Rule 19 defendant. The United States maintains that Defendant L.W.G. and its president, Defendant Daniel Green, sought to shield L.W.G.'s assets from its environmental liabilities by fraudulently transferring them to Omni Industrial. The United States explains that as the recipient of L.W.G.'s fraudulently transferred assets, the addition of Omni Industrial as a Rule 19 defendant is necessary to the full and fair adjudication of this action.

The United States explains that it first learned of the transfer during the February 12, 2002 deposition of Daniel Green. The United States maintains that in early 1994, following L.W.G.'s guilty plea regarding environmental violations, the Greens sought to make L.W.G. judgment-proof by transferring its remaining assets to companies affiliated with the Green family members. The United States explains that Omni Industrial paid for the Le Saint Drive Property by assuming L.W.G.'s mortgage, but the bank refused to release Daniel and Maurice Green from the mortgage, because it determined that Omni Industrial lacked sufficient financial strength to obtain the loan itself. The United States

contends that Daniel remained personally liable for the mortgage even though ownership passed to his brother's company.

The United States argues that Defendants and Omni Industrial will not be prejudiced by the amendment because this case has been divided in to three phases - Phase I (liability), Phase II (costs), and Phase III (assets) - with the issues relating to fraudulent transfers being reserved until Phase III. The United States explains that Omni Industrial's interest is limited to Phase III, which has not commenced.

In response, Defendants state that the only possible motive for the United States' motion is to harass the relatives of Maurice Green. Defendants argue that Omni Industrial has no involvement with the subject of this case. Defendants argue that the motion to amend is the result of undue delay, bad faith or dilatory motive and the amendment would be futile. Defendants state that there is evidence that the United States knew of the transfer as early as 1996. Defendants explain that in connection with an unrelated criminal investigation, Daniel Green was interviewed in a proffer session. During the interview, Green notified the EPA that Omni Industrial had purchased the Le Saint Drive property, and that Samuel Green was both the owner of Omni Industrial and the brother of Daniel Green. Defendants state that in any event, the United States clearly knew about the transfer after Daniel Green's deposition in 2002. Defendants argue that the United States has not shown good cause for its delay in filing its motion after that time.

In reply, the United States provides a redacted copy of the Memorandum of Interview from the 1996 proffer session. The United States argues that the statements Daniel Green made during that session were incomplete and misleading because he stated

that neither he or his father had any involvement in the sale and that he may have received some money from the sale.

B.  <u>Defendants' Motion for Leave to File Surreply</u>.

Defendants argue that a surreply is warranted because the United States has used its Reply to improperly argue the merits of its fraudulent transfer allegations, and has relied on evidence not proper for the Court's review. Defendants point out that this Court has held that the United States cannot rely on the proffer statement in its case in chief.

C.  <u>United States' Motion to Reconsider</u>.

The United States argues that this Court's finding that a person who is physically involved in the day-to-day operations of a facility, but who does not have any ultimate decision-making authority, cannot be subject to liability under CERCLA is contrary to the Supreme Court's holding in *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). The United States maintains that the findings of fact in this Court's July 8, 2004 Order would not only meet the criteria for liability under *Best Foods*, but would also meet the criteria set forth in this Court's own Order.

Defendant Daniel Green responds that the United States' motion is nothing more than a request that this Court change its mind. Defendants point out that the United States has not shown that there has been a change in controlling caselaw, that newly discovered evidence has surfaced, or that there was a clear error of law.

III.  **ANALYSIS**

A.  <u>United States' Motion for Leave to File Third Amended Complaint</u>.

Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend "shall be freely given when justice so requires." In evaluating the interests of justice, courts

consider several factors, including "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir.1998). The grant or denial of an opportunity to amend is within the district court's discretion, but refusal to grant leave without a justifying reason is not an exercise of discretion but rather an abuse of that discretion. *Rose v. Hartford Underwriters Insurance Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("we have held on several occasions that a district court abuses its discretion when it fails to state a basis for its decision to deny a motion to amend").

However, once a district court's scheduling order's deadline for amending the pleadings passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a). *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). The primary measure of Rule 16's good cause standard is the moving party's diligence in attempting to meet the case management order's requirements. *Inge v. Rock Financial Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). This Court must also evaluate the prejudice to the opponent before modifying the scheduling order. *Leary*, 349 F.3d at 909.

Under this Court's Case Management Order, the parties were permitted to amend the pleadings to add additional parties without leave of court until August 1, 2001. (Doc. 21)[2] The United States' Motion for Leave to File Third Amended Complaint was filed on

---

[2]Not only does controlling caselaw require a party show good cause, but this Court's Order specifically states that after the deadline, an amendment of the pleadings to join additional parties shall be allowed only by order of the Court for good cause shown. (Id. at 8)

February 9, 2004. (Doc. 63) The United States maintains that there is "good cause" for not meeting the August 1, 2001 deadline because it was not until February of 2002 that it discovered that L.W.G. had transferred the Le Saint Drive Property to Omni Industrial. While this may explain the United States' failure to name Omni Industrial in the original Complaint, filed on August 4, 2000 (Doc. 1); the Amended Complaint, filed on October 16, 2000 (Doc. 2); and the Second Amended Complaint, filed on January 7, 2002 (Doc. 28), this does not explain why the United States waited two years after the deposition of Daniel Green to name Omni Industrial as a Rule 19 Defendant. This two-year period of delay does not show that the United States was diligent in attempting to meet the Case Management Order's requirements.

However, "[t]o deny a motion to amend, a court must find 'at least some significant showing of prejudice to the opponent.'" Duggins v. Steak "N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999), quoting, Moore v. City of Paducah, 790 F.2d 557, 562 (6th Cir. 1986); see also Leary, 349 F.3d at 907. Defendants contend that they would be prejudiced if the United States' motion were to be granted because it would only serve to further the United States' efforts to harass and shame the Green family. The United States maintains that Defendants will not be prejudiced because Omni Industrial's involvement is based on a fraudulent transfer - which is an issue reserved to Phase III (assets) of this litigation. The Court agrees with the United States, and finds that the prejudice to Defendants would be minimal. The discovery which has been conducted to date only concerned liability; and the United States is not claiming that Omni Industrial is liable for the costs of cleaning up the Site. Omni Industrial's only role in this litigation is as the recipient of an allegedly fraudulent transfer of property. Defendants do not argue that they would have conducted

discovery in Phase I any differently or made different arguments in their motions for summary judgment. As Defendants themselves argue, the only connection between themselves and Omni Industrial is that it is owned by a Green family member. Because the Court can find no significant showing of prejudice to Defendants, the Court will not deny the United States' motion based on Federal Rule 16(b).

Under the analysis employed by courts under Rule 15(a), "delay by itself is not sufficient to deny a motion to amend." *Coe*, 161 F.3d at 342. There must be at least some significant showing of prejudice to the opponent if the motion is to be denied. *Janikowski v. Bendix Corp.*, 823 F.2d 945 (6th Cir.1987). As discussed above, the Court cannot find a significant showing of prejudice to Defendants.

However, Defendants argue that the United States' Motion should be denied because the claims against Omni Industrial are time-barred. While leave to amend should be freely given, leave is properly denied where the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). See also *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991) ("Accordingly, an amendment may not be allowed if the complaint as amended could not withstand a Fed. R. Civ. P. 12(b)(6) motion."); *Marx v. Centran Corp.*, 747 F.2d 1536, 1551 (6th Cir. 1984), *cert. denied*, 471 U.S. 1125 (1985) (holding that district court properly denied leave to amend complaint on grounds of futility because proposed claims were time-barred).

In this Court's Order dated July 8, 2004, the Court found that the FDCPA statute of limitations was applicable to the United States claim that the transfers from Daniel Green to his wife Saundra were fraudulent. (Doc. 67) The Court finds that the same statute of

limitations is applicable to the claim against Omni Industrial. The applicable statute provides:

> A claim for relief with respect to a fraudulent transfer or obligation under this subchapter is extinguished unless action is brought--
>
> (1) under section 3304(b)(1)(A) within 6 years after the transfer was made or the obligation was incurred or, if later, within 2 years after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
> (2) under subsection (a)(1) or (b)(1)(B) of section 3304 within 6 years after the transfer was made or the obligation was incurred; or
>
> (3) under section 3304(a)(2) within 2 years after the transfer was made or the obligation was incurred.

28 U.S.C. § 3306(b). The United States claims that the transfer of the Le Saint Drive property from LWG to Omni Industrial constitutes a fraudulent transfer under section 3304(b)(1)(A) and (B). (Doc. 63, Ex. 1, ¶¶ 64-67) Defendants point out that the sale of the property occurred in April of 1994, which is beyond the six year statute of limitations for transfers under section 3304(b)(1)(B). The United States apparently concedes as much in its Motion by stating that its only claim is under section 3304(b)(1)(A); and argues that its claim against Omni Industrial are timely because it did not learn the details of the transfer of ownership until the February 12, 2002 deposition of Daniel Green.

Yet, Defendants argue that this was not the first instance that the United States learned of the transfer. Defendants argue that the United States was notified of the transfer during the November 22, 1996 proffer session with Daniel Green; and the EPA had received Daniel Green's 1996 financial statement. The United States replies that in the financial statement, the only reference to the Le Saint Drive property is a single line-item and does not state to whom the property was conveyed. The United States argues

that the proffer session also did not show the fraudulent nature of the transfer. The Court agrees. In reviewing the statements made by Daniel Green, the Court finds that there is no indication that the transaction was anything more than an ordinary sale of property. (Doc. 65 Ex. A) Daniel stated that Samuel Green, the stepson of Maurice, bought the building from L.W.G. after the company went bankrupt. Daniel explained that Samuel works for Reva Enterprises, which buys "fire sale" real estate. Daniel explained that the three entities on the property pay rent to Omni Industrial, and pay their own taxes, insurance, and utilities. Daniel stated that Samuel bought the building, paid the taxes, and dealt with all financial matters. Daniel claims that neither he or his father "had any involvement in the deal." Daniel stated that he may have received $15,000 from the buyout.

A review of the Purchase and Sale Agreement for the Le Saint Drive property tells a somewhat different story. (Doc. 63, Ex. 2) The purchase price is the amount of the mortgage, and Omni Industrial agreed to assume and pay the mortgage. No money was exchanged. The sale of the property was subject to a Loan Agreement executed by First National Bank, the mortgagor, Daniel and Maurice, both as individuals and as agents for L.G.W., and Samuel Green on behalf of Omni Industrial. Under the terms of the agreement, Daniel and Maurice were to remain liable for payment of the mortgage. Omni Industrial was required to assign the rents to the bank, and establish a savings account where the rents would be deposited and from which loan payments would automatically be withdrawn. The Court concludes that until the United States was in receipt of this information, and was able to question Daniel Green about the details of the transfer, the United States reasonably could not have discovered the potentially fraudulent nature of the

transfer. Because this information was presented within the two-year statute of limitations, the Court finds that the United States' section 3304(b)(1)(A) claim against Omni Industrial would not be futile; and the United States' Motion for Leave to File Third Amended Complaint (Doc. 63) is hereby GRANTED.[3] However, the Third Amended Complaint shall not include a claim under 28 U.S.C. 3304(b)(1)(B). Accordingly, the Third Amended Complaint tendered to the Court shall be modified to reflect this ruling before it is filed in the record.

B.   Defendants' Motion for Leave to File Surreply.

Under the Local Rules, after the moving party has filed its Reply in response to the non-moving party's Memorandum in Opposition, no additional memoranda will be permitted except upon leave of the Court for good cause shown. S.D. Ohio Civ. R. 7.2(a)(2). Where the non-moving party fails to establish "good cause" for filing a Surreply, a motion for leave to file the Surreply should be denied. *Adams v. Noble*, 137 F.Supp.2d 1054, 1056 (S.D.Ohio 2001). Here Defendants argue that in its Reply the United States has improperly argued the merits of its fraudulent transfer allegations. The Court is comfortable that it can make its own determination regarding what facts and arguments are relevant to the Motion for Leave to Amend and not be persuaded by extraneous arguments of the merits. Similarly, in regards to the documents that this Court has ordered will not be relied upon by the United States in its case in chief, the Court may properly rely on the November 22, 1996 Memorandum of Interview for the limited purpose of determining

---

[3]Because the Court finds that on its face it appears that the United States' Motion for amendment was made timely, it is not necessary to address Defendants' arguments concerning the relation back of the Third Amended Complaint to the original Complaint.

whether the United States Motion for Leave to Amend would be futile. The United States has not submitted the document in support of the merits of its case in chief, and the Court has not considered it in that manner. *Accord* 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1487 at 635 (1990) ("[T]he substantive merits of a claim or defense should not be considered on a motion to amend.").

Therefore, the Court finds that Defendants have not established good cause for filing a sur-reply, and Defendants' Motion for Leave to File Surreply (Doc. 66) is hereby DENIED.

C.  United States' Motion to Reconsider.

Although a motion for reconsideration is not mentioned in the Federal Rules of Civil Procedure, it is often treated as a motion to amend judgment under Rule 59(e). *McDowell v. Dynamics Corp. of America*, 931 F.2d 380 (6th Cir.1991); *Shivers v. Grubbs*, 747 F.Supp. 434 (S.D.Ohio 1990). The grant or denial of a Rule 59(e) motion is within the informed discretion of the district court, and is reversible only for abuse. *Huff v. Metropolitan Life Insurance Co.*, 675 F.2d 119, 122 (6th Cir. 1982).

There are three grounds for amending a judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; and (3) to correct a clear error of law or to prevent manifest injustice. *GenCorp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir.1999); *Berridge v. Heiser*, 993 F.Supp. 1136, 1146-1147 (S.D.Ohio 1997). The United States' Motion presumably falls in this last category because the United States has not pointed to any change in controlling law or new evidence. Instead, the United States questions this Court's formulation of the

standard for operator liability under CERCLA section 107(a), as well as this Court's determination regarding Daniel Green's status as an operator.

"A motion under Rule 59(e) is not an opportunity to re-argue a case". *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). The Court finds that the United States' Motion for Reconsideration presents the same arguments made to the Court in its Motion for Partial Summary Judgment. (Doc. 46) The Court does not accept that the United States' interpretation of *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) demonstrates a clear error of law on the part of the Court. In addition, while the Court would agree that if the facts highlighted by the United States were in fact undisputed, there could be a basis for finding operator liability. However, as this Court determined, Daniel Green presented sufficient evidence to create an issue of material fact and precluded awarding the United States summary judgment on its claim against him. (Doc. 67, at 15) Therefore, the United States' Motion to Reconsider (Doc. 68) is hereby DENIED.

In summary, it is hereby ordered as follows:

1. The United States' Motion for Leave to File Third Amended Complaint (Doc. 63) is **GRANTED**;

2. The United States shall file a Third Amended Complaint which does not include a claim under 28 U.S.C. 3304(b)(1)(B) against Omni Industrial.

3. Defendants' Motion for Leave to File Surreply (Doc. 66) is **DENIED**; and

4. The United States' Motion to Reconsider (Doc. 68) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Michael H. Watson
Michael H. Watson, Judge
United States District Court