UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. C-1-00-637 |
| ) | |
| DANIEL GREEN, et al., ) | Judge Susan J. Dlott |
| ) | |
| Defendants. ) | |
| ) | |

**UNITED STATES' MOTION
FOR ENTRY OF CONSENT DECREE**

NOW COMES the United States of America, who states that:

1.      On August 7, 2000, the United States, on behalf of the United States

Environmental Protection Agency ("U.S. EPA"), filed suit against Daniel Green; LWG, formerly

known as Green Industries Inc.; and the Estate of Maurice Green, under Section 107(a) of the

Comprehensive, Environmental Response, Compensation and Liability Act ("CERCLA"), 42

U.S.C. § 9607(a), to recover unreimbursed response costs incurred by the United States with

regard to the Green Industries Site, located in Sharonsville, Ohio.  The Complaint alleges that

Maurice Green and LWG are liable as owners and operators of the Site at the time of disposal

there of hazardous electroplating wastes; that Daniel Green is liable as the operator of the Site at

the time of such disposal; and that both Daniel Green and Maurice Green are liable as the alter

egos of LWG.

2.      On October 16, 2000, the United States filed a First Amended Complaint, adding

a claim against Daniel Green pursuant to the Federal Debt Collection Procedure Act ("FDCPA"),

28 U.S.C. § 3304(b), alleging that in 1990 Daniel Green fraudulently transferred certain assets to his wife, Saundra Green.  As someone whose assets would be impacted by resolution of this claim, Saundra Green was named as a Rule 19 defendant.

3.       On January 7, 2002, the United States filed a Second Amended Complaint, alleging that Daniel Green's current business, Hard Surface Technology, Inc. ("HST"), is the successor-in-liability to the now defunct LWG and adding HST as a defendant.  On April 14, 2005, the United States filed a Third Amended Complaint, alleging that LWG had fraudulently transferred certain real property to Omni Industrial Properties, Inc. in violation of FDCPA Section 3304(b).[1]

4.       On July 8, 2004, the Court ruled on various summary judgment motions filed by the United States, Daniel Green, Saundra Green, and LWG.  The Court granted the United States' motions for partial summary judgment against LWG and the Estate of Maurice Green; granted HST's motion for summary judgment, thereby dismissing it from the case; denied both the United States' and Daniel Green's cross-motions for partial summary judgment; and denied Saundra Green's motion for summary judgment, although ruling that the United States was time barred from bringing claims under the FDCPA for any transfers from Daniel Green to Saundra Green occurring prior to 1996.

5.       On January 11, 2006, the United States filed a Notice of Lodging of Consent Decree ("Notice") with this Court and lodged the proposed Consent Decree among the United

---

[1]      The United States' claim alleging that LWG fraudulently transferred certain real property to Omni Industrial Properties, Inc. remains pending and will not be resolved by the proposed Consent Decree.

States, Daniel Green, Saundra Green, and the Estate of Maurice Green, pending public notice

and comment on the Consent Decree.

6.      Consistent with CERCLA and U.S. Department of Justice Policy on January 26,

2006, the U.S. Department of Justice published a notice in the Federal Register advising the

public of the lodging of the proposed Consent Decree and inviting the public to comment on the

proposed Consent Decree for a 30-day period commencing with the date of publication of the

notice.  See 71 Fed. Reg. 4377.

7.      The 30-day period for public comment expired on February 27, 2006.  The United

States received one comment during the public comment period.  Following its review of this

comment, the United States continues to believe that the proposed Consent Decree is fair,

reasonable, protective of human health and the environment, in the public interest, and fully

consistent with the purposes of CERCLA.  That comment, and the United States' response to the

issues raised by the comment, are set forth below.

8.      The United States now requests that the Court sign and enter the Consent Decree,

attached hereto as Attachment 1.

**Background**

9.      On August 1, 1978, Maurice Green acquired the Green Industries Site, located at

3603 East Kemper Road in Sharonsville, Ohio.  Maurice Green and his son, Daniel Green, were

the sole officers, directors, and shareholders of two plating companies, Creutz Plating Co.

("Creutz Plating") and Green Industries, Inc. ("Green Industries").  In late 1978, Creutz Plating

moved into the northern portion of the renovated plant building at the Green Industries Site and,

approximately three years later, Green Industries occupied the southern portion of the same

facility.  Both Creutz Plating and Green Industries engaged in metal plating, using numerous

CERCLA hazardous substances, including various acids and metals, in their processes. On May 15, 1987, Creutz Plating merged into Green Industries. Ownership of the Green Industries Site passed from Maurice Green to Creutz Plating in 1985, and then to Green Industries as a result of the 1987 merger.

10.    Green Industries (in its own right and as successor by merger to Creutz Plating) operated the Site from 1978 through 1988, during which period there were numerous releases and disposals of CERCLA hazardous substances there. These releases included discharge of chrome through a faulty air scrubber system into a storm sewer and drainage ditch; spills of chrome-contaminated water from the hard chrome tanks into "sumps" which lacked concrete bottoms and, therefore, emptied directly into the ground; and numerous leaks from tanks and drums onto the facility's cracked concrete floor and into sub-surface soils. Additionally, hazardous waste acids were disposed of in an unpermitted disposal pit behind the facility from 1981 through 1985, when an overflow of waste acid drew attention from a neighboring business.

11.    In June 1988, Green Industries conveyed the Green Industries Site and corporate name to H.R.W. Industries Inc. Green Industries then changed its name to L.W.G. Co., Inc. ("LWG"). H.R.W. Industries operated at the Site until August 1995, when it ceased operations due to lack of funds and abandoned all remaining hazardous substances at the Site. On December 13, 1995, Ohio EPA requested U.S. EPA assistance in conducting a removal action at the Site and, shortly thereafter, U.S. EPA performed a site assessment. U.S. EPA identified abandoned and deteriorating plating lines containing chemicals and plating wastes and abandoned and deteriorating drums containing acids, chemicals, and waste sludge. The interior walls, concrete flooring and sewer system of the abandoned and deteriorating main building were also identified as being generally contaminated by hazardous substances.

-4-

12.     From March 1996 through August 1997, U.S. EPA conducted removal actions at

the Site.  These primarily consisted of identifying containerized wastes and transporting them

off-site for proper disposal; repairing the existing wastewater treatment system for use in treating

waste discovered on-site and decontaminating waste generated during the project;

decontaminating interior walls, concrete flooring, the sewer system network, floor pits and

sumps; and excavating and disposing of soils from two "hot spot" contaminated soil areas.  U.S.

EPA incurred almost $4 million in costs in responding to releases and threatened releases of

hazardous substances at the Green Industries Site.

**Proposed Consent Decree**

13.     The proposed Consent Decree resolves the CERCLA liability of Daniel Green

and the Estate of Maurice Green ("Settling Defendants") on an ability-to-pay basis.  The United

States reviewed financial information submitted by the Settling Defendants to determine whether

they are financially able to pay response costs incurred at the Site.  These documents are

identified in Attachment A to the Decree.  Based upon this financial information, the United

States determined that the Settling Defendants are able to pay $100,000.00.

14.     Under the proposed Consent Decree, the United States covenants not to sue or to

take administrative action against the Settling Defendants and Saundra Green pursuant to

Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), with regard to the Site,

except as specifically provided in the Reservation of Rights provisions.  This covenant takes

effect upon receipt by EPA of all amounts required to be paid under Section VI (Payment of

Response Costs) of the Decree and any amount due under Section VII (Failure to Comply with

Consent Decree).  This covenant not to sue is conditioned upon the satisfactory performance by

the Settling Defendants of their obligations under this Consent Decree and also upon the veracity

and completeness of the financial information provided to EPA by the Settling Defendants.

### Response to Comment Received During the Public Comment Period

15.     In connection with the lodging of the Consent Decree, the United States advised

the Court that, in accordance with the procedures set forth in 28 C.F.R. § 50.7, the public would

be provided an opportunity to comment on the proposed Consent Decree and, after the

conclusion of the public comment period, the United States would either notify the Court of its

withdrawal of consent to the proposed settlement agreement, or move this Court to enter the

Decree.

16.     The United States published notice of the proposed Consent Decree in the Federal

Register on January 26, 2006.  71 Fed. Reg. 4377.  During the comment period, the United States

received one comment, submitted by B. Sachau of Florham Park, New Jersey, regarding the

proposed Consent Decree.  This comment is set forth in its entirety below.  After careful review

of this comment, as further described below, the United States continues to believe that the

Consent Decree is fair, reasonable, and in the public interest.

Comment:

> *I think this brings up what USDOJ is going to do to contracts to people like*
> *Daniel Green so that they put up the money up front so the taxpayers are not left*
> *holding the bag like this.  It is clear anyone who goes into the business that*
> *Daniel Green went into needs to put up insurance/bond money up front before*
> *being allowed to pollute like this, and then claiming they can't pay.*
>
> *We cannot allow this fleecing of America to continue year after year after year.*
> *The taxpayers say no to this kind of action by the Daniel Greens of Ohio.*
>
> *I think the USDOJ should look around for more money to pay for the pollution*
> *caused.  I do not think this settlement should be approved.  Also were any*
> *political campaign funds involved here by Mr. Green - that should also be*
> *investigated.  We have seen some funny doings in Ohio in the last election.*

United States' Response:

      With regard to whether the amount of the payment required under the proposed Decree is appropriate, Defendants have claimed an inability to pay the full amount of their alleged liability. The United States conducted an ability to pay analysis based upon a review of financial documents provided by Daniel Green and the Estate of Maurice Green (including tax returns, financial questionnaires, and transactional documents). A Senior Financial Analyst with the Department of Justice Antitrust Division, Corporate Finance Unit, reviewed and evaluated the relevant documents and information, and determined that the settlement contribution to be made by the Settling Defendants is reasonable and consistent with those parties' limited ability to pay.

      The courts have ratified CERCLA ability to pay settlements as legitimate arrangements under which "the Government will recover some of its past costs while the PRPs are spared financial ruin." United States v. Bay Area Battery, 895 F. Supp. 1524, 1530 (N.D. Fla. 1995). By entering into early ability to pay settlements with responsible parties, "the Government ensures what little money the settlors have to contribute will be used to clean up the environment rather than pay attorneys." Id. at 1534. In crafting ability to pay settlements, the United States may "show compassion for individuals who are aged and/or impoverished," and need not leave ability to pay settlors "destitute." Id. at 1530. Ability to pay settlements are reasonable even if "[t]he Government could have squeezed the settlors for more money," particularly when "the additional recovery [would be] marginal compared to the amount of the Governments past costs [and any projected future costs]." Id. Finally, no information exists suggesting any relationship between the Site, this settlement, and any political activities by Mr. Green.

### Court Review of Proposed Consent Decree

17.    The legislative history of SARA establishes that a Court's role in reviewing a

settlement under CERCLA is to "satisfy itself that the settlement is reasonable, fair, and

consistent with the purposes that CERCLA is intended to serve." United States v. Cannons

Eng'g Corp., 899 F.2d 79, 85 (1st Cir. 1990), quoting H.R. Rep. No. 253, 99th Cong., 1st Sess.,

Pt. 3, at 19 (1985); United States v. AKZO Coatings of Am., Inc., 949 F.2d 1409, 1424 (6th Cir.

1991); United States v. Mid-State Disposal, Inc., 131 F.R.D. 573, 577 (W.D. Wis. 1990). This

standard of review is consistent with the standard of review that pertains to consent decrees

generally.  See Air Line Stewards and Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc., 630 F.2d 1164, 1167 (7th Cir. 1980) (settlements should be "fair, reasonable and adequate"); Donovan v. Estate of Fitzsimmons, 778 F.2d 298, 308 (7th Cir. 1985); United States v. Seymour Recycling Corp., 554 F. Supp. 1334, 1337 (S.D. Ind. 1982).

18.    In making its determination regarding a proposed settlement, the Court should "pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment."  Securities & Exchange Comm'n v. Randolph, 736 F.2d 525, 529 (9th Cir. 1984); In re: Acushnet River, 712 F. Supp. 1019, 1031 n.21 (D. Mass. 1989).  The underlying purpose of the Court's inquiry is to determine whether the decree adequately protects the public interest.  See United States v. Conservation Chem. Co., 628 F. Supp. 391, 400 (W.D. Mo. 1985), citing United States v. Seymour Recycling Corp., 554 F. Supp. 1334, 1337 (S.D. Ind. 1982).  There is a strong presumption in favor of voluntary settlements in CERCLA cases. AKZO, 949 F.2d at 1436.

19.    The settlement set forth in the proposed Consent Decree is consistent with the criteria set forth above.

20.    The settlement embodied in the Consent Decree constitutes the United States' best efforts to resolve the claims against the Settling Defendants fully and fairly in a manner consistent with the interests of the public.

21.    The United States believes that the proposed Consent Decree is fair, reasonable, consistent with the purposes of CERCLA, and in the public interest.  Moreover, the Department of Justice did not receive any comments pertaining to the proposed Consent Decree that "disclose [any] facts or considerations which indicate that the proposed judgment is inappropriate, improper, or inadequate."  See, 42 U.S.C. §§ 9622(d)(2)(B), 9622(i)(3).

**Conclusion**

For the foregoing reasons, the Court should approve and enter the Consent Decree.


Dated: May 4, 2006                              Respectfully submitted,

                                                SUE ELLEN WOOLDRIDGE
                                                Assistant Attorney General
                                                Environment and Natural Resources Division
                                                United States Department of Justice



                                                  s/ Jeffrey A. Spector
                                                JEFFREY A. SPECTOR
                                                Trial Attorney
                                                Environmental Enforcement Section
                                                Environment and Natural Resources Division
                                                U.S. Department of Justice
                                                P.O. Box 76ll
                                                Washington, DC  20044-7611
                                                Telephone: (202) 514-4432
                                                Jeffrey.Spector@usdoj.gov


OF COUNSEL:

RICHARD R. WAGNER
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL  60604
(312) 886-7947

**CERTIFICATE OF SERVICE**

       I, Jeffrey A. Spector, an attorney, certify that on May 4, 2006 I electronically filed **UNITED STATES' MOTION FOR ENTRY OF CONSENT DECREE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> David A. Owen
> GREENEBAUM DOLL
>   & MCDONALD PLLC
> 300 West Vine Street, Suite 1100
> Lexington, Kentucky 40507

>   s/ Jeffrey A. Spector
> Jeffrey A. Spector