ELECTRONICALLY FILED

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. C-1-00-637 |
| v. | ) | |
| | ) | |
| DANIEL GREEN, L.W.G. CO., | ) | |
| INC. f/k/a GREEN INDUSTRIES | ) | Judge Susan J. Dlott |
| INC., THE ESTATE OF MAURICE GREEN | ) | |
| and DANIEL GREEN IN HIS CAPACITY AS | ) | |
| THE PERSONAL REPRESENTATIVE OF THE | ) | |
| ESTATE OF MAURICE GREEN, | ) | |
| | ) | |
| Defendants | ) | |
| and | ) | |
| | ) | |
| SAUNDRA GREEN, wife of | ) | |
| DEFENDANT DANIEL GREEN, | ) | |
| | ) | |
| Rule 19 Defendant. | ) | |

* * * * * * * * * *

**MEMORANDUM IN SUPPORT OF OMNI'S
MOTION FOR SUMMARY JUDGMENT**

* * * * * * * * * *

Rule 19 Defendant Omni Industrial Properties, Inc. ("Omni") submits this memorandum

in support of its motion for summary judgment on the grounds that Plaintiff's claims are barred

by the applicable statute of limitations.

## INTRODUCTION

This case originated in 1999 as a cost recovery action brought pursuant to Section 9607

of the Comprehensive Environmental, Response, Compensation and Liability Act ("CERCLA")

for costs the United States alleges it incurred in 1996 and 1997 during its removal of hazardous

waste contamination at 3603 Kemper Road, Sharonville, Ohio (the "Site"). The site was

formerly owned and operated as a metal plating and finishing facility by various entities

controlled by Maurice Green.  Omni has never owned, operated, held any interest in, or otherwise been affiliated with the Site.  Instead, Omni is named in this lawsuit because in 1994, Omni purchased property at 9461 Le Saint Drive, Fairfield, Ohio (the "Le Saint Drive Property") from LWG, one of the entities owned and controlled by Maurice Green and the United States contends that the sale to Omni was fraudulent.  The United States has known of its potential claim against Omni since well before the filing of its Third Amended Complaint in 2004 and, therefore, Omni is entitled to summary judgment.

## CHRONOLOGY OF UNDISPUTED FACTS AND KEY DATES

1.     From 1981 through 1988, LWG owned and operated a plating business at the site. (Docket Entry No. 77, ¶¶ 16-22).

2.     In 1988, LWG sold the Site to HRW Industries, an entity not named in this litigation.  (Exhibit A to Hard Surface Technologies Mem. in Support of Motion for S.J., Docket Entry No. 44).  HRW owned and operated the facility as a chrome plating business until it abandoned the facility in 1995.

3.     Subsequent to selling the Site, LWG purchased the Le Saint Drive Property in 1998.  (Id. at p. 4 and Exhibit B).

4.     Approximately six years later, in April of 1994, LWG sold the Le Saint Drive Property to Omni.  (U.S. Mem. in Support of Motion for Leave to Amend, Docket Entry No. 63, at Exhibit 2).

5.     In May 1996, Defendant Daniel Green received a CERCLA §104(e) Request for Information from U.S. EPA concerning the Site.  The request sought various information related to Daniel Green's and LWG's ability to pay for the United States' costs associated with its clean-up of the Site.  (HST Mem. in Supp. of Motion for S.J., Docket Entry No. 44, at Exhibit H).

6.     On June 12, 1996, Daniel Green responded by producing, among other information, LWG's corporate tax returns for various years including 1994. LWG's 1994 Corporate Tax Return listed the sale of the Le Saint Drive Property for a sale price of $612,043 as occurring in that year. (Defendants' Opposition to U.S. Motion for Leave to Amend, Docket Entry No. 64, at Exhibit A).

7.     On November 22, 1996 in connection with an unrelated criminal investigation, Daniel Green was interviewed in a proffer session at the United States Courthouse in Cincinnati, Ohio. During that session, as documented by a confidential Memorandum Of Interview (previously submitted to the Court by the United States under seal for in camera review) Daniel Green notified the U.S. EPA that Omni Properties purchased the Le Saint Drive Property from LWG in 1994 and that Samuel Green, Daniel Green's brother, was "the owner" of Omni Properties. (See Docket Entry Nos. 24 and 25).

8.     On March 18, 1999, a United States Enforcement investigator interviewed Ms. Robin Grinstead, a former disgruntled employee of one of the Green companies regarding various matters related to the United States' investigation of its claims in this matter. A memorandum of that interview, which was produced March 17, 2006 in this matter, details that during that interview, Ms. Grinstead made several comments regarding the relationship between Omni and LWG and the legitimacy of the 1994 sale of the Le Saint Drive property to Omni, including comments that it was improper.[1] (Excerpt of Record of Interview, Exhibit 2 at p.12).

9.     In June 1999, during its investigation of its potential enforcement claims in this matter, the United States contracted for the performance of a title search related to the Le Saint

---

[1]  In 1998, Ms. Grinstead was convicted of embezzling funds from Green Industries. Defendants strongly dispute Ms. Grinstead's allegations. (See Excerpt of Transcript of 2002 Deposition of Robin Grinstead, Exhibit 1, at pp. 17-18). For purposes of this matter, her allegations and statements are offered only for the purpose of showing notice to the United States.

Drive Property. In addition to other information regarding the property, that title search report details the following information:

- "An Open-end Mortgage for $640,000 was recorded [for the property] in 1991. The borrower was LWG, Co. Inc. and the lender was the First National Bank of Warren County. The mortgage was transferred to Omni when the company acquired the target property in 1994. Finally, Omni recorded a Conditional Assignment of Rents from the target property, naming the First National Bank (of Warren County) as Assignee for the earlier mortgage."

- Sam Green is the President of Omni and was a signatory to the aforementioned Conditional Assignment of Rents.

(Multi-Site Potentially Responsible Party Search Green Industries Site, Title Search Report, 9461 Le Saint Drive, Fairfield, Ohio (June 23, 1999), Exhibit 3 at p. 3 and Appendix 1). This Title Search Report was produced to Omni during discovery on March 27, 2006.

10.    In August 1999, a United States Enforcement Investigator completed a report indicating that LWG originally purchased the Le Saint Drive Property for $880,000.00 in 1988. That report also indicated that Omni was incorporated just prior to Omni's purchase of the Le Saint Drive Property. (Exhibit 4). This record was produced to Omni during discovery on March 16, 2006.

11.    On August 4, 2000, Plaintiff filed its Complaint in this action. (Docket Entry No. 1). The Complaint contained no allegations against Omni.

12.    On October 16, 2000, Plaintiff filed its First Amended Complaint, adding a fraudulent transfer claim against Saundra Green pursuant to the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. §§3001 et seq. The United States claimed that "in

approximately 1990" Daniel Green fraudulently transferred certain assets to his wife. (First Amended Complaint, Docket Entry No. 2, ¶ 34 and ¶¶4 and 5 of the Prayer for Relief). The First Amended Complaint contained no claims against Omni.

13.    On November 28, 2000, Plaintiff sent a letter to Omni via certified mail, with a copy to the undersigned, stating "The United States is continuing its investigation into the relationship between Omni Industrial Properties, Inc. and the parties already named as defendants in this lawsuit [which included LWG]. Due to the complexity of the corporate relationships created by Daniel Green and Maurice Green, the United States has not yet stated a claim against Omni Industrial Properties, Inc. on a . . . fraudulent transfer theory or any other applicable legal theory." (Exhibit 5).

14.    On January 9, 2001, counsel for the United States and the United States EPA investigator, Arkell, conducted another interview of Ms. Robin Grinstead in connection with the further investigation of the United States' claims. Again Ms. Grinstead made several allegations regarding an improper relationship between Omni and LWG. (Excerpt of Record of Interview, Exhibit 6 at p. 4). This record of interview was produced to Omni during discovery on March 17, 2006.

15.    On January 7, 2002, Plaintiff again amended its Complaint, this time to join HST pursuant to a successor-in-interest theory. (Docket Entry No. 28 at ¶¶ 6, 37-41).

16.    In early February 2002, a copy of the LWG/Omni Properties April 1994 Purchase and Sale Agreement was produced to the United States. That same month, Daniel Green gave his deposition and was questioned at length regarding the sale. (Docket Entry No. 41 at pp. 305-316.)

17.     On October 17, 2002, Saundra Green moved for summary judgment on the United States' fraudulent transfer claim against her on the grounds that the claims against her were barred by the FDCPA statute of limitations.  (Docket Entry No. 42.)  In its brief in response to that motion, the United States acknowledged that it became aware of the transfers that were the subject of the United States' claim in 1996, when Daniel Green testified regarding their occurrence in connection with the aforementioned 1996 proffer statement interview with U.S. EPA.  (United States' Opposition to Saundra Green's motion for Summary Judgment, Docket Entry No. 54, at p. 7).

18.     On February 9, 2004, the Plaintiff sought leave to amend for the third time, alleging that Omni was a party to a fraudulent transfer by purchasing the Le Saint Drive Property from LWG.  (U.S. Motion for Leave to Amend, Docket Entry No. 63).  Defendants collectively opposed Plaintiff's motion, arguing that like the United States' claim against Saundra Green, the United States' claim against Omni was time-barred by the FDCPA and therefore leave to amend should be denied.  (Docket Entry No. 64).

19.     On July 20, 2004, the Court entered an "Order Ruling on Motions for Summary Judgment."  The Court granted Hard Surface Technologies' motion for summary judgment and also ruled on Saundra Green's motion for summary judgment.  With respect to the United States' claim against Saundra Green, the Court held that the FDCPA, and not the CERCLA, statute of limitations applied to the United States' fraudulent transfer claim against Ms. Green.  (Order, Docket Entry No. 67 at p. 28).  The Court ruled that the United States had conceded that Ms. Green would be entitled to summary judgment in her favor if the FDCPA statute of limitations applied (since the Complaint alleged that the transfers occurred in 1990 and the United States conceded that it learned of the transfers in 1996, but the United States did not amend its

Complaint to add a claim against Saundra until August 2000), but declined to dismiss Plaintiff's claims on the basis other asset transfers might be discovered later in discovery (Id. at p. 26, 28-29).

20.    On April 6, 2005, the Court (after the matter was transferred to Judge Watson) issued a Memorandum Opinion and Order permitting the United States to amend its Complaint a third time to add Omni pursuant to a fraudulent transfer theory. (Order, Docket Entry No. 76). The Court ruled that, like the United States' claim against Saundra Green, the FDCPA statute of limitations set forth 28 U.S.C. Section 3304(b)(1)(A) and specifically the following statute of limitation: "within two years after the transfer was or could reasonably have been discovered by the claimant" applied. (Id., pp. 9-10). The Court ruled that on the limited facts before it on Plaintiff's Motion to Amend, there were insufficient facts to hold that the United States knew or should have known of the "potentially fraudulent nature of the transfer" and thus insufficient facts to hold that the United States knew or should have known of its potential claim, more than two years before it sought leave to add a claim against Omni in February 2004. (Id. at pp. 11-12). Accordingly, the Court granted leave to amend.

21.    On May 30, 2006, the Court entered a Consent Decree resolving all of Plaintiff's claims against Daniel Green and Saundra Green in this matter. (Docket Entry No. 87). As both the Estate of Maurice Green and LWG are insolvent, the only viable claim existing in this matter is the United States' third party claim against Omni.

## ARGUMENT

Plaintiff's Federal Debt Collection Act, fraudulent transfer claim is time-barred. The FDCPA contains the following statute of limitations:

> A claim for relief with respect to a fraudulent transfer or obligation
> under this subchapter is extinguished unless the action is brought -

7

> (1) under section 3304(b)(1)(A) within 6 years after the transfer was made . . . or, if later, within 2 years after the transfer or obligation was or could reasonably have been discovered by the claimant;

28 U.S.C. § 3306(b). The United States' FDCPA claim against Omni is brought pursuant to Section 3304(b)(1)(A) of the Act. (See Third Amended Complaint, ¶¶ 64-67.)[2] Again, it is undisputed that LWG's sale of its Le Saint Drive property occurred in April 1994, over twelve years ago and well beyond the above referenced six year limitations period. (United States Motion for Leave at p. 4.) Furthermore, as the record clearly establishes, in 1996, the United States had direct knowledge of the 1994 sale to Omni. But, based on discovery in this matter, it is clear that the United States knew far more. If we pick a point in time, January 31, 2001, here is what the United States indisputably knew:

### 1996

In 1996, the United States learned that LWG sold the Le Saint Drive Property to Omni in excess of $600,000.00. They also learned that Sam Green, Dan Green's brother and Maurice Green's son, was the owner of Omni. Dan Green advised the United States in an interview that he, Dan Green, had transferred approximately $200,000.00 into his wife's name.

### 1999

In 1999, the United States again turned its attention to Omni and the Le Saint Drive Property. In March 1999, the United States interviewed Robin Grinstead, who alleged that Omni was owned by Sam Green, Dan Green's brother. She stated that she did not know if any money had changed hands when the property was sold to LWG to Omni. She also alleged that LWG bought the property for almost $1,000,000.00 and it was worth much more in 1997. Ms. Grinstead further alleged that Dan Green had signature authority for Omni and did in fact sign everything for Omni. She also stated that Dan Green maintained the checkbook for Omni and that Sam Green never signed the checks.

In June of 1999, the United States received the results of its Multi-Site Potentially Responsible Party search – title search report on the Le Saint Drive Property. As a result of that report, the United States learned that LWG had mortgaged the

---

[2] Judge Watson ruled that the U.S. could not pursue a claim under 28 U.S.C. 3304(b)(1)(B).

property in 1991 and that the mortgage was "transferred" to Omni in 1994 when Omni purchased the property. The United States knew that First National Bank (of Warren County) held the mortgage and that First National Bank also received an assignment of rent from Omni.

In August of 1999, the United States received a report from a United States EPA Civil Investigator (Arkell), which further disclosed that LWG purchased the Le Saint Drive Property for $880,000.00 in 1998 and that Omni was incorporated just prior to the purchase of the Le Saint Drive Property. The investigator reiterated a number of statements in Ms. Grinstead's interview regarding Dan Green's involvement in Omni and relating to whether money changed hands at the time of the sale.

### 2000

In 2000, the United States filed its initial Complaint and then amended it shortly thereafter to include fraudulent transfer claims against Saundra Green. Later, in November 2000, the United States sent letters to numerous entities (essentially any entity that had a relationship with the Greens or their companies), including a soccer club on which Dan Green served on the Board. More significantly, however, one of the recipients of the letter was Omni. That letter advised that the United States was investigating Omni and its relationship with LWG and eluded to a possible claim against Omni under a number of claims, one of which was a fraudulent transfer theory.

### 2001

On January 9, 2001, the same United States EPA investigator (Arkell), again interviewed Robin Grinstead, this time with counsel for the United States. During that interview, Ms. Grinstead alleged that all of Maurice Green and/or Dan Green's companies were all the same company. She included Omni in the group of companies. She further stated that Dan Green created Omni for the ownership of the Le Saint Drive Property and that the Greens set the company up due to an IRS investigation. Ms. Grinstead further stated that none of the corporations created by the Greens were legitimate and also alleged that Dan Green loaned $500,000.00 to another company via Omni.

The claims asserted against Omni are time-barred by the express language of the statute as they have not been brought within 6 years of the date of the transfer or within 2 years of the time the government learned of the transfer. The transfer at issue occurred nearly ten years before the amended complaint was filed. Even if the government relies on the two year time lapse between when it learned of the transfer and the complaint, the claim is still time barred, as

9

the United States was made aware of the transfer more than seven years before the complaint was amended to include this claim.

A.    **The United States Has Long Known Not Only of the Transaction, But Also its Details.**

As discussed below, the law does not require that the United States know the transaction to be fraudulent to start the running of the statute of limitations.  Even if the Court were to require that the fraudulent nature of the transaction be known before the running of the statute is triggered, the United States' claim is not timely.

As recent discovery documents demonstrate, the United States was in possession of a wealth of information regarding the transaction many years before this claim was filed. Regardless, "discovering" the circumstances surrounding this transfer of assets would have taken no great effort.  Information about the sale of the property was available long before the deposition of Daniel Green.  The building at issue was LWG's largest asset. Its transfer was not a secret.  The details of the transaction were widely available, and there was no need to interview Daniel Green to learn them.  Asserting that this was necessary to "discover the fraudulent nature of the transaction" is simply incorrect.  On February 21, 2006, the United States deposed the lending institution that financed the Le Saint Drive Property, but they could easily have interviewed or subpoenaed the bank in the 1990s at the same time they were investigating Omni. As outlined in the Chronology of Key Dates and Events and the summary above, the United States interviewed Dan Green and Robin Grinstead, investigated through title reports and other means the specifics regarding the Le Saint Drive Property and even went so far as to send a letter to Omni telling Omni that they were under investigation for potential fraudulent transfer theory claims.  All of this was done prior to January 31, 2001.  In addition, the United States, when they elected to file their Complaint, sued Dan Green individually, Maurice Green's Estate, LWG,

Saundra Green and Hard Surface Technologies.  With the exception of Omni, they filed a complaint against the other targets of their investigation.

B.    **The FDCPA's Statute of Limitations Begins to Run at the Time the Government Learns of the Transfer Itself, Not When it Learns of the "Fraudulent Nature" of the Transfer.**

The United States will likely argue that the statute of limitations should not have started running until it became aware of the allegedly fraudulent nature of the transaction.  They will likely claim that the statute did not run until they had deposed Daniel Green concerning the transaction in 2002.  (See Reply in Support of Plaintiff's Motion For Leave to File Third Amended Complaint, p. 2).  Under this argument, the United States will take the position that it did not "discover" the transfer for the purposes of the running of § 3306(b)(1)(A)'s statute of limitations until it "learned of the potentially fraudulent nature" of the transaction.  As noted above, even under such a strained reading, the claims against Omni should be dismissed.

The United States will also likely rely upon Judge Watson's April 6, 2005 Memorandum, Opinion and Order in this matter.  (Order, Docket Entry No. 76).  It is important to note, however, that Judge Watson was not addressing the statute of limitations issue substantively, but was addressing a Motion for Leave to Amend the Complaint.  As the Court stated in that Opinion, leave to amend "shall be freely given when justice so requires" and that a court denying leave to amend must state a basis for the decision to deny a motion to amend.  (Id. at pp. 6-7). Further, the Court's ultimate decision on the leave to amend appeared to turn on whether Omni would be prejudiced by the amendment, noting that "because the Court can find no significant showing of prejudice to Defendants, the Court will not deny the United States Motion based on Federal Rule 16(b)."  The Court also indicated (without the benefit of the discovery that has since been exchanged in this matter) that the United States did not have sufficient information at

the time of filing the Motion for Leave to Amend that would lead to the Court to conclude that the claims would be futile.

Even if Judge Watson's articulation of the standard were correct (and Omni believes it was not), the discovery in this case would be sufficient to grant summary judgment. But, as stated above, the statute of limitations begins to run when the United States learned of the *transfer or sale*. The statute of limitations could not possibly begin to run at the time the United States learned of the "fraudulent nature" of the sale or transfer because in many instances that would require adjudication of the claims in order to start the running of the statute of limitations. In the present case, Omni has consistently contended that the transfer in question was not fraudulent and that if this matter proceeds to trial Omni would prevail. Such a theory requires the Court to adjudicate the substantive issues in order to determine the statute of limitations issue. That is not what was intended by Congress and is not what the clear reading of the statute provides.

The FDCPA's statute of limitations allows a claimant to file "…within 6 years after the transfer was made or the obligation was incurred or, if later, within 2 years after the transfer or obligation was or could reasonably have been discovered by the claimant…." 28 U.S.C. § 3306(b)(1)(A). The language of the statute never mentions anything other than the discovery of the *transaction* as the start of the running of the statute. The argument that the Court must read into the statute an implicit requirement that the claimant not only knows of the transfer, but also knows its fraudulent nature is not supported by logic. Had Congress intended such a requirement it would simply have added the words "fraudulent nature" or "nature" or "details of the" or any of countless phrases modifying the word "transfer." It did not. The language instead indicates that it is the transfer—regardless of its nature or the details surrounding it—which triggers the

running of the statute of limitations. Congress did not intend to place a provision into the statute that purports to limit the time for bringing an action, but instead does nothing to require that the government take timely action to enforce its claims.

C.     **The Policies Underlying Statutes of Limitation Support Barring the Government's Claim.**

Barring the government's claim based on the statute of limitations, in addition to being the correct decision under either interpretation of the applicable statute, also promotes the policies of fairness embodied in a statute of limitation. As the Supreme Court has noted:

> Statutes of limitation are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."

Burnett v. New York Central Railroad Co., 380 U.S. 424 (1965) (quoting Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348-349 (1944)).

Here, the interests of fairness and justice the Court was referring to above are threatened if the United States' claim against Omni is allowed to proceed. The United States' claims bring a cloud over Omni's property, inhibiting its ability to refinance or sell. Nearly a decade passed between the activity that forms the basis of the United States' claim and the actual filing of that claim. During that time, Omni was not "on notice to defend" its actions. Here, justice must be promoted by barring this surprise claim by the United States, brought long after the proper time for prosecuting the action has passed. If there has ever been a time when "the right to be free of stale claims" has "come[] to prevail over the right to prosecute them," that time is now.

This matter has gone on for far too long. Maurice Green has died, the related companies, with only a few exceptions, are all dissolved, the claims against Dan Green and Saundra Green

have been resolved.  All that remains is this Rule 19 claim against Omni.  Although it is not presently before the Court, the evidence that was obtained during discovery demonstrates that the transaction was not fraudulent and that there were very good reasons for the manner in which the transaction took place and the financing was implemented.  But for present purposes, that is irrelevant.  What is relevant, is that the United States conducted a comprehensive investigation of every aspect of Maurice Green, Dan Green and the companies with which they were affiliates. That investigation in the 1990s identified Omni, the Le Saint Drive Property, First National Bank as the lender and a reduced sale price from the $880,000 purchase price, and all of that information was obtained by the United States through their investigation.  What did not happen, however, was the United States did not act on that information as it related to Omni until 2004. It simply was not reasonable for the United States to wait for that period of time to file an amended complaint against Omni.  Accordingly, the claims against Omni and this matter should be dismissed.

## CONCLUSION

Wherefore, Omni requests that the Court grant its Motion for Summary Judgment and dismiss this entire action with prejudice.

Respectfully submitted,


/s/ David A. Owen
David A. Owen
Greenebaum Doll & McDonald PLLC
300 W. Vine Street, Suite 1100
Lexington, Kentucky 40507

-AND-

Philip J. Schworer (0036982)
Greenebaum Doll & McDonald PLLC
2800 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202-4728

COUNSEL FOR THIRD PARTY DEFENDANT
OMNI INDUSTRIAL PROPERTIES, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of June, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:   Gerald Francis Kaminski (Gerald.kaminski@usdoj.gov); David J. Schmitt (djs@corsbassett.com); and Jeffrey A. Spector (Jeffrey.Spector@usdoj.gov).

I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to the following non-CM/ECF participants:

W. Benjamin Fisherow
Deputy Chief
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
Ben Franklin Station
P.O. Box 7611
Washington, DC 20004

Gregory G. Lockhart
United States Attorney
Southern District of Ohio
Office of the United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202

Richard R. Wagner
Associate Regional Counsel
U.S. Environmental Protection Agency – Region 5
77 West Jackson Blvd.
Chicago, IL 60604

/s/ David A. Owen
Counsel for Defendant
Omni Industrial Properties, Inc.

LEX-702331_1.doc