# DYNAMAC
# CORPORATION
## Environmental Services

## MULTI-SITE POTENTIALLY RESPONSIBLE PARTY SEARCH
### GREEN INDUSTRIES SITE

### TITLE SEARCH REPORT

### 9461 LE SAINT DRIVE

### FAIRFIELD, OHIO

Prepared For:

U.S. Environmental Protection Agency
Region 5
Chicago, IL  60604



EXHIBIT

3

# MULTI-SITE POTENTIALLY RESPONSIBLE PARTY SEARCH

## TITLE SEARCH REPORT

### 9461 LE SAINT DRIVE

### FAIRFIELD, OHIO

Prepared For:

U.S. Environmental Protection Agency
Region 5
Chicago, IL  60604

| | | |
|---|---|---|
| Contract No. | : | 68-W4-0015 |
| Work Assignment No. | : | C05008 |
| Dynamac No. | : | C008-202-145C |
| Site No. | : | None |
| Date Prepared | : | June 23, 1999 |
| EPA Work Assignment Mgr. | : | Ruth A. Miles |
| Telephone No. | : | (312) 353-6431 |
| Dynamac Work Assignment Mgr. | : | Russ Crittenden |
| Telephone No. | : | (312) 466-0222 |

# TABLE OF CONTENTS

<u>Section</u>                                                                                          <u>Page</u>

1.0    INTRODUCTION ................................................................. 1

       1.1    Work Assignment Background ........................................ 1
       1.2    Site Background ......................................................... 1
       1.3    Technical Direction .................................................... 1

2.0    TECHNICAL APPROACH ...................................................... 2

       2.1    Obtaining Title Records .............................................. 2
       2.2    Analysis of Title Records ........................................... 2

3.0    RESEARCH FINDINGS ......................................................... 3

       3.1    Title Search Summary/Description of Parcels ................. 3
       3.2    Target Property Ownership ......................................... 3
       3.3    Special Circumstances Encountered .............................. 3
       3.4    Additional or Supplemental Research Efforts ................. 7
       3.5    Telephone and Address Search ..................................... 7

4.0    REFERENCES ..................................................................... 8

5.0    CONTACTS ........................................................................ 9

## FIGURES

FIGURE 1:            TARGET PROPERTY MAP ................................. 4
FIGURE 2:            CHAIN-OF-TITLE ........................................... 6

## TABLE

TABLE 1:             TARGET PROPERTY OWNERSHIP AND TRANSACTIONS ....... 5

## APPENDICES

APPENDIX 1 (REFERENCES 1-5):        DEEDS AND RELATED DOCUMENTS
APPENDIX 2 (REFERENCE 6):           TAX STATEMENT
APPENDIX 3 (REFERENCES 7-8):        PLAT MAPS

# 1.0 INTRODUCTION

## 1.1    Work Assignment Background

Dynamac Corporation (Dynamac) received Work Assignment C05008 under U.S. Environmental Protection Agency (EPA) Contract No. 68-W4-0015 to provide multi-site Potentially Responsible Party (PRP) Search support for EPA Region 5.  One task defined in EPA's statement of work (SOW) for this work assignment and described in the April 4, 1995, Dynamac Revised Work Plan, is performance of site-specific PRP searches.

On June 9, 1999, Dynamac received technical direction in the form of a Title Search Request Form from Ruth Miles, the EPA Work Assignment Manager (WAM), directing Dynamac to conduct a title search for the property at 9461 Le Saint Drive in Fairfield, Butler County, Ohio (the target property).

This report describes the technical approach and findings related to Dynamac's title search activities for this Site.

## 1.2    Site Background

EPA provided Dynamac with the address and the name of the suspected current owner of the target property.  EPA indicated that Omni Properties had acquired the property from LWG Company, Inc., in 1994.  EPA also provided Assessment Information and the tax Parcel ID Number for the target property.

## 1.3    Technical Direction

EPA directed Dynamac to conduct the title search to identify the owners of the target property back to time the property was acquired by Green Industries in the 1980s.  EPA directed Dynamac to obtain copies of deeds transferring the target property.  EPA also requested copies of all recorded encumbrances on the target property, as well as updated tax assessment data and transfer taxes.

## 2.0  TECHNICAL APPROACH

### 2.1    Obtaining Title Records

Prior to traveling, Dynamac telephoned the Butler County Recorder (Recorder's Office) to inquire about hours of operation and location. At a computer terminal at the Recorder's Office, Dynamac located documents recorded since 1988 concerning the target property. Dynamac viewed the referenced documents, verified those documents that were relevant to the target property, and obtained copies of the target property documents. Copies of these records are provided in Appendix 1.

Dynamac also visited the Butler County Treasurer's Office to obtain tax information for the target property. The property tax printout is provided in Appendix 2. Dynamac also obtained a copy of the plat map of the target property from the Recorder's Office. The map of the target property is provided in Appendix 3.

### 2.2    Analysis of Title Records

Dynamac completed a review and analysis of the title records obtained for the target property. The review and analysis focused on the following areas:

- definition of legal boundaries for each tax parcel in the target property boundaries;
- development of a map depicting tax parcels in the target property boundaries;
- development of an ownership table for each tax parcel;
- narrative summary of title search results; and
- organization of title documents for convenient reference as attachments to this report.

# 3.0 RESEARCH FINDINGS

## 3.1    Title Search Summary/Description of Parcels

The target property is located at 9461 Le Saint Drive, in Fairfield, Butler County, Ohio. Figure 1 is a map that identifies the location and boundaries of the target property. The target property consists of 5.753 acres. The tax number for the target property is M5500-205.000-001.

**Target Property Legal Description**

The target property is composed of the parcel described below:

*Situated and being in Section 9, Town 2, Range 2, City of Fairfield, Butler County, Ohio and being known and designated as Lot #9744 (Neyer Interstate Properties, Section 2, Envelope 937, Pages C & D) on the list of lots for said City in the Office of the Butler County Auditor.* (Ref. 2).

## 3.2    Target Property Ownership

According to documents recorded in Butler County, the target property is owned by Omni Industrial Properties, an Ohio Corporation (Omni). Omni acquired the property in 1994 through a Warranty Deed from LWG Co., Inc., f/k/a Green Industries, Inc. (Ref. 2).

Table 1 indicates the target property ownership and transactions from 1988 to the present. Dynamac prepared a Chain-of-Title (Figure 2), which indicates the changes in ownership for the target property from 1988 to the present. Both Table 1 and Figure 2 are in reverse chronological order.

## 3.3    Special Circumstances Encountered

Dynamac encountered no special circumstances in completing this title search.

## 3.4    Additional or Supplemental Research Efforts

Dynamac obtained copies of recorded mortgages, liens, or other encumbrances on the target property recorded since 1988. An Open-end Mortgage for $640,000 was recorded in 1991. The borrower was LWG, Co., Inc., and the lender was The First National Bank of Warren County (Ref. 3). The mortgage was transferred to Omni when the company acquired the target property in 1994 (Ref. 2). Finally, Omni recorded a Conditional Assignment of Rents from the target property, naming the First National Bank (of Warren County) as Assignee as security for the earlier mortgage (Ref. 1).

---

# FIGURE 1
## TARGET PROPERTY MAP
### 9461 LE SAINT DRIVE
### FAIRFIELD, OHIO

## TABLE 1
## TARGET PROPERTY OWNERSHIP AND TRANSACTIONS
### 9461 LE SAINT DRIVE
### FAIRFIELD, BUTLER COUNTY, OHIO

| DOCUMENT TYPE | GRANTOR | GRANTEE | DATE RECORDED | DOCUMENT NUMBER | REFERENCE NUMBER |
|---|---|---|---|---|---|
| Warranty Deed | LWG Co., Inc., f/k/a Green Industries, Inc. | Omni Properties, Inc. | 05/03/94 | Book 5105 Page 615 | 2 |
| Corporation Deed | Cambridge Holding Company | Green Industries, Inc. | 05/25/88 | Book 1632 Page 225 | 4 |
| Corporation Deed | General Polymers Corporation | Cambridge Holding Company | 05/25/88 | Book 1632 Page 221 | 5 |

**FIGURE 2**
**CHAIN-OF-TITLE**
**9461 LE SAINT DRIVE**
**FAIRFIELD, OHIO**



Omni Properties, Inc.
Warranty Deed 08/03/94
Book 5105, P. 615, Ref. 2

LWG Co., Inc. f/k/a Green Industries, Inc.
Corporation Deed 05/25/88
Book 1632, P. 225, Ref. 4

Cambridge Holding Company
Corporation Deed 05/25/88
Book 1632, P. 221, Ref. 5

General Polymers Corporation

---

Dynamac inquired about the property tax status of the parcels at the Butler County Treasurer's Office (Treasurer's Office).  Omni is the taxpayer of record for the target property and all taxes are current. The target property is appraised for $1,073,460, and is assessed for tax purposes for $375,710.

## 3.5    Telephone and Address Search Results

Dynamac utilized the internet and a computer database (ProCD PhoneBooks) to search telephone numbers and addresses of current and former target property owners identified in this title search. Using the computer database, Dynamac obtained the following addresses and phone numbers:

Omni Industrial Properties, Inc.
9461 Le Saint Dr.
Fairfield, OH 45014-5447
No telephone number listed

LWG Co., Inc.
9461 Le Saint Dr.
Fairfield, OH 45014-5447
513-860-1156

## 4.0 REFERENCES

1. Conditional Assignment of Rents. Assignor: Omni Properties, Inc. Assignee: First National Bank (of Warren County). Date recorded: May 5, 1999. Book 5114, Page 94.

2. Warranty Deed. Grantor: LWG Co., Inc. Grantee: Omni Properties, Inc. Date Recorded: May 3, 1994. Book 5105, Page 615.

3. Open-End Mortgage. Lender: First National Bank of Warren County. Borrower: LWG, Co., Inc. Date Recorded: September 12, 1991. Book 2208, Page 524.

4. Corporation Deed. Grantor: Cambridge Holding Company. Grantee: Green Industries, Inc. Date Recorded: May 25, 1988. Book 1632, Page 225.

5. Corporation Deed. Grantor: General Polymers Corporation. Grantee: Cambridge Holding Company. Date Recorded: May 25, 1988. Book 1632, Page 221.

6. Tax Printout for Parcel ID # M5500205000001. Date: June 14, 1999.

7. Plat of New Lot #9744. Date Recorded: July 11, 1983. Book 1471, Page 85.

8. Plat of Neyer Interstate Properties Section 2 . May 1981. Envelope 937, Pages C & D.

## 5.0  CONTACTS

1.  Ruth A. Miles, Work Assignment Manager, U.S. Environmental Protection Agency (EPA)
    Region 5, 77 W. Jackson Blvd., Chicago, IL  60604. (312) 353-6431.

2.  Sally Jansen, Enforcement Specialist, U.S. Environmental Protection Agency (EPA) Region
    5, 77 W. Jackson Blvd., Chicago, IL  60604.  (312) 353-9046.

3.  Butler County Recorder. 130 High Street, Hamilton, OH, MI 45011.  (513) 887-3192.

4.  Butler County Treasurer. 130 High Street, Hamilton, OH, MI 45011.  (513) 887-3181.

5.  Russ Crittenden, Title Researcher, Dynamac Corporation, 111 N. Canal St., Suite 955,
    Chicago, IL 60606.  (312) 466-0222.

APPENDICES TO

MULTI-SITE POTENTIALLY RESPONSIBLE PARTY SEARCH

TITLE SEARCH REPORT

9461 LE SAINT DRIVE

FAIRFIELD, BUTLER COUNTY, OHIO

APPENDIX 1

00029256

## CONDITIONAL ASSIGNMENT OF RENTS

KNOW ALL MEN BY THESE PRESENTS, that Omni Industrial Properties, Inc., an Ohio corporation, hereinafter referred to as Assignor, and 1st National Bank, 730 E. Main Street, Lebanon, Ohio 45036, a corporation organized and existing under the laws of the United States of America, hereinafter referred to as Assignee, have entered into mortgages whereby the Assignor mortgaged to the Assignee the following described properties:

SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE FOR LEGAL DESCRIPTION.

WHEREAS, it is the intention of the parties that portions or all of the improvements constructed or to be constructed on the above described properties will be leased by the Assignor to one or more tenants; and

WHEREAS, it is the further intention of the parties that additional security be given to the Assignee for the performance by the Assignor of the obligations of the aforesaid mortgages by the assignment of the rents forthcoming from said tenants.

NOW, THEREFORE, IN CONSIDERATION of the granting of the aforesaid mortgages by the Assignee to the Assignor, the Assignor does hereby sell, assign, transfer and set over unto the Assignee, its successors and assigns, all of the rents, issues and profits now due or which may hereafter become due under or by virtue of any Lease, whether written or verbal, or any letting of, or agreement for the use or occupancy of any part of the above described premises.

ASSIGNOR further agrees that this Assignment shall remain in full force and effect so long as all indebtedness to the Assignee, secured by mortgages upon the properties described above, remains unpaid and that it may be enforced at any time during that period by the Assignee, its successors and assigns.

It is the intention of the Assignor to create a present assignment of all the rents, issues and profits now due or which may hereafter become due under or by virtue of any leases, whether written or verbal, or any letting of, or agreement for any use or occupancy of any part of the premises hereinabove described; but inasmuch as this Assignment is made as additional security for the performance of the obligations of the aforesaid mortgage indebtedness, it is agreed that the right of the Assignee to collect said rents, issues and profits shall be conditioned upon the existence of default in the payment of the indebtedness under the aforesaid mortgages or default in any other condition of the aforesaid mortgages from the Assignor to the Assignee, or a determination by Assignee that it is insecure in the collateral securing the aforesaid mortgages.

Filed for Record in:
Butler County Ohio
Joyce R. Thall, Recorder
On 05/12/1994 At 11:42A
AR       26.00
BOOK 5114 PAGE 94

In furtherance of the foregoing assignment, Assignor authorizes Assignee, through its employees or agents, at its option, after the occurrence of a default as aforesaid, to enter upon the mortgaged premises and to collect, in the name of the Assignor, or in the name of Assignee, the rents accrued but unpaid and in arrears at the date of such default, as well as the rents thereafter accruing and becoming payable during the period of the continuance of any such default; and to this end, the Assignor further agrees that it will facilitate in all reasonable ways Assignee's collection of said rents and will, upon request by Assignor, execute a written notice to each tenant directing the tenant to pay rent to Assignee.

Assignor also hereby authorizes Assignee, upon such entry, at its option, to take over and assume the management, operation and maintenance of the said mortgaged premises, and to perform all acts necessary and proper and to expend such sums out of the income of the mortgaged premises as may be needful in connection therewith, in the same manner and to the same extent as the Assignor theretofore might do, including the right to effect new leases, to cancel or surrender existing leases, to alter or amend the terms of existing leases, to renew existing leases, or to make concessions to tenants, the Assignor releasing all claims against Assignee arising out of such management, operation and maintenance, excepting the liability of Assignee to account as hereinafter set forth.

A. Amounts received or collected by the Assignee, its successors and assigns, by virtue of this Agreement, shall be applied for the following purposes, but not necessarily in the order named, priority in application of such funds being in the sole discretion of Assignee:

1. To the payment of all necessary expenses for the operation, protection and preservation of said premises including the usual and customary fees for management services.

2. To the payment of taxes and assessments levied or assessed against the property described herein after said taxes and assessments become due and payable.

3. To the payment of premiums due and payable on policies insuring said premises or providing such liability and property damage coverage on the premises.

4. To the payment of interest and principal on the aforesaid mortgages indebtedness.

Assignor hereby covenants and warrants to Assignee that neither it nor any previous owner of the mortgaged premises has executed any prior assignment or pledge of the rentals from the mortgaged premises, nor any prior assignment or pledge of Assignor's interest in any lease of the whole or any part of the mortgaged premises. Assignor also hereby covenants and agrees

not to collect the rents from the said mortgaged premises in advance other than as required to be paid in advance by the terms of any rental agreement, and further agrees not to do any other act which would destroy or impair the benefits to Assignor of this assignment.

It is the intention of the parties hereto that an entry by Assignee upon the mortgaged premises under the terms of this instrument shall constitute the said Assignee a "mortgagee in possession" in contemplation of law except at the option of the Assignee.

This Assignment shall remain in full force and effect as long as the mortgage debts to Assignee remain unpaid, in whole or in part.

The provisions of this instrument shall be binding upon Assignor and its legal representatives, successors or assigns and upon Assignee and its successors or assigns.

It is understood and agreed that neither the existence of this assignment nor the exercise of any privilege to collect the rents, issues and profits hereunder, shall be construed as a waiver by Assignee, or its successors and assigns, of the right to enforce payment of the debts hereinabove mentioned in strict accordance with the terms and provision of the mortgages and notes for which this Assignment is given as additional security.

It is understood and agreed that a full and complete release of the aforesaid mortgages shall operate as a full and complete release of all of the rights and interests of Assignee, and that, after said mortgages have been fully released, this instrument shall be void and of no further effect.

IN WITNESS WHEREOF, the said Omni Industrial Properties, Inc., by Samuel Green, its President, and 1st National Bank, by Jillora H. Cesta, its President, have hereunto set their hands this 9th day of April, 1994.

Signed and acknowledged
in the presence of us.

OMNI INDUSTRIAL PROPERTIES, INC.

By: _____
    Samuel Green, President

1st NATIONAL BANK

By: _____
    Jillora H. Cesta, President

STATE OF ~~OHIO~~) *Pennsylvania*
           ) SS:
~~WARREN COUNTY~~) *Chester*

    BE IT REMEMBERED, that on the 5th, day of ~~April~~ *May*, 1994, before me, the undersigned, a notary public, in and for said county and state, personally came Omni Industrial Properties, Inc., by Samuel Green, President, the corporation whose name is subscribed to and which executed the foregoing instrument, and for him and as such officer, and for and on behalf of said corporation, acknowledged the signing and execution of said instrument; and acknowledged that he executed said instrument by authority of the Board of Directors and on behalf of said corporation; and that the signing and execution of said instrument is his free and voluntary act and deed, his free act and deed as such officer, and the free and voluntary act and deed of said corporation, for the uses and purposes in said instrument mentioned.

    IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my notarial seal on the day and year first above written.

                        _Linda Alphin_
                        Notary Public, State of ~~Ohio~~ *Pennsylvania*

STATE OF OHIO)
        ) SS:
WARREN COUNTY)

    BE IT REMEMBERED, that on the      day of      before me, the undersigned, a notary public, in and for said county and state, personally came 1st National Bank by Jillora H. Cesta, President, the corporation whose name is subscribed to and which executed the foregoing instrument, and for herself and as such officer, and for and on behalf of said corporation, acknowledged the signing and execution of. said instrument; and acknowledged that she executed said instrument by authority of the Board of Directors and on behalf of said corporation; and that the signing and execution of said instrument is her free and voluntary act and deed, her free act and deed as such officer, and the free and voluntary act and deed of said corporation, for the uses and purposes in said instrument mentioned.

    IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my notarial seal on the day and year first above written.

                        _C. Nolan Dod_
                        Notary Public, State of Ohio

C. Nolan Tolan
Notary Public
In And For The State Of Ohio
My Commission Expires March 8, 1998

EXHIBIT "A"

Situated and being in Section 9, TOwn 2, Range 2, City of
Fairfield, Butler County, Ohio and being known and designated as
Lot #9744 (Meyer Interstate Properties, Section 2, Envelope 937,
Pages C and D) on the list of lots for said City in the Office of
the Butler County Auditor.

WARRANTY DEED

LWG Co., Inc., an Ohio corporation, formerly known as Green Industries, Inc., for valuable consideration paid, grants with general warranty covenants to Omni Industrial Properties, Inc., an Ohio corporation, whose tax-mailing address is 9461 LeSaint Drive, Fairfield, Ohio 45014, the following REAL PROPERTY, to-wit:

Situated and being in Section 9, Town 2, Range 2, City of Fairfield, Butler County, Ohio and being known and described as Lot #9744 (Meyer Interstate Properties, Section 2, Envelope 937, Pages C and D) on the list of lots for said City in the Office of the Butler County Auditor.

Prior Instrument Reference: Volume 1632, Page 225 of the Deed Records of Butler County, Ohio

Subject to a mortgage to First National Bank of Warren County, Ohio in the original principal amount of $640,000.00, with a current balance of approximately $631,500.00, dated September 6, 1991 and recorded in Volume 2208, Page 524 of the Butler County, Ohio Mortgage Records, which mortgage the Grantee herein assumes and agrees to pay.

IN WITNESS WHEREOF, LWG Co., Inc., an Ohio corporation, by resolution of its Board of Directors, duly adopted, has caused these presents to be signed by Daniel Green, its President, this 29th day of April, 1994.

Signed and acknowledged
in the presence of us:

_Mary Fletcher_                    LWG CO. INC.

_Beverly R. Grinstead_        By: _Daniel Green_
Mary Fletcher                           Daniel Green, President
Beverly R. Grinstead

STATE OF OHIO, COUNTY OF BUTLER, SS:

The foregoing instrument was acknowledged before me this 29th day of April, 1994 by Daniel Green, President of LWG Co., Inc., on behalf of said corporation.

_Beverly R. Grinstead_
Notary Public, State of Ohio
BEVERLY GRINSTEAD
Notary Public, State of Ohio
My Commission Expires July 10, 1994

This instrument was prepared by:
Lee H. Parrish, Attorney at Law.

Filed for Record in:
Butler County Ohio
Joyce B. Thall, Recorder
On 05/03/1994 At 03:38P
DEED      14.00
BOOK 5105 PAGE 615

TRANSFERRED
DATE 5-03-94
CONVEYANCE # 5286
FEE $ 1268.00 ($631,500)
EXEMPT

James M. Brown, Butler Co. Auditor
This conveyance has been examined and the grantor
has complied with section 319.202 of the revised code.

00027142

BOOK 2208 PAGE 524

32248

# OPEN-END MORTGAGE

THIS MORTGAGE is made this............6th............day of.....September..............,
19..91 between the Mortgagor, LWG Co., Inc., an Ohio corporation fka Green......
....Industries, Inc................(herein "Borrower"), and the Mortgagee. The First.....
....National Bank of Warren County.................., a corporation organized and existing
under the laws of the United States of America.., whose address is 730 E. Main........
....Street, Lebanon, Ohio 45036...................................(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of Six Hundred Forty Thousand
....($640,000.00)..........................Dollars, which indebtedness is evidenced by Borrower's note
dated September 1991....(herein "Note"), providing for monthly installments of principal and interest,
with the balance of the indebtedness, if not sooner paid, due and payable xx. as provided therein;..
.....................;

To SECURE to Lender (a) the repayment of the indebtedness evidenced by the Note, with interest thereon, the
payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this
Mortgage, and the performance of the covenants and agreements of Borrower herein contained, and (b) the repayment
of any future advances, with interest thereon, made to Borrower by Lender pursuant to paragraph 21 hereof (herein
"Future Advances"), Borrower does hereby mortgage, grant and convey to Lender the following described property
located in the County of.....Butler..............................., State of Ohio:

Situated and being in Section 9, Town 2, Range 2, City of
Fairfield, Butler County, Ohio and being known and designated as
Lot #9744 (Meyer Interstate Properties, Section 2, Envelope 937,
Pages C and D) on the list of lots for said City in the Office of
the Butler County Auditor.

RECEIVED FOR RECORD
JOYCE D. HALL, RECORDER
BUTLER CO., OHIO

91 SEP 12 PM 3: 21

RECORD Mtg

FEE 14

which has the address of.................................................................
.......................................(herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all
fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be
deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said
property (or the leasehold estate if this Mortgage is on a leasehold) are herein referred to as the "Property".

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property, that the Property is unencumbered, and that Borrower will warrant and defend
generally the title to the Property against all claims and demands, subject to any declarations, easements or restrictions
listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

OHIO—1 to 4 Family—4/75—FNMA/FHLMC UNIFORM INSTRUMENT

BOOK 2208 PAGE 525

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and interest on any Future Advances secured by this Mortgage.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly installments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments which may attain priority over this Mortgage, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account, or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency within 30 days from the date notice is mailed by Lender to Borrower requesting payment thereof.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any, in the manner provided under paragraph 2 hereof or, if not paid in such manner, by Borrower making payment, when due, directly to the payee thereof. Borrower shall promptly furnish to Lender all notices of amounts due under this paragraph, and in the event Borrower shall make payment directly, Borrower shall promptly furnish to Lender receipts evidencing such payments. Borrower shall promptly discharge any lien which has priority over this Mortgage; provided, that Borrower shall not be required to discharge any such lien so long as Borrower shall agree in writing to the payment of the obligation secured by such lien in a manner acceptable to Lender, or shall in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require; provided, that Lender shall not require that the amount of such coverage exceed that amount of coverage required to pay the sums secured by this Mortgage.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All premiums on insurance policies shall be paid in the manner provided under paragraph 2 hereof or, if not paid in such manner, by Borrower making payment, when due, directly to the insurance carrier.

All insurance policies and renewals thereof shall be in form acceptable to Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, provided such restoration or repair is economically feasible and the security of this Mortgage is not thereby impaired. If such restoration or repair is not economically feasible or if the security of this Mortgage would be impaired, the insurance proceeds shall be applied to the sums secured by this Mortgage, with the excess, if any, paid to Borrower. If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

Unless Lender and Borrower otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments. If under paragraph 18 hereof the Property is acquired by Lender, all right, title and interest of Borrower in and to any insurance policies and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition shall pass to Lender to the extent of the sums secured by this Mortgage immediately prior to such sale or acquisition.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the bylaws and regulations of the condominium or planned unit development, and constituent documents. If a condominium or planned unit development rider is executed by Borrower and recorded together with this Mortgage, the covenants and agreements of such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider were a part hereof.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees and entry upon the Property to make repairs. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and

Printed From Archive on 06-14-1999 by CRITTENDEN

BOOK 220S PAGE 526

Lender's written agreement or applicable law. Borrower shall pay the amount of all mortgage insurance premiums in the manner provided under paragraph 2 hereof.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable from time to time on outstanding principal under the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate permissible under applicable law. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Mortgage, with the excess, if any, paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, there shall be applied to the sums secured by this Mortgage such proportion of the proceeds as is equal to that proportion which the amount of the sums secured by this Mortgage immediately prior to the date of taking bears to the fair market value of the Property immediately prior to the date of taking, with the balance of the proceeds paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date such notice is mailed, Lender is authorized to collect and apply the proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Mortgage.

Unless Lender and Borrower otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments.

**10. Borrower Not Released.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Mortgage.

**12. Remedies Cumulative.** All remedies provided in this Mortgage are distinct and cumulative to any other right or remedy under this Mortgage or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17 hereof. All covenants and agreements of Borrower shall be joint and several. The captions and headings of the paragraphs of this Mortgage are for convenience only and are not to be used to interpret or define the provisions hereof.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. Uniform Mortgage; Governing Law; Severability.** This form of mortgage combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property. This Mortgage shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Mortgage and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**17. Transfer of the Property; Assumption.** If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and the Note.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof.

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

**18. Acceleration; Remedies.** Except as provided in paragraph 17 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall mail notice to Borrower as provided in paragraph 14 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, costs of documentary evidence, abstracts and title reports.

**19. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time

Printed From Archive on 06-14-1999 by CRITTENDEN

BOOK 2208 PAGE 527

prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage, the Note and notes securing Future Advances, if any, had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage and in enforcing Lender's remedies as provided in paragraph 18 hereof, including, but not limited to, reasonable attorney's fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

20. Assignment of Rents; Appointment of Receiver. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

21. Future Advances. Upon request of Borrower, Lender, at Lender's option prior to release of this Mortgage, may make Future Advances to Borrower. Such Future Advances, with interest thereon, shall be secured by this Mortgage when evidenced by promissory notes stating that said notes are secured hereby. At no time shall the principal amount of the indebtedness secured by this Mortgage, not including sums advanced in accordance herewith to protect the security of this Mortgage, exceed the original amount of the Note plus US $...........................

22. Release. Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage, without charge to Borrower. Borrower shall pay all costs of recordation, if any.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

LWG CO., Inc.

Witness:

_Gerald S. Subitay_

By: _Daniel Green_ —Borrower
Daniel Green, President

_Jillora N. Cesta_

By: _Maurice Green_ —Borrower
Maurice Green, Secretary-Treasurer

STATE OF OHIO, .............. Warren .............. County ss:

On this.....6th.....day of.....September........., 19.91.., before me, a Notary Public in and for said County and State, personally appeared..LWG. Co..., Inc. by. Daniel. Green,. President. and Maurice .Green,. Sec./Treas.,the individual(s) who executed the foregoing instrument and acknowledged that .that.. did examine and read the same and did sign the foregoing instrument, and that the same is. their.... free act and deed..and. their. free act and deed as such officers.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

[Seal]

My Commission expires:

_Jillora N. Cesta_
Notary Public State of Ohio

JILLORA HERRMANN CESTA

---

This instrument prepared by Jillora H. Cesta, Attorney at Law.
(Space Above This Line Reserved For Lender and Recorder)

LWG Co., Inc.
00218

TO

The First National
Bank of Warren County

Jillora H. Cesta,
P.O. Box 316
Lebanon, Ohio 45036
(513) 932-3931

CORPORATION DEED OR MORTGAGE—No. 33    (Reprinted 8/83)

15880

# Know All Men by These Presents:

vol. 1632 page 225

*That* CAMBRIDGE HOLDING COMPANY, an Ohio corporation,

*the grantor,*

*a corporation organized and existing under the laws of the State of Ohio*

*in consideration of* One Dollar ($1.00) and other good and valuable considerations

*to it paid by* GREEN INDUSTRIES, INC.

*whose address is*

*the receipt whereof is hereby acknowledged, does hereby Grant, Bargain, Sell and* **Convey** *to the said* GREEN INDUSTRIES, INC.

*its ~~heirs~~ successors' and assigns forever.*

*the following described Real Estate:*

See attached Exhibit "A".



MAY 25 1988
$880.00

Daniel L. West, Butler Co. Auditor

TRANSFERRED

MAY 2 5 1988

BUTLER CO., AUDITOR
DANIEL S. WEST

RECEIVED FOR RECORD
JOYCE A. INSELL, RECORDER
BUTLER COUNTY, OHIO

88 MAY 25 AM 11: 33

RECORD

FEE

vol 1632 page 226

and all the Estate, Title and Interest of the said  CAMBRIDGE HOLDING COMPANY,
an Ohio corporation,

grantor,

either in Law or Equity, in and to the said premises: Together with all the privileges
and appurtenances to the same belonging: To have and to hold the same to the only
proper use of the said  GREEN INDUSTRIES, INC.

its XXXX successors' and assigns forever.
And the said  CAMBRIDGE HOLDING COMPANY, an Ohio corporation,

grantor,

for itself and for its successors, hereby Covenants with the said  GREEN INDUSTRIES,
INC.

its XXXX successors' and assigns,
that it is the true and lawful owner of the said premises, and has full power to convey
the same; and that the title so conveyed is Clear, Free and Unincumbered; And
further, That it does Warrant and will Defend the same against all claims of all
persons whomsoever:

Vol. 1632 PAGE 227

**In Witness Whereof,** The said CAMBRIDGE HOLDING COMPANY, an Ohio corporation,

grantor, has caused its corporate name to be hereunto subscribed and its corporate seal hereunto affixed, by   Jeffrey K. Heinichen,                                                                    its President, and                                                                                       its Secretary, thereunto duly authorized by resolution of its Board of Directors, this

12th   day of   May             19 88 .

Signed and acknowledged in presence of us:

_____    |  CAMBRIDGE HOLDING COMPANY,
Michael S. McDowell                 |  an Ohio corporation
_____    |  By _____
Cynthia Ann Hillman                 |     Jeffrey H. Heinichen,   President
                                    |
                                    |                            Secretary

**State of**   Ohio          **County of**   Hamilton        SS.:

Be It Remembered, That on this   12th       day of   May,      1988 , before me, the subscriber, a Notary Public in and for said County and State, personally appeared Jeffrey K. Heinichen,                                                          President, and                                                                           Secretary, of CAMBRIDGE HOLDING COMPANY, an Ohio corporation,              the corporation, whose name is subscribed to and which executed the foregoing instrument, and for themselves and as such officers respectively, and for and on behalf of said corporation, acknowledged the signing and execution of said instrument; and acknowledged that the seal affixed to said instrument is the corporate seal of said corporation, that they affixed such corporate seal to, and otherwise executed, said instrument, by authority of the Board of Directors, and on behalf of said corporation; and that the signing and execution of said instrument is their free and voluntary act and deed, their free act and deed as such officers respectively, and the free and voluntary act and deed of said corporation, for the uses and purposes in said instrument mentioned.

**In Testimony Whereof,** I have hereunto subscribed my name and affixed my Notarial seal, on the day and year last aforesaid.

_____
                         Notary Public
my Commission Expires

This instrument was prepared by   Paul V. Muething
                                  Keating, Muething & Klekamp
                                  1800 Provident Tower
                                  Cincinnati, Ohio  45202

vol. 1632 page 228

EXHIBIT "A"

Situated and being in Section 9, Town 2, Range 2, City of
Fairfield, Butler County, Ohio and being known and designated
as Lot #9744 (Meyer Interstate Properties, Section 2, Envelope
937, Pages C and D) on the list of lots for said City in the
Office of the Butler County Auditor.

Printed From Archive on 06-14-1999 by CRITTENDEN

CORPORATION DEED REMONTWORK—No. 31    [Il-printed 8/87]    SPCO    Registered In U.S. Patent and Trademark Office

15679

# Know All Men by These Presents:
### vol 1632 page 221

*That* GENERAL POLYMERS CORPORATION, an Ohio corporation,

*the grantor,*

*a corporation organized and existing under the laws of the State of* Ohio

*in consideration of* One Dollar ($1.00) and other good and valuable considerations

*to it paid by* CAMBRIDGE HOLDING COMPANY, an Ohio corporation,

*whose address is* 145 Caldwell, Cincinnati, Ohio 45216

*the receipt whereof is hereby acknowledged, does hereby Grant, Bargain, Sell and Convey to the said* CAMBRIDGE HOLDING COMPANY, an Ohio corporation,

*its heirs, successors' and assigns forever.*

*the following described Real Estate':*

See attached Exhibit "A".

Grantor has complied with Section 319.203
of the Revised Code.
Conveyance $
MAY 2 5 1988
FEE 1
EXEMPT 29.35
Daniel S. Weist, Butler Co. Auditor

TRANSFERRED
MAY 2 5 198
BUTLER CO., AUDITOR
DANIEL S WEIST

RECEIVED FOR RECORD
JOYCE N. TILLEY, RECORDER
BUTLER COUNTY, OHIO
88 MAY 25 AM 11: 33
RECORD Deed
FEE 14.00

Printed From Archive on 06-14-1999 by CRITTENDEN

vol 1632 page 222

and all the Estate, Title and Interest of the said  GENERAL POLYMERS
CORPORATION, an Ohio corporation,

either in Law or Equity, in and to the said premises; Together with all the privileges    grantor,
and appurtenances to the same belonging: To have and to hold the same to the only
proper use of the said  CAMBRIDGE HOLDING COMPANY, an Ohio corporation,

its  heirs successors' and assigns forever.
And the said  GENERAL POLYMERS CORPORATION, an Ohio corporation,

for itself and for its successors, hereby Covenants with the said  CAMBRIDGE    grantor,
HOLDING COMPANY, an Ohio corporation,

its  heirs, successors' and assigns,
that it is the true and lawful owner of the said premises, and has full power to convey
the same; and that the title so conveyed is Clear, Free and Unincumbered; And
further, That it does Warrant and will Defend the same against all claims of all
persons whomsoever:

VOL. **1632** PAGE 223

In Witness Whereof, The said GENERAL POLYMERS CORPORATION, an Ohio corporation,

grantor, has caused its corporate name to be hereunto subscribed and its corporate seal hereunto affixed, by       Jeffrey K. Heinichen,                                                                 its President,

and                                                                                          its Secretary,

thereunto duly authorized by resolution of its Board of Directors, this

_3rd_ day of       May            19 88 .

Signed and acknowledged in presence of us:

_Michael S. McDowell_                                    GENERAL POLYMERS CORPORATION,
                                                         an Ohio corporation
_Cynthia Ann Hilgeman_                                   By _Jeffrey K. Heinichen_
                                                            Jeffrey K. Heinichen, President

                                                                                        Secretary

State of  Ohio            County of  Hamilton        SS.

Be It Remembered, That on this  _3rd_  day of May,    1988
before me, the subscriber, a Notary Public in and for said County and State, personally appeared
  Jeffrey K. Heinichen,                               Vice President,

and                                                                        Secretary,

of   GENERAL POLYMERS CORPORATION, an Ohio corporation, the corporation, whose name is subscribed to and which executed the foregoing instrument, and for themselves and as such officers respectively, and for and on behalf of said corporation, acknowledged the signing and execution of said instrument; and acknowledged that the seal affixed to said instrument is the corporate seal of said corporation, that they affixed such corporate seal to, and otherwise executed, said instrument, by authority of the Board of Directors, and on behalf, of said corporation; and that the signing and execution of said instrument is their free and voluntary act and deed, their free act and deed as such officers respectively, and the free and voluntary act and deed of said corporation, for the uses and purposes in said instrument mentioned.

                         In Testimony Whereof, I have hereunto subscribed
                              my name and affixed my Notarial seal, on the day and
                              year last aforesaid.

                              _Cynthia Ann Hilgeman_
                                        Notary Public
                              my commission expires 2-4-10

This instrument was prepared by  Paul V. Muething
                                 Keating, Muething & Klekamp
                                 1800 Provident Tower
                                 Cincinnati, Ohio 45202

EXHIBIT "A"    [VOL 1632 PAGE 224

Situated and being in Section 9, Town 2, Range 2, City of
Fairfield, Butler County, Ohio and being known and designated
as Lot #9744 (Meyer Interstate Properties, Section 2, Envelope
937, Pages C and D) on the list of lots for said City in the
Office of the Butler County Auditor.

APPENDIX 2

```
OPER: BLACKWOODT         INTEGRATED ASSESSMENT SYSTEM              TX01
14-JUN-99                TAX AND MAILING INFORMATION           US.000.2.10


   PARCEL ID: M5500205000001        STUB #: 4959600      YEAR: 1998
   M5500-205-000-001
Owner Name:     Tax Year: 1999            LAND        BLDG        TOTAL
OMNI INDUSTRIAL PROP INC      Appraised:  238050      835410      1073460
                              Assessed:    83320      292390       375710
Mailing Information:       CAUV/PProp:                    0
OMNI INDUSTRIAL PRPTY INC   Homestead:        Cert Dlq:       Pymt Ctr:
                           Pymt Code:    Tax Cd:B Pretax Paid:       .00
9461 LE SAINT DR          Bankrpt Chap:    Escrow/Paid:  /
                          TAX SUMMARY      Delq    1st Half    2nd Half
FAIRFIELD OH 45014 5447         Real:      0.00    8251.43     8251.43
Mort Co:                    Specials:      0.00    1868.06     1868.06
                           Dup Charg:      0.00   10119.49    10119.49
R-T-S:         Acres: 5.75      Farm:
Legal1:9744 ENT           Adjstmnts:              -
Legal2:                    Payments:      0.00  -10119.49        0.00
Legal3:                   Total Due:      0.00       0.00    10119.49
Addr:9461       LE SAINT          Grand Total Due:    10119.49
PRESS [BLK MENU] TO PRINT TAXBILL     NEXT FUNCTION: TX  SCREEN: 02
ENTER TAX YEAR AND EITHER PARCEL ID OR  STUB #, THEN PRESS [EXEC QRY]
Count: *0                                            <Replace>
```

```
OPER: BLACKWOODT                INTEGRATED ASSESSMENT SYSTEM              SA01
14-JUN-99                        SPECIAL ASSESSMENT INQUIRY          US.000.2.00


   PARCEL ID: M5500205000001___    PROJECT NUMBER: 30041   YEAR: 2001  SEQ: 0
                                                  Deactivate Date:
   Owner:                             Project
                                      Name: FF MUN ST LESA

      Calc Code: 3            Acres Benefit:

                                                           AMORTIZATION
                                                  Principal:
                                                   Interest:
                        Dlq/Int    1st Half   2nd Half     Remain:
      Delinquent/Tax:              1628.33    1628.33      Payoff:
              Fee:                   48.85      48.85
Interest/Penalty:                                          Last Maintenance( )
                         TOTAL:     3354.36          -        on 19-DEC-96
                                                             by FEE CALC
   Notes:

                                             NEXT FUNCTION: SA  SCREEN: 01

Enter Query, then press [EXEC QRY] or press   [ENTR QRY] for a new Query
Count:  2          v                                          <Replace>
```

APPENDIX 3

LE SAINT DRIVE

N 1°16'55" E

225'    300'

175'    350.00'

9658    9657

New Lot # 9744
Con. 5.753 Ac.

JOYCE B. THALL RECORDER
BUTLER COUNTY, OHIO

'83 JUL 14 A 9: 51
NO. 12760   7/11/83
RECORD  Deed
FEE  10.00

715.39'    716.51'

S 88°43'05" E    N 88°43'05" W

225'    300'    51°27'55" W    350.00'

Note: This plat made pursuant to
Section 5713.16 of the Ohio
Revised Code.

TRANSFERRED

JUL 11 1983
L. A. TILTON AUDITOR

JOB  Neyer
SCALE  1" = 100'
DATE  5-25-83
DRAWN BY  JFB
REVISED

bayer becker engineers
700 niles road  fairfield, ohio 45014

Lot Combination
New Lot # 9744
Neyer Interstate Properties – Sect. 2
City of Fairfield
Butler County, Ohio

