ELECTRONICALLY FILED

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. C-1-00-637 |
| v. ) | |
| ) | |
| DANIEL GREEN, L.W.G. CO., ) | |
| INC. f/k/a GREEN INDUSTRIES ) | Judge Susan J. Dlott |
| INC., THE ESTATE OF MAURICE GREEN ) | |
| and DANIEL GREEN IN HIS CAPACITY AS ) | |
| THE PERSONAL REPRESENTATIVE OF THE ) | |
| ESTATE OF MAURICE GREEN, ) | |
| ) | |
| Defendants ) | |
| and ) | |
| ) | |
| SAUNDRA GREEN, wife of ) | |
| DEFENDANT DANIEL GREEN, ) | |
| ) | |
| Rule 19 Defendant. ) | |

\* \* \* \* \* \* \* \* \* \*
**PROPOSED UNDISPUTED FACTS**
\* \* \* \* \* \* \* \* \* \*

Rule 19 Defendant Omni Industrial Properties, Inc. ("Omni"), pursuant to the Standard Order Governing Civil Motions for Summary Judgment, submits the following statement of material facts as to which Omni contends there is no genuine issue to be tried:

1. LWG is an entity that was owned and controlled by Maurice Green. (Docket Entry No. 76, pp. 2-3).

2. From 1981 through 1988, LWG owned and operated a plating facility at 3603 Kemper Road, Sharonville, Ohio (the "Site"). (Docket Entry No. 77, ¶¶ 16-22).

3. In 1988, LWG sold the Site to HRW Industries ("HRW"), an entity not named in this litigation. (Exhibit A to Hard Surface Technologies Mem. in Support of Motion for S.J., Docket Entry No. 44).

4. HRW owned and operated the plating facility until abandoning it in 1995. (Docket Entry No. 67, p. 7).

5. Subsequent to selling the Site, LWG purchased 9461 Le Saint Drive, Fairfield, Ohio (the "Le Saint Drive Property") in 1988. (Pg. 4 of and Exhibit B to Hard Surface Technologies Mem. in Support of Motion for S.J., Docket Entry No. 44).

6. Approximately six years later, in April of 1994, LWG sold the Le Saint Drive Property to Omni for approximately $600,000.00. (Exhibit 2 of U.S. Mem. in Support of Motion for Leave to Amend, Docket Entry No. 63).

7. In May 1996, Defendant Daniel Green received a CERCLA §104(e) Request for Information from U.S. EPA concerning the Site. The request sought various information related to Daniel Green's and LWG's ability to pay for the United States' costs associated with its clean-up of the Site. (Exhibit H of HST Mem. in Supp. of Motion for S.J., Docket Entry No. 44).

8. On June 12, 1996, Daniel Green responded by producing, among other information, LWG's corporate tax returns for various years including 1994. LWG's 1994 Corporate Tax Return listed the sale of the Le Saint Drive Property for a sale price of $612,043 as occurring in that year. (Exhibit A of Defendants' Opposition to U.S. Motion for Leave to Amend, Docket Entry No. 64).

9. On November 22, 1996, in connection with an unrelated criminal investigation, Daniel Green was interviewed in a proffer session at the United States Courthouse in Cincinnati, Ohio. During that session, as documented by a confidential Memorandum Of Interview

(previously submitted to the Court by the United States under seal for in camera review), Daniel Green notified the U.S. EPA that Omni purchased the Le Saint Drive Property from LWG in 1994, that Samuel Green, Daniel Green's brother, was "the owner" of Omni and that Daniel Green had transferred approximately $200,000.00 into his wife's name. (Docket Entry Nos. 24 and 25.)

10. On March 18, 1999, a United States Enforcement investigator interviewed Ms. Robin Grinstead, a former disgruntled employee of one of the Green companies, regarding various matters related to the United States' investigation of its claims in this matter. A memorandum of that interview, which was produced March 17, 2006 in this matter, details that, during the interview, Ms. Grinstead made several comments regarding the relationship between Omni and LWG and the legitimacy of the 1994 sale of the Le Saint Drive property to Omni, including comments that it was improper. She alleged that: Omni was owned by Sam Green, Dan Green's brother; she did not know if any money had changed hands when the property was sold to LWG to Omni; LWG bought the property for almost $1,000,000.00 and it was worth much more in 1997; Dan Green had signature authority for Omni and did in fact sign everything for Omni; and Dan Green maintained the checkbook for Omni and that Sam Green never signed the checks.[1] (Excerpt of Record of Interview, Exhibit 2 at pp.12).

11. In 1998, Ms. Grinstead was convicted of embezzling funds from Green Industries. (See Excerpt of Transcript of 2002 Deposition of Robin Grinstead, Exhibit 1, pp. 17-18).

12. In June 1999, during its investigation of its potential enforcement claims in this matter, the United States contracted for the performance of a title search related to the Le Saint

---

[1] In 1998, Ms. Grinstead was convicted of embezzling funds from Green Industries. Defendants strongly dispute Ms. Grinstead's allegations. (See Excerpt of Transcript of 2002 Deposition of Robin Grinstead, Exhibit 1, at pp. 17-18). For purposes of this matter, her allegations and statements are offered only for the purpose of showing notice to the United States.

Drive Property. In addition to other information regarding the property, that title search report details the following information:

- "An Open-end Mortgage for $640,000 was recorded [for the property] in 1991. The borrower was LWG, Co. Inc. and the lender was the First National Bank of Warren County. The mortgage was transferred to Omni when the company acquired the target property in 1994. Finally, Omni recorded a Conditional Assignment of Rents from the target property, naming the First National Bank (of Warren County) as Assignee for the earlier mortgage."
- Sam Green is the President of Omni and was a signatory to the aforementioned Conditional Assignment of Rents.

(Multi-Site Potentially Responsible Party Search Green Industries Site, Title Search Report, 9461 Le Saint Drive, Fairfield, Ohio (June 23, 1999), Exhibit 3 at p. 3). This Title Search Report was produced to Omni during discovery on March 27, 2006.

13. In August 1999, a United States Enforcement Investigator (Arkell) completed a report indicating that LWG originally purchased the Le Saint Drive Property for $880,000.00 in 1988. That report also indicated that Omni was incorporated just prior to Omni's purchase of the Le Saint Drive Property. (Exhibit 4).

14. On August 4, 2000, Plaintiff filed its Complaint in this action. The Complaint contained no allegations against Omni. (Complaint, Docket Entry No. 1).

15. On October 16, 2000, Plaintiff filed its First Amended Complaint, adding a fraudulent transfer claim against Saundra Green pursuant to the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. §§3001 et seq. The United States claimed that "in approximately 1990" Daniel Green fraudulently transferred certain assets to his wife. The First

4

Amended Complaint contained no claims against Omni. (First Amended Complaint, Docket Entry No. 2, ¶ 34 and ¶¶ 4 and 5 of the Prayer for Relief).

16. On November 28, 2000, Plaintiff sent a letter to Omni via certified mail, with a copy to the undersigned, stating "The United States is continuing its investigation into the relationship between Omni Industrial Properties, Inc. and the parties already named as defendants in this lawsuit [which included LWG]. Due to the complexity of the corporate relationships created by Daniel Green and Maurice Green, the United States has not yet stated a claim against Omni Industrial Properties, Inc. on a . . . fraudulent transfer theory or any other applicable legal theory." (Exhibit 5).

17. On January 9, 2001, counsel for the United States and the United States EPA investigator, Mr. Arkell, conducted another interview of Ms. Robin Grinstead in connection with the further investigation of the United States' claims. Again Ms. Grinstead made several allegations regarding an improper relationship between Omni and LWG. She alleged that: all of Maurice Green's and/or Dan Green's companies, including Omni, were all the same company; Dan Green created Omni for the ownership of the Le Saint Drive Property; the Greens set Omni up due to an IRS investigation; none of the corporations created by the Greens were legitimate; and Dan Green loaned $500,000.00 to another company via Omni. (Excerpt of Record of Interview, Exhibit 6 at p. 4). This record of interview was produced to Omni during discovery on March 17, 2006.[2]

18. On January 7, 2002, Plaintiff again amended its Complaint, this time to join HST pursuant to a successor-in-interest theory. (Docket Entry No. 28 at ¶¶ 6, 37-41).

---

[2] Although the comments of Ms. Grinstead are strongly disputed by Omni and do not have veracity, they are offered here for the purpose of showing notice to the United States.

5

19.     In early February 2002, a copy of the LWG/Omni Properties April 1994 Purchase and Sale Agreement was produced to the United States. That same month, Daniel Green gave his deposition and was questioned at length regarding the sale. (Docket Entry No. 41 at pp. 305-316.)

20.     On October 17, 2002, Saundra Green moved for summary judgment on the United States' fraudulent transfer claim against her on the grounds that the claims against her were barred by the FDCPA statute of limitations. (Docket Entry No. 42.) In its brief in response to that motion, the United States acknowledged that it became aware of the transfers that were the subject of the United States' claim in 1996, when Daniel Green testified regarding their occurrence in connection with the aforementioned 1996 proffer statement interview with U.S. EPA. (United States' Opposition to Saundra Green's motion for Summary Judgment, Docket Entry No. 54, at p. 7).

21.     On February 19, 2004, the Plaintiff sought leave to amend for the third time, alleging that Omni was a party to a fraudulent transfer by purchasing the Le Saint Drive Property from LWG. (U.S. Motion for Leave to Amend, Docket Entry No. 63). Defendants collectively opposed Plaintiff's motion, arguing that, like the United States' claim against Saundra Green, the United States' claim against Omni was time-barred by the FDCPA and therefore leave to amend should be denied. (Docket Entry No. 64).

22.     On July 20, 2004, the Court entered an "Order Ruling on Motions for Summary Judgment." The Court granted Hard Surface Technologies' motion for summary judgment and also ruled on Saundra Green's motion for summary judgment. With respect to the United States' claim against Saundra Green, the Court held that the FDCPA, and not the CERCLA, statute of limitations applied to the United States' fraudulent transfer claim against Ms. Green. (Order,

Docket Entry No. 67 at p. 28).  The Court ruled that the United States had conceded that Ms. Green would be entitled to summary judgment in her favor if the FDCPA statute of limitations applied (since the Complaint alleged that the transfers occurred in 1990 and the United States conceded that it learned of the transfers in 1996, but the United States did not amend its Complaint to add a claim against Saundra until August 2000), but declined to dismiss Plaintiff's claims on the basis other asset transfers might be discovered later in discovery (Id. at p. 26, 28-29).

23. On April 6, 2005, the Court (after the matter was transferred to Judge Watson) issued a Memorandum Opinion and Order permitting the United States to amend its Complaint a third time to add Omni pursuant to a fraudulent transfer theory.  (Order, Docket Entry No. 76). The Court ruled that, like the United States' claim against Saundra Green, the FDCPA, and not the CERCLA, statute of limitations set forth 28 U.S.C. Section 3304(b)(1)(A).  Specifically, the following statute of limitation: "within two years after the transfer was or could reasonably have been discovered by the claimant" applied to this action.  (Id., pp. 9-10).  The Court ruled that on the limited facts before it on Plaintiff's Motion to Amend, there were insufficient facts to hold that the United States knew or should have known of the "potentially fraudulent nature of the transfer" and thus its potential claim, more than two years before it sought leave to add a claim against Omni in February 2004.  (Id. at pp. 11-12).

24. On May 30, 2006, the Court entered a Consent Decree resolving all of Plaintiff's claims against Daniel Green and Saundra Green in this matter.  (Docket Entry No. 87).

25. On December 29, 1999, Maurice Green died.  (Docket Entry No. 76, p. 4).

26. Both the Estate of Maurice Green and LWG are insolvent.

7

Respectfully submitted,


/s/ David A. Owen
David A. Owen
Greenebaum Doll & McDonald PLLC
300 W. Vine Street, Suite 1100
Lexington, Kentucky 40507

-AND-

Philip J. Schworer (0036982)
Greenebaum Doll & McDonald PLLC
2800 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202-4728

COUNSEL FOR THIRD PARTY DEFENDANT
OMNI INDUSTRIAL PROPERTIES, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of June, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Gerald Francis Kaminski (Gerald.kaminski@usdoj.gov); David J. Schmitt (djs@corsbassett.com); and Jeffrey A. Spector (Jeffrey.Spector@usdoj.gov).

I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to the following non-CM/ECF participants:

W. Benjamin Fisherow
Deputy Chief
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
Ben Franklin Station
P.O. Box 7611
Washington, DC 20004

Gregory G. Lockhart
United States Attorney
Southern District of Ohio
Office of the United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202

Richard R. Wagner
Associate Regional Counsel
U.S. Environmental Protection Agency – Region 5
77 West Jackson Blvd.
Chicago, IL 60604

/s/ David A. Owen
Counsel for Defendant
Omni Industrial Properties, Inc.

709760_1.doc