UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO - WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:00-cv-637 |
| | ) | |
| DANIEL GREEN, et al., | ) | Judge Susan J. Dlott |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF UNITED STATES'
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

On April 6, 2005, this Court issued a *Memorandum Opinion and Order* (Doc. 76) granting *United States' Motion for Leave to File Third Amended Complaint* (Doc. 63) and explicitly held that the United States' proposed fraudulent transfer claim against defendant L.W.G. Co., Inc. ("LWG"), regarding LWG's conveyance of real property to Omni Industrial Properties, Inc. ("Omni Industrial"), pursuant to Section 3304(b)(1)(A) of the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3304(b)(1)(A), was not precluded by the relevant limitations period. Doc. 76 at 11-12. Rejecting the same arguments that Omni Industrial advances again in this motion, Judge Watson expressly held that "until the United States was in receipt of [the Purchase and Sale Agreement for the property transferred to Omni Industrial], and was able to question Daniel Green about the details of the transfer, the United States reasonably could not have discovered the fraudulent nature of the transfer . . . ." Id.

Omni Industrial has failed to show the "exceptional circumstances" necessary for reconsideration of the established "law of the case." As this Court rightly found that the United States' fraudulent transfer claim -- having been brought within two years of the United States

discovering the fraudulent nature of the transaction -- is not time-barred under FDCPA Section 3306, Omni Industrial's *Motion for Summary Judgment* should be denied.

## I. INTRODUCTION

On July 20, 2004, this Court found LWG jointly and severally liable under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), for response costs incurred by the United States in cleaning up LWG's former electroplating facility located at 3603 East Kemper Road, Sharonville, Ohio ("Green Industries Site" or "Site"). See Order Ruling on Mots. for Summ. J. as to Liability (Doc. 67) at 21. LWG is presently dissolved and without assets available to reimburse the United States for any portion of the approximately $4 million the United States expended in cleaning up the Site.[1/] See id. at 9. During the course of this litigation, however, the United States uncovered the specifics surrounding LWG's conveyance to Omni Industrial of certain real property located at 9461 Le Saint Drive, Fairfield, Ohio (the "Le Saint Drive Property" or "Property") and has asserted that this transfer should be voided and the Le Saint Drive Property returned to LWG.

The Purchase and Sale Agreement between LWG and Omni Industrial regarding the Le Saint Drive Property and the associated Loan Agreement were produced by LWG at the February 2002 deposition of Daniel Green. Review of these documents in conjunction with the

---

[1/]     The United States has determined that the Estate of Maurice Green, H.R.W. Industries Inc. (which acquired the Site in 1988 from LWG), and the principals of H.R.W. Industries likewise lack assets to reimburse the cost of the environmental clean-up. As this Court held that the United States is time-barred from pursuing its allegation that Daniel Green fraudulently transferred in excess of $1 million in assets to his wife, the United States resolved its claims against Daniel Green on an ability-to-pay basis. See Doc. 67 and Doc. 88.

examination of Mr. Green revealed that the alleged consideration for the conveyance was a sham. The United States subsequently sought leave to amend its complaint to add a fraudulent transfer claim pursuant to FDCPA Section 3304(b), 28 U.S.C. § 3304(b). See Doc. 63. At that time, the parties fully briefed the issue of whether the United States' proposed fraudulent transfer claim was time-barred, rendering the amendment futile. See Opp'n to Pl.'s Mot. for Leave to File Third Am. Compl. (Doc. 64) at 10-13; Reply in Supp. of Pl.'s Mot. for Leave to File Third Am. Compl. (Doc. 65) at 2-5. On April 6, 2005, the Court issued a *Memorandum Opinion and Order* (Doc. 76) holding that the United States' had brought its fraudulent transfer claim within the limitations period, *i.e.* within two years of discovering the fraudulent nature of the transaction. See Doc. 76 at 9-12.

As demonstrated below, Judge Watson rightly dismissed the arguments that Omni Industrial is pressing again now. This Court's prior decision constitutes the "law of the case" and, therefore, reconsideration is inappropriate absent a showing that (i) a subsequent controlling decision renders the Court's prior interpretation of the law inaccurate; (ii) additional facts render the Court's prior application of the law inaccurate; or (iii) the decision was clearly erroneous and would work a substantial injustice. See Coal Res., Inc. v. Gulf & W. Indus. Inc., 865 F.2d 761, 767 (6th Cir. 1989). Omni Industrial has not and cannot make such a showing and, therefore, its *Motion for Summary Judgment* should be denied.

## II. BACKGROUND

Green Industries Inc., in its own right and as successor-by-merger to Creutz Plating Co., owned and operated an electroplating plant located at the Green Industries Site from 1981 through 1988. See Doc. 67 at 2-3. Daniel Green was Green Industries' President and majority

shareholder, while his father, Maurice Green, owned the remainder of Green Industries' stock and served as Vice President. Id. During this period, there were myriad releases and disposals of hazardous substances at the Site. Id. at 4-5. In 1988, Green Industries sold its operations, including the Green Industries Site, to H.R.W. Industries, Inc. Id. at 7. Following the sale, Green Industries changed its name to L.W.G. Co., Inc. Id. at 8. This Court found LWG jointly and severally liable under CERCLA Section 107(a) for response costs incurred by the United States in cleaning up the Green Industries Site. Id. at 21.

In 1988, LWG acquired the Le Saint Drive Property with a portion of the proceeds from its sale of the Green Industries Site. Id. at 8. In 1989, Maurice Green and Daniel Green incorporated a new metal-plating company, Norwood Hard Chrome Co. (later known as LWG Finishing Corp.), which began operations at the Le Saint Drive Property. See Decl. of J. Spector filed with United States Mot. for Partial Summ. J. Against Hard Surface Tech. (Doc. 47) at Ex. 3, p. 4 and Ex. 74, p. 7. Later that year, LWG became the sole shareholder of Norwood Hard Chrome. Id. Shortly thereafter, Daniel Green stated that LWG's "sole purpose and function is the holding of the stock for Norwood Hard Chrome." Id. at Ex. 108, para. 4. LWG's only source of income from 1988 forward was rent collected on the Le Saint Drive Property and loans repaid by Norwood Hard Chrome/LWG Finishing and others. Id. at Ex. 74, p. 7

LWG continued to be the subject of lawsuits relating to environmental violations arising out of its former operation of the Green Industries Site. In 1990, the Ohio Environmental Protection Agency ("Ohio EPA") and the Ohio Bureau of Criminal Identification & Investigation ("BCI") began an investigation regarding the illegal disposal of hazardous waste generated at the Green Industries Site and dumped at a second Green Industries facility located

at 1924 Dana Avenue, Cincinnati, Ohio ("Dana Avenue Site").  As part of this investigation, in October 1990, Ohio EPA and BCI investigators interviewed three of Daniel Green's six employees at the Le Saint Drive plant.

This investigation culminated with a September 9, 1993 plea agreement, pursuant to which LWG and Maurice Green agreed to plead guilty to the felony of having knowingly failed to evaluate waste generated at the Green Industries Site and disposed of at Dana Avenue Site in violation of Ohio Admin. Code § 3745-52-11 and Ohio Rev. Code §§ 3734.11 and 3734.99 (State of Ohio v. Maurice Green, Case No. B933684 (Ct. C.P. Hamilton County)).  Id. at Ex. 101.  The plea agreement included, among other things, the requirement that LWG and Maurice Green clean up the Dana Avenue Site and reimburse the State of Ohio for its prior expenses.[2/]  Id.

Concurrent with its September 9, 1993 guilty plea, LWG took steps to transfer the Le Saint Drive Property to Omni Industrial, an entity wholly owned by Daniel Green's brother, Samuel Green.  Omni Industrial was incorporated on September 9, 1993 and corporate minutes dated September 30, 1993 authorized Omni Industrial to acquire the Property.[3/]  Exs. 1-2.  In

---

[2/]  Additionally, on October 30, 1991, H.R.W. Industries, by then re-named Green Industries Corp., had filed a complaint against LWG, Daniel Green and Maurice Green alleging, *inter alia*, that LWG had illegally dumped chromic acid into unlined sumps / pits at the Green Industries Site during the period when LWG had operated the Site (Green Indus. Corp. v. LWG Co., Case No. A9109490 (Ct. C.P. Hamilton County, Ohio)).  See Doc. 47, App. at Ex. 75.

[3/]  Samuel Green testified that the September 30, 1993 corporate minutes were likely one of a number of corporate records generated in 1995, with the dates of execution intended to represent the effective date rather than the date actually signed.  Dep. of S. Green at 22-26 (attached hereto as Ex. 3).  Samuel Green's recollection that Omni Industrial was incorporated in early 1994 is contradicted by the September 9, 1993 certificate of incorporation filed with the State of Ohio.  See Ex. 1.

1994, LWG conveyed the Le Saint Drive Property to Omni Industrial.[4] As recognized by Judge Watson, the United States did not become aware of the fraudulent nature of this transfer until the transactional documents were produced at Daniel Green's 2002 deposition and the United States had an opportunity to question him regarding their contents.

Prior to 2002, the United States had obtained limited, sporadic, and at times contradictory information regarding the transfer. For example, in June 1996, Daniel Green produced certain documents in response to a United States Environmental Protection Agency ("U.S. EPA") Request for Information in conjunction with the Green Industries Site. Doc. 64-2 at 2. These included Form 4797 to LWG's federal tax return, which identified a May 1, 1994 sale of BLDG - LESAINT for a "gross sales price" of $612,043. Id. at 18. U.S. EPA also became aware of the scope of the industrial operations and environmental issues at the Le Saint Drive Property during its 1996 investigation of Daniel Green regarding his alleged falsification of an environmental report.[5] See Doc. 65, Ex. A.

On November 22, 1996, the United States interviewed Daniel Green in a proffer session in that matter. During that interview, Daniel Green informed U.S. EPA that his brother, Samuel Green, owned Omni Industrial and that Omni Industrial had "bought" the Le Saint Drive

---

[4] In February 1993, LWG had divested itself of its only other asset, its 100% ownership interest in LWG Finishing. Doc. 67 at 8. Daniel Green and Maurice Green each received a 40% interest in LWG Finishing, with the remaining 20% split between two additional LWG Finishing employees. Id. The shares were transferred for no consideration beyond "past services rendered." Id.

[5] On September 30, 1997, Daniel Green entered a plea of guilty to two felony counts, Knowingly Causing the Filing of a Materially False Required Environmental Report, 33 U.S.C. § 1319(c)(4), and Attempt to Tamper with a Witness, 18 U.S.C. § 1512 (b)(3). Doc. 47, App. at Ex. 99.

Property. With regard to the transaction itself, however, Daniel Green stated that "neither he, nor his father had any involvement in the deal." Id. Daniel Green further stated that he "may have received $15,000 from the buyout." Id.

In March 1999, U.S. EPA conducted a wide-ranging interview with Beverly Robin Grinstead, a former LWG Finishing bookkeeper who had been convicted the previous year of embezzling from the Greens. See Ex. 4. Ms. Grinstead, however, provided limited specific information regarding the Le Saint Drive Property transaction. While aware that the Property had been transferred to Samuel Green's company, Ms. Grinstead stated that she only knew of the sale from what Daniel Green had told her. Id. at 12. Ms. Grinstead stated that she had not made any adjustments to the company books to account for the sale and, moreover, that she had no knowledge as to whether or not money had changed hands as part of the transaction. Id. at 10, 12.

Ms. Grinstead did state that there were no mortgages or liens on the Property. Id. A June 1999 title search showed, however, that the Property was encumbered by a mortgage with 1st National Bank. Doc. 88 at Ex. 3, p. 16. The title search also produced a Conditional Assignment of Rents, which stated that Omni Industrial had entered into a mortgage with 1st National Bank and required rents collected on the Property to be transferred to the bank in satisfaction of amounts due thereunder.[6] Id at Ex. 3, p. 15. Thus, as of February 2002, the

---

[6] The title search also referred to a Warranty Deed stating that Omni Industrial will assume the Property's mortgage, then approximately $631,500. Doc. 88 at Ex. 3, p. 20. The Warranty Deed does not state that assumption of the mortgage would constitute the sole consideration paid for the property. Even had the United States assumed a "sale price" of $631,500, such a price should not have caused suspicion in light of the known industrial operations at the Property. The alleged diminution in value of the Property due to environmental issues was documented in a 1993 property appraisal. See Ex. 5.

United States' investigation indicated that the transfer had been for value.

The United States first discovered the fraudulent nature of the transaction at Daniel Green's February 12, 2002 deposition. On that date, the United States questioned Mr. Green about a two-page document produced the day before; incomplete copies of the Purchase and Sale Agreement and associated Loan Agreement.[7] See Doc. 63, Attach. 2. The April 19, 1994, Purchase and Sale Agreement conveying the Le Saint Drive Property from LWG to Omni Industrial had been executed by Daniel Green and Samuel Green -- contrary to Daniel Green's 1996 proffer statement. See Ex. 6. Likewise, the related April 22, 1994 Loan Agreement was executed by 1st National Bank of Warren, Ohio; Daniel Green, individually and on behalf of LWG; Maurice Green, individually; and Samuel Green on behalf of Omni Industrial. Ex. 7.

According to the Purchase and Sale Agreement, the sole consideration given by Omni Industrial was an agreement to pay the mortgage indebtedness held by 1st National Bank. Ex. 6. Contrary to Daniel Green's 1996 proffer statement, no money changed hands. See id.; see also Ex. 3 at 38-39. Moreover, the Loan Agreement showed that while 1st National Bank permitted the transfer of the Le Saint Drive Property to Omni Industrial, Omni Industrial did not formally assume the mortgage or become directly liable for payment of the mortgage indebtedness (contrary to the language in the Assignment of Rents). See Ex. 7. Rather, the Loan Agreement explicitly states that Daniel Green and Maurice Green, in their individual capacities, as well as LWG, would remain liable for payment of the mortgage indebtedness. Id.

Prior to the transfer, Daniel Green and his holding company (LWG) had been liable for

---

[7] The United States subsequently obtained complete copies of the Purchase and Sale Agreement and Loan Agreement, attached hereto as Exs. 6 and 7.

the mortgage on the Le Saint Drive Property and the monthly mortgage payments were paid with proceeds from Daniel Green's operating company (LWG Finishing / Hard Surface Technology) which occupied the Property. After the transfer, the situation remained unchanged, the only difference being that title to the Property -- but not liability to the bank -- had been given to Omni Industrial, in an apparent attempt to preserve the Property from LWG's creditors. Following its conveyance of the Le Saint Drive Property (and its shares in LWG Finishing), LWG no longer possessed any viable assets. Doc. 67 at 9.[8/]

### III. ARGUMENT

This Court has previously addressed -- and rejected -- Omni Industrial's assertion that the United States' fraudulent transfer claim is time barred. On April 6, 2005, Judge Watson issued a *Memorandum Opinion and Order* (Doc. 76) granting the *United States' Motion for Leave to File Third Amended Complaint* (Doc. 63). Defendants opposed the United States' motion, arguing that the United States had failed to bring its fraudulent transfer claim within the limitations period set forth in FDCPA Section 3306(b)(1). See Doc. 64 at 10-13. Judge Watson rejected Defendants' argument as follows:

> The Court concludes that until the United States was in receipt of [the Purchase and Sale Agreement], and was able to question Daniel Green about the details of the transfer, the United States reasonably could not have discovered the potentially fraudulent nature of the transfer. Because this information was presented within the two-year statute of limitations the Court finds that the United States' section 3304(b)(1)(A) claim against Omni Industrial would not be futile; and the United States' Motion for Leave to File Third Amended Complaint (Doc. 63) is hereby GRANTED.

---

[8/]    LWG filed a certificate of dissolution in June 1999. Doc. 67 at 9. Maurice Green passed away in December 1999. Id.

Doc. 76 at 11-12. Thus, this Court held that the FDCPA's statute of limitations period begins to run upon the United States discovering the potentially fraudulent nature of the transfer at issue, and that did not occur here until February 2002.

Judge Watson's decision constitutes the "law of the case" as to interpretation and application of the limitations period set forth in FDCPA Section 3306(b)(1). The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983), quoted in Scott v. Churchill, 377 F.3d 565, 569-70 (6th Cir. 2004). In Coal Res., Inc. v. Gulf & W. Indus. Inc., the Sixth Circuit recognized that:

> The law of the case doctrine precludes our reconsideration of the previously decided issue unless one of three "exceptional circumstances" exists: the evidence in a subsequent trial was substantially different; controlling authority has since made a contrary decision of law applicable to such issues; or the decision was clearly erroneous, and would work a substantial injustice.

865 F.2d at 767, quoting Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc., 761 F.2d 649, 657 (Fed. Cir. 1985) (internal brackets omitted).

The interpretation and application of the FDCPA's statute of limitations was fully briefed by the parties in conjunction with the *United States' Motion for Leave to File Third Amended Complaint* (Doc. 63). Defendants filed an opposition (Doc. 64) in which they argued that the proposed fraudulent transfer claim was futile, because the limitations period had expired.[9/] Doc. 64 at 10-13. Additionally, defendants attached various exhibits to their *Opposition* in an

---

[9/] The United States brought its fraudulent transfer claim against LWG. As a transferee with assets now at issue in the litigation, Omni Industrial was added as a "Rule 19 defendant." LWG and Omni Industrial share the same counsel, David Owen of Greenbaum Doll & McDonald.

effort to support their argument. In its *Reply* (Doc. 65), the United States likewise briefed the issue of interpretation and application of FDCPA Section 3306(b). Doc. 65 at 2-5.

Contrary to Omni Industrial's assertion, the Court did substantively address the statute of limitations in its April 2005 *Memorandum and Order*. The Court noted that "Defendants argue that the United States' Motion should be denied because the claims against Omni Industrial are time barred. While leave to amend should be freely given, leave is properly denied where the amendment would be futile." Doc. 76 at 9. Thus the Court's interpretation and application of FDCPA Section 3306(b) was critical to its determination of whether and to what extent the United States would be allowed to amend its Complaint. Dedicating four pages of its Opinion to statutory interpretation and application of the relevant facts, this Court concluded that while the United States' FDCPA Section 3304(b)(1)(A) claim was not time-barred, the proposed claim under FDCPA Section 3304(b)(1)(B) was so barred and therefore futile. Id. at 9-12.

> A.   **No Cause Exists to Reverse this Court's Holding That the FDCPA's Limitations Period Commences upon Discovery of the Potentially Fraudulent Nature of the Transfer at Issue.**

Omni Industrial fails to cite to any case law or other legal authority contradicting this Court's prior interpretation of FDCPA Section 3306(b), let alone any subsequent controlling authority since the decision was rendered. Nor does Omni Industrial provide a compelling basis for finding that decision "clearly erroneous." Omni Industrial simply states that Judge Watson's articulation of the standard was incorrect and "not supported by logic." Mem. in Supp. of Omni's Mot. for Summ. J. (Doc. 88, Attach. 1) at 12. Moreover, Omni Industrial fails to identify a single case in support of its alternative interpretation that the limitations period should commence upon the simple discovery of the transfer itself, without regard to knowledge as to

11

whether such transfer might be fraudulent.[10]  Id.

Not surprisingly, Judge Watson's assessment of the law is consistent with that of numerous other courts.  The Federal Debt Collection Procedures Act is substantially similar to the Uniform Fraudulent Transfer Acts adopted by the various states.  See, e.g., United States v. Billheimer, 197 F. Supp. 2d 1051, 1056 (S.D. Ohio 2002) (similarity of FDCPA and Ohio UFTA precludes need to analyze transfer under both statutes).  Earlier this year, the Seventh Circuit Court of Appeals discussed application of a "discovery statute of limitations" in the context of Illinois' version of the Uniform Fraudulent Transfer Act, holding that "when a statute of limitations does not begin to run until 'discovery,' the discovery referred to is . . . discovery that the plaintiff has been wrongfully injured."[11]  Fidelity Nat'l Title Ins. Co. of N.Y. vs. Howard Sav. Bank, 436 F.3d 836, 839 (7th Cir. 2006).  See also Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946) (statute of limitations does not begin to run until the fraud is discovered).

In Fidelity National, Judge Posner explicitly rejected the argument posed by Omni Industrial here, finding that "the mere fact of a transfer of funds to which one has a claim does not trigger a duty of investigation and thus start the limitations period running; there must be something fishy about the transfer."  Fidelity Nat'l, 436 F.3d at 840.  It is only when a potential plaintiff has sufficient reason to believe that it has been harmed that the clock begins running.  Indeed, Omni Industrial's statement that the "statute of limitations could not possibly begin to

---

[10]  Nor does Omni Industrial provide a single citation to the legislative history (or any other source) for its various assertions of "Congressional intent."  See Doc. 88, Attach. 1 at 12.

[11]  The FDCPA and the Illinois Uniform Fraudulent Transfer Act use identical language in determining when the limitations period commences; i.e. when "the transfer or obligation was or could reasonably have been discovered by the claimant."  28 U.S.C. § 3306(b)(1); 740 Ill. Comp. Stat. 160/10.

run at the time the United States learned of the 'fraudulent nature' of the sale" is belied by more than a century of Ohio jurisprudence.

As early as 1903, the Ohio Supreme Court held that "[a fraudulent conveyance] cause of action does not accrue when the fraudulent deed is filed for record, unless the plaintiff then receives actual notice of its execution, ***and of the circumstances which render it fraudulent***." Stivens v. Summers, 68 Ohio St. 421, 67 N.E. 884 (1903) (syllabus of the court) (emphasis added), quoted in Northwestern Nat'l Ins. Co. of Milwaukee, Wisc. v. Joslyn, 53 F.3d 331 (6th Cir. 1995) (attached as Ex. 8).[12/]  The key details of fraudulent transfers often are sophisticated and discreet.  To find that the limitations period commences upon simple knowledge of the transfer itself would undermine public policy by effectively limiting actionable fraudulent transfer claims to only the most blatant of such transfers.

As this Court's prior holding was not "clearly erroneous" and has not been subsequently contradicted by other controlling authority, its ruling that FDCPA Section 3306(b) requires the United States to bring an action under FDCPA Section 3304(b)(1)(A) within two years of discovering the potentially fraudulent nature of the transfer at issue remains binding as the "law of the case."

---

[12/]   Omni Industrial's statement that application of the discovery rule would require "adjudication of the claims in order to start the running of the statute of limitations" is without support.  No reason is given as to why a decision on the statute of limitations could not be rendered based on the allegations in the complaint or on evidence submitted to the court -- as occurred here in briefing the *Motion for Leave to File Third Amended Complaint*.

**B.      The United States Amended its Complaint Within Two Years of Uncovering Evidence Indicating the Fraudulent Nature of the <u>Conveyance.</u>**

As mentioned above, this Court previously held that "until the United States was in receipt of [the Purchase and Sale Agreement], and was able to question Daniel Green about the details of the transfer, the United States reasonably could not have discovered the potentially fraudulent nature of the transfer . . . ." Doc. 76 at 11-12. Omni Industrial has failed to present additional evidence warranting revision of the Court's earlier conclusion. Rather, all Omni Industrial has done is show that the United States engaged in a thorough effort to identify potentially responsible parties and suspicious asset transfers in its effort to recoup some portion of the millions in dollars in federal funds expended in cleaning up the Green Industries Site. Despite this effort, however, it cannot be said that the fraudulent nature of the LWG-Omni Industrial transaction "should reasonably have been discovered" by the United States before it deposed Daniel Green in February 2002. The Court's prior finding that the United States timely brought its fraudulent transfer claim should not be overturned.

As Judge Watson noted, it is the details of the transaction for the conveyance of the Le Saint Drive Property that indicate its potentially fraudulent nature. Daniel Green was LWG's President and majority shareholder, while Maurice Green owned the remainder of LWG's stock and served as Vice President. Under the Purchase and Sale Agreement executed by LWG and Omni Industrial, the sole "consideration" provided by Omni Industrial in exchange for the Property was its agreement with LWG to pay the $631,500 mortgage (with rents that were coming from another Daniel Green entity). Under the Loan Agreement with 1st National Bank executed in conjunction therewith, however, neither Omni Industrial nor its sole shareholder,

Samuel Green, became liable for that debt. Rather, Daniel Green and Maurice Green remained individually liable for the mortgage loan, along with LWG. Thus, it is only when the two documents are reviewed together, that the fraudulent nature of the transaction becomes apparent. Omni Industrial really gave nothing for the Property – no cash payment and no true assumption of the legal obligation to 1st National Bank.

Despite its diligent efforts to locate potentially responsible parties and hidden assets, the United States was unable to uncover the fraudulent nature of this transaction until the pertinent documents were produced at Daniel Green's deposition and it had the opportunity to question Mr. Green about their contents. The United States was certainly suspicious of Daniel Green in light of his myriad interwoven corporate entities and history of environmental violations. Prior to Daniel Green's deposition, however, the United States was simply unable to identify anything "fishy" about the specific transaction at issue here, LWG's property sale to Omni Industrial. Rather, taken together, all of the information available until then -- the LWG tax return, the proffer interview with Daniel Green, the title search, the interviews with Beverly Grinstead[13] -- indicated that the Property had been transferred for value.

Indeed, far from supporting Omni Industrial's position, Daniel Green's misstatements during the 1996 proffer interview provide a basis for finding defendants equitably estopped from

---

[13] The Grinstead interview notes (attached hereto in full as Exs. 4 and 9) illustrate the scope of the United States' task in assessing potential claims against Daniel Green and his corporate entities. As Omni Industrial notes, Ms. Grinstead had previously been convicted of embezzling from the Greens. It was therefore incumbent upon the United States to soberly assess her statements and separate the factual allegations from any biased spin to determine whether a particular transaction might constitute a fraudulent transfer. Nothing in Ms. Grinstead's contradictory statements was sufficient to place the United States on notice that it had an actionable fraudulent transfer claim against LWG with regard to its conveyance of the Property. See Exs. 4 and 9.

asserting a statute of limitations defense.  See <u>Hill v. United States Dept. of Labor</u>, 65 F.3d 1331, 1335 (6th Cir. 1995).  By stating that he may have received cash from the property sale to Omni Industrial, Daniel Green affirmatively misstated the critical element of the transaction at issue -- whether Omni Industrial provided any consideration for transfer.  <u>Supra</u> at 6-7.  Likewise, in stating that neither he nor his father were involved in the transaction, Daniel Green misled U.S. EPA regarding the insider nature of the sale.  <u>Id.</u>

As Omni Industrial has failed to set forth new facts which render the Court's prior application of the law inaccurate, the Court's holding that the United States' fraudulent transfer claim is not time-barred remains "law of the case" and Omni Industrial's motion should be denied.

      **C.**      **A Finding that the United States' Fraudulent Transfer Claim is Timely is Supported by Statutory Intent and Public Policy Considerations.**

The final element for consideration in determining whether review of the "law of the case" is appropriate, is whether application of the earlier decision would "work a substantial injustice."  <u>See</u> <u>Coal Res., Inc. v. Gulf & W. Indus. Inc.</u>, 865 F.2d 761, 767 (6th Cir. 1989).  Nothing of the sort is present here.  Rather, it is Omni Industrial which proposes an interpretation and application of the FDCPA statute of limitations which would work injustice.  Omni Industrial would require the United States to investigate every transaction it becomes aware of in order to determine whether or not such transaction is potentially fraudulent or risk being time-barred.  Such a construction is at odds with the explicit language of the FDCPA, which states that "the Act should be construed to make debt collection easier . . . ."  28 U.S.C. § 3003.

Moreover, Omni Industrial's arguments are in direct conflict with the well-settled

proposition that "[s]tatutes of limitation sought to be applied to bar rights of the Government must receive a strict construction in favor of the Government." Badaracco v. Commissioner, 464 U.S. 386, 391 (1984), quoting E.I. DuPont de Nemours & Co. v. Davis, 264 U.S. 456, 462 (1924).  LWG has been found jointly and severally liable to reimburse the United States for costs incurred in cleaning up the Green Industries Site, but LWG currently lacks any assets.  The fraudulent transfer claim is necessary to potentially recoup a portion of the millions of federal dollars spent on the clean-up.  The aggressive interpretation and application of the FDCPA's statute of limitations sought by Omni Industrial is contrary to statutory interpretation norms and the explicit purpose of the FDCPA itself.  As Omni Industrial has not shown that this Court's earlier ruling would work a substantial injustice, its *Motion for Summary Judgment* should be denied.

## IV.  CONCLUSION

The FDCPA was enacted to facilitate the United States' collection of debts.  Here the United States seeks to void a fraudulent transfer, so as to secure assets necessary to satisfy in part the previously adjudicated liability of LWG under CERCLA.  This Court has previously held that the United States brought its fraudulent transfer claim within the limitations period.  As Omni Industrial has failed to show that the "law of the case" should be reconsidered, Omni Industrial's *Motion for Summary Judgment* should be denied.

Signature page for **Plaintiff United States' Opposition to Motion for Summary Judgment** filed in <u>United States v. Daniel Green</u>, Case No. 1:00-cv-637 (S.D. Ill.).

        Respectfully submitted,

Dated: July 21, 2006        SUE ELLEN WOOLDRIDGE
        Assistant Attorney General
        Environment and Natural Resources Division
        United States Department of Justice


          s/ Jeffrey A. Spector
        JEFFREY A. SPECTOR
        Trial Attorney
        Environmental Enforcement Section
        Environment and Natural Resources Division
        U.S. Department of Justice
        P.O. Box 76ll
        Washington, D.C. 20044-7611
        Tel: (202) 514-4432
        Fax: (202) 616-6584

        GREGORY G. LOCKHART
        United States Attorney
        GERALD F. KAMINSKI (OO12532)
        Deputy Civil Chief
        Office of the United States Attorney
        221 East Fourth Street, Suite 400,
        Cincinnati, OH 45202
        Tel: (513) 684-3711
        Fax: (513) 684-6710

OF COUNSEL:

RICHARD R. WAGNER
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd.
Chicago, IL 60604
(312) 886-7947

## CERTIFICATE OF SERVICE

      I hereby certify that on July 21, 2006 I electronically filed the foregoing **Plaintiff United States' Opposition to Motion for Summary Judgment** with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to the following:

David A. Owen (dao@gdm.com)
Counsel for L.W.G. Co., Inc. and Omni Industrial Properties, Inc.

                                             s/ Jeffrey A. Spector
                                             Jeffrey A. Spector
                                             Trial Attorney
                                             Environmental Enforcement Section
                                             Environment and Natural Resources Division
                                             U.S. Department of Justice
                                             P.O. Box 76ll
                                             Washington, D.C.  20044-7611
                                             Tel: (202) 514-4432
                                             Fax: (202) 616-6584