UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
CIVIL ACTION NO. C-1-00-637
JUDGE SUSAN J. DLOTT

---

**DEPOSITION OF SAMUEL GREEN**

---

UNITED STATES OF AMERICA                         PLAINTIFF

v.

DANIEL GREEN, et al.                             DEFENDANTS

---

The deposition of **SAMUEL GREEN** was taken on behalf of the plaintiff before Ann Hutchison, Registered Professional Reporter and Notary Public in and for the State of Kentucky at Large, at the law office of Greenebaum Doll & McDonald, 300 West Vine Street, Suite 1100, Lexington, Kentucky, on Monday, March 13, 2006, beginning at the hour of 9:12 a.m.  Said deposition shall be used for all purposes allowed by the Federal Rules of Civil Procedure.

---

**ACTION COURT REPORTERS**
184 North Mill Street
Lexington, Kentucky 40507
(859) 252-4004

```
 1   No. 3 is a three-page document bearing the document
 2   identification number Omni-0504 through Omni-0506.  It
 3   bears the title "Action by the Sole Director of Omni
 4   Industrial Properties, Inc. By Written Consent," and
 5   attached is an unsigned Purchase and Sale Agreement.
 6                  Exhibit No. 4 is a three-page
 7   document.  It collects what appear to be three single
 8   memoranda.
 9                  THE WITNESS:  Don't you mean Exhibit
10   No. 3?
11                  MR. SPECTOR:  Oh, you're right.  We're
12   doing 2, 3 and 4.  Sorry.  Appreciate that.  The first
13   one was Exhibit No. 2.  This is Exhibit No. 3, three
14   single sheet documents.  They bear the consecutive
15   document identification numbers Omni-0510 through
16   Omni-0512.  Exhibit No. 4 is a one-page document.  It
17   bears the document identification number Omni-0513.
18       Q.    Let's start with Exhibit No. 2, Mr. Green.
19   Mr. Green, do you see your signature on that document?
20       A.    I do.
21       Q.    Okay.  Do you recognize this document?
22       A.    I do.
23       Q.    Okay.  What is this document?
24       A.    It's the resolution from Omni to acquire
25   the property on LeSaint Drive.
```

```
 1        Q.      And were you the author of this document?
 2        A.      I had counsel do it.
 3        Q.      Do you recall who your counsel was when
 4   this document was generated?
 5        A.      I think I recall.  It's a guess.  I
 6   believe it was Steve Marcum.
 7        Q.      Do you know what firm Mr. Marcum was with?
 8        A.      Marcum, Parrish, Frye, [sic] or Frye,
 9   Parrish Marcum, or some -- whichever way you wish to
10   interchange them.
11        Q.      Do you know where they were located?
12        A.      Fairfield, Ohio.
13                MR. OWEN:  Could I ask a question
14   about this document, Jeff?  Is it being represented that
15   these two documents were stapled together in the form
16   that they were produced, or did you put them together
17   for purposes of the deposition?
18                MR. SPECTOR:  Stapled together in the
19   form they were produced.
20                MR. OWEN:  Okay.  Thank you.
21        Q.      Mr. Green, we talked a little bit about
22   that you lived in the state of New Jersey for a period
23   of time.  Did you ever reside in Piscataway, New Jersey?
24        A.      Yes, sir.
25        Q.      Did you ever reside in Lawrenceville, New
```

```
 1  Jersey?
 2       A.    Yes, sir.
 3       Q.    Which did you reside at first?  Which
 4  location?
 5       A.    Piscataway.
 6       Q.    Did you reside in Piscataway in or about
 7  December of 1993?
 8       A.    Yes.
 9       Q.    Do you recall when this document was
10  generated?
11       A.    After the sale.
12       Q.    After the sale?
13       A.    At some point.
14       Q.    Okay.  Do you know when you moved to
15  Lawrenceville?
16       A.    '95 maybe.
17       Q.    Do you believe this document was generated
18  after 1995?
19       A.    Probably.
20       Q.    Okay.  Do you recall having a series of
21  board of director notes generated at one time?
22       A.    Yes.
23       Q.    So it's unlikely that you actually signed
24  this on September 30, 1993?
25       A.    It is unlikely.
```

1  Q. In fact, you didn't?

2  A. Probably not, no.

3  Q. We'll talk more about that, the purchase
4  and sale agreement later, but it does reference that the
5  sale took place in April 1994, and we've also discussed
6  the fact that your recollection was Omni was
7  incorporated in 1994. Does reviewing this document
8  refresh your recollection as to when Omni was
9  incorporated?

10  A. I still think -- it doesn't change my
11  answer to you for when I actually did the incorporation.

12  Q. Okay. Do you know why this September 1993
13  date was included in this minute note?

14  A. No.

15  Q. Because to the best of your recollection,
16  Omni didn't exist in September '93?

17  A. To the best of my recollection, Omni did
18  not exist in 1993.

19  Q. Let's look at Exhibit No. 3. This is -- I
20  mentioned is three documents. These were not stapled
21  together. I have collected these three for the sake of
22  this exhibit, as they all seem to deal with a similar
23  subject matter, leases at the LeSaint Drive property.

24      Again, this has a date of October 15, 1993
25  on all three of these documents. Sitting here today, do

```
 1  you believe that these were signed by you in October of
 2  1993?
 3        A.    No.
 4        Q.    Likewise, again they were signed at a
 5  later date, possibly post 1995?
 6        A.    Possibly.  I think the idea was the
 7  effective date.
 8        Q.    Okay.  Again, these are your signatures on
 9  all three pages?
10        A.    Yes, sir.
11        Q.    And these documents as well as Exhibit
12  No. 2, are they maintained by Omni?
13        A.    Yes.
14        Q.    What is Feinblanking Limited, Inc.?
15        A.    A tenant in the property.
16        Q.    Do you know who -- what the ownership of
17  Feinblanking Limited was in 1993?
18        A.    I've never seen their stock certificates
19  and who owns their stock certificates.  I know who the
20  president was.
21        Q.    Okay.  Who was the president?
22        A.    Karl Keyes.
23        Q.    Do you know -- I mean, I understand that
24  you're saying you've never seen the stock certificates.
25  Sitting here today, do you have an understanding as to
```

```
 1          Q.      Were there leases in effect at the
 2   property when you acquired it?
 3          A.      I don't believe so because we -- I had to
 4   draft new leases.
 5          Q.      Were there tenants at the property?
 6          A.      Well, LWG wouldn't have been a tenant.  I
 7   mean, I don't know what their relationship was between
 8   finishing and co, so I have no idea what they had
 9   between them.  Feinblanking was, you know, preexisting
10   and Strong was preexisting.  Now, were those
11   memorialized by leases?  I don't know.
12          Q.      Okay.  No. 5 in the Purchase and Sale
13   Agreement, it discusses assignment of leases.  "Seller
14   hereby agrees to assign to Purchaser all of Seller's
15   interest as owner of the Property in leases to
16   Feinblanking Limited and Strong Manufacturing."
17                  As a signatory to this Purchase and Sale
18   Agreement, reading it back, does that imply to you --
19   does that mean that leases were in existence?
20                  MR. OWEN:  Objection as to form.  Go
21   ahead.
22          A.      The paragraph itself reads as such.
23          Q.      With regard to Item 3, Payment of Purchase
24   Price, it states that "The Property is subject to a
25   first mortgage lien to First National Bank of Warren
```

1  County, Ohio with a balance due of approximately
2  $631,500, with the next payment due May 1, 1994.
3  Purchaser agrees to assume and pay the mortgage
4  indebtedness as due and to hold Seller harmless from all
5  payments and obligations thereunder."
6             Is it your recollection that that is how
7  Omni, in fact, paid for the property?
8        A.    That is how Omni paid for the property.
9        Q.    Okay.  By taking over the mortgage?
10       A.    By the assumption of the mortgage.
11       Q.    By the assumption of the mortgage.  Okay.
12 No cash changed hands?
13       A.    I don't believe there was a cash component
14 on the closing sheet.  I'd have to see it, but no.
15       Q.    Let's turn to Item 8 on the second page.
16 It states Purchaser's Inspection?
17       A.    Uh-huh.
18       Q.    It states "Purchaser is relying solely on
19 Purchaser's examination of the Property."
20             Do you recall whether or not you examined
21 the property prior to the sale?
22       A.    I did.
23       Q.    Okay.  And what did that examination
24 consist of?
25       A.    Walking the property, looking at it,