*Attorney-Client Work Product, FOIA Exempt*
*Investigator's Draft*

### GREEN INDUSTRIES, INC. SUPERFUND SITE
### Record of Interview

| | |
|---|---|
| Witness: | Robin Grinstead |
| Address: | 4984 Lord Alfred Court, Cincinnati, Ohio 45241 |
| Telephone: | H: (513) 469-1277; W: (513) 984-6776; Voice Mail: (513) 786-6855 |
| Interviewed By: | Stacey O'Bryan, Trial Attorney, U.S. Department of Justice<br>Reginald Arkell, Civil Investigator, OCEFT |
| Date of Interview: | January 9, 2001 |
| Interview Location: | Residence of Robin Grinstead |

Pursuant to a memorandum dated February 19, 1999, the Office of Regional Counsel (ORC), Region 5 requested civil investigative assistance from the OCEFT Civil Investigator Team and financial analysis from NEIC in the matter of the Green Industries Corporation Superfund Site ("the Site") in Sharonville, Ohio. Approximately $4 million was spent by U.S. EPA to remediate uncontrolled hazardous materials abandoned at the Site. Previous activity at the Site included electroplating operations from approximately 1978-1995. Operators during a portion of this time were Creutz Plating Company, Norwood Hard Chrome ("NHC") and Green Industries, Inc. ("GII"). GII eventually absorbed the other two companies. GII continued plating operations until the Site and facility was sold to H.R.W. Industries, Inc. ("HRW") in 1988. HRW changed its name to Green Industries Corporation ("GIC") and continued electroplating operations until they filed for bankruptcy in 1995. Region 5 was seeking assistance in gathering information concerning liability, verification of financial information provided and in investigating current finances of PRP's. A Report of Investigation, dated August 1999, was provided.

In December 2000, Stacey O'Bryan, Trial Attorney, U.S. Department of Justice, requested that CI Reginald Arkell accompany her to conduct additional interviews of key witnesses. Reference is made to a attached report, dated March 18, 1999, which documents a previous interview of Robin Grinstead by the CIT and other reports, dated October 24, 1996 and January 7, 1997, documenting interviews of her by the Federal Bureau of Investigation. On January 9, 2001, Ms. O'Bryan and CI Arkell met with Robin Grinstead at her home. The following information was obtained.

*Attorney-Client Work Product, FOIA Exempt*
*Investigator's Draft*

▸ Robin Grinstead provided a business card which shows her as a mortgage executive with Sibcy Cline Mortgage Services, 8044 Montgomery Road, Suite 301, Cincinnati, Ohio 45236. She has been divorced from her husband who is seeking monetary support from her for their children. Robin Grinstead said that her court supervision for her embezzlement conviction will be ending in the near future. She mentioned that part of the requirements of the supervision require her to cooperate with authorities concerning investigation of GII. She introduced Kenneth Rowe as her boyfriend. He was present during the interview.

▸ Robin Grinstead said that she was originally hired in late 1988 to work as a secretary/bookkeeper for Karl Keyes and Maurice Green at Feinblanking, Ltd. (9461 Le Saint Drive, Fairfield, Ohio) and for Maurice Green, personally. She took care of accounts payable and accounts receivable in addition to other accounting matters. She eventually did this for LWG (Little Weenie Green), Inc. and other companies started by Maurice Green and/or Daniel Green. Robin Grinstead said that Karl Keyes wanted to run Feinblanking, Ltd. legitimately and eventually bought out Maurice Green. Feinblanking, Ltd. made payments of about $4,000.00 per month to Maurice Green personally to cover rent at the Le Saint Drive location.

▸ Robin Grinstead recalled that Maurice Green had about $8 million in assets at the time she was hired which was soon after the sale of the GII assets to GIC. This included money in a checking account, an Advest account and other investments. She said Maurice Green made statements that he could not let the U.S. EPA, IRS, GIC, and his ex-wife, Delores Green find and get at his money. When told that the Hamilton County Probate Court had a 1984 will on file for Maurice Green she said that she had seen an updated will while she was at LWG, Inc. She believed a female attorney had worked with him in drafting it. She described Maurice Green as the kind of person who would get rid of somebody if they were in the way.

2

*Attorney-Client Work Product, FOIA Exempt*
*Investigator's Draft*

She recalled him bragging that the chromatic acid he put into the ground at the Site made the root beer sweeter at a nearby A&W. He had a girlfriend by the name of Linda Wolfer who used the nickname "Murph". Daniel Green was a family man who would usually go along with what Maurice Green said or did as he was very controlling. Janie is the bookkeeper at LWG, Inc. currently.

▸ Robin Grinstead said that, when she first started working at Feinblanking, Ltd., Daniel Green was working for GIC and would come over to Feinblanking, Ltd. at the end of the day. At the time, Maurice Green and Daniel Green were setting up a new plating company called LWG, Inc. They were conspiring with their old employees at GIC to get them fired so they could be hired at LWG, Inc. Although, Maurice Green was not allowed to be involved with any new company because of tax troubles he had. The Greens were very tight lipped about all aspects of their operations. Maurice Green collected a salary from LWG, Inc. which he used to make house payments to Daniel Green and Linda Wolfer. This was in addition to a regular mortgage he had with a bank. She kept records of all three payments, however, Linda Wolfer eventually took over tracking these payments. The employees the Greens took from GIC included Frank McFarland, Dale West, Ray Acree, Ray Tenley, Jim Bowman and Dave Emo. She said many of the Green's employees were paid in cash. Company vehicles were sold at a loss to employees. Some of the aforementioned employees were made shareholders of LWG, Inc. This was listed in company meeting minutes but there were not any stock certificates and the employees never received any monetary benefits related to this.

▸ Robin Grinstead stated that other companies were started by Maurice Green and/or Daniel Green at Le Saint Drive such as LWG AU, Inc., LWG Finishing, Norwood Hard Chrome, and Omni Properties, Inc. but they were all the same company. Omni stood for Old Man something or other. She said Omni Properties, Inc. was created by Daniel Green for ownership of the LWG, Inc. property.

*Attorney-Client Work Product, FOIA Exempt*
*Investigator's Draft*

Omni Properties, Inc. purchased this property for $825,000.00. The money went to 1st National Bank. Sam Green was listed as the owner of Omni Properties, Inc. LWG, Inc. would then make rent payments to Omni Properties, Inc. This arrangement was set up when the IRS started investigating. Strong Manufacturing was another company at the Le Saint Drive location that was operated by the Strong brothers. Another unknown company created by the Greens was put under the direction of Linda Wolfer. The Greens frequently had Robin Grinstead transfer and loan money between all of the companies they created and to and from themselves. These amounts would be anywhere from $50,000.00 to 100,000.00. Robin Grinstead said Maurice Green and Daniel Green pulled company blank checks out of numerical sequence and held them until such a time when they needed to show a loss or write checks to themselves for bonuses. Daniel Green was the one in charge of trying to make it appear that each of the companies were legitimate and had separate finances but this was bogus. She stated that, at the direction of Maurice Green and Daniel Green, she maintained two sets of accounting records for each of the aforementioned companies they set up. The Greens were just trying to make more money and confuse the IRS. She said they would laugh at the IRS and said "let them figure it out".

Robin Grinstead said that none of the corporations created by the Greens were legitimate. Maurice Green, Daniel Green and her would make up corporate meeting minutes although there were never any formal corporate or shareholders meetings. Employees were treated well to keep quiet. Robin Grinstead recalled that she got a $2,000.00 cash bonus from Maurice Green during her first year working there. He also personally gave her $1,000.00 for a down payment on her home about ten years ago. Employees got cash bonuses such as $200.00 and Kroger coupons at Thanksgiving. Dave Emo received a $5,000.00 cash bonus once. She said payments such as these was how Maurice Green kept people under his thumb. Robin Grinstead recalled GIC suing LWG, Inc. and the Greens for violating the no-compete clause.

4

*Attorney-Client Work Product, FOIA Exempt*
*Investigator's Draft*

The Greens went through invoices and destroyed evidence that they were competing with GIC through their new companies. Maurice Green and Daniel Green said that Bernie Harris was a problem to them. The LWG, Inc. employees working in the back would laugh about the Greens putting things over on Bernie Harris.

▸ Robin Grinstead stated that the Greens had bank accounts at P&C Bank on 4th Street in Fairfield for LWG, Inc. and their other companies. She recalled going there frequently to have company checks cashed. She dealt with "Patty" at the bank but the amounts were frequently so high that she would interface with the bank president directly. Maurice Green always had a safe full of money at LWG, Inc. The safe disappeared after the IRS started investigating. She believed he also had money in Germany because he and his ex-wife, Delores Green, had property there. Robin Grinstead mentioned that Maurice Green also took a week long trip out of Ohio while he had been on probation requiring him to stay in state. This probation was part of his sentence for violations he was convicted of at the Site. Although, Maurice Green had told Robin Grinstead and others that he had taken the rap there for Daniel Green. She was aware that Daniel Green had traveled to Myrtle Beach on at least one occasion.

▸ Robin Grinstead recalled how she had seen state income tax returns for Daniel Green which showed that his children each had bank accounts of over $1 million. She said finances from LWG Finishing, Inc. and the Greens other companies were used to pay for their personal income taxes, and other miscellaneous personal expenses charged to their credit cards. These credit cards included 1st National Bank and American Express. She said Daniel Green was using his wife's name, Sandra Green, to set up Afton Development and arrange financing without her knowledge. Daniel Green loaned $500,000.00 to this company and/or his partner there, John Rehrman, via Omni Properties, Inc. and his other companies. She said Sandra Green had personal credit cards in her name which were paid for by the Greens companies.

5

*Attorney-Client Work Product, FOIA Exempt*
*Investigator's Draft*

- Robin Grinstead recalled Maurice Green asking his ex-wife, Jane Green, to set up an account in her name so he could deposit some of his money there. She said Maurice Green paid thousands of dollars to his attorney, Gerald Lubitsky, who was disbarred and moved to Israel. Money was also wired to Lubitsky there and to Lubitsky's wife who had a different last name. This money was allegedly for attorney fees but she believes it was to hide assets. Robin Grinstead said Maurice Green had a brother in Cuyahoga County by the name of Bernie Green who may have received money from him. This brother died and he took care of the estate. She said Maurice Green paid alimony to one of his ex-wives with funds from LWG, Inc. and or the other aforementioned companies  Company funds also were used to pay for the wedding of Maurice Green's niece, Hilary. She alleged that Maurice Green also transferred financial assets to Rachel Green, the wife of his son, Sam Green. A daughter of Maurice Green, Mary Green, was on the payroll although she did not do any work there. She had a gas card in her name even though she did not use it. Her name was changed to Meredith Green. Robin Grinstead said Maurice Green had money offshore but she did not know where. The Greens loaned and/or transferred money to a company in California by the name of Austral-Calae and its owner, Richard Satee. Maurice Green made frequent $20,000.00 payments, which were considered writeoffs, to Bert Signer for companies or ventures he was operating. One of these was Timber Products. She described Bert Signer as a weasel and slime. Relatives and/or associates of him were Neil Signer and Clifford Ain in Florida both of which were paid money by Maurice Green on behalf of Bert Signer. Tom Wanner was an accountant Maurice Green used for a time. Tom Wanner told her that Maurice Green stopped using him because he would not alter his financial records a certain unknown way. Neil Schulte then became the Greens accountant and told them that they would have to stop co-mingling personal and corporate finances.

6

*Attorney-Client Work Product, FOIA Exempt*
*Investigator's Draft*

▸ Robin Grinstead said Maurice and/or Daniel Green purchased silver and gold under LWG AU, Inc. for investment purposes. Maurice Green hired the Endicotts (Mark and Marilyn) to run the gold business. She said he bought the Endicotts vehicles. Robin Grinstead stated that the Endicotts last lived in Mainesville, Ohio. She looked in her address book and stated that the mother of Mr. Endicott lives at 422 Lindbergh Drive in Dayton, Ohio.

▸ Robin Grinstead said Dave Emo had told her that Cecil Davidson and Tim Smith were GII employees who transported and/or had knowledge of hazardous wastes transported from the Site to an unknown location at the direction of Daniel Green.

▸ Robin Grinstead said that her brother, Derek Kincer, who had worked for GII and GIC previously, still keeps in touch with Daniel Green. Her brother said that Daniel Green has been running a clean operation recently.