IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No. 1:00-CV-637 |
| Plaintiff, | : | |
| v. | : | District Judge Susan J. Dlott |
| | : | |
| Daniel Green, et al. | : | ORDER DENYING MOTION FOR |
| | : | SUMMARY JUDGMENT |
| Defendants. | : | |

This matter comes before the Court on the Motion for Summary Judgment (doc. 88) filed by Defendant Omni Industrial Properties, Inc. ("Omni"). Plaintiff United States of America ("the Government") has asserted claims in this case against multiple defendants arising under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, and/or the Federal Debt Collections Procedure Act ("FDCPA"), 28 U.S.C. § 3301 *et seq*. The Government is seeking to recover costs associated with the clean-up of a plating facility at 3603 Kemper Road, Sharonville, Ohio (the "Sharonville Site") which was owned and operated by Defendant LWG Co. Inc. ("LWG").[1] The Government has asserted claims against other defendants, including Defendant Omni, for the receipt of fraudulent transfers allegedly made to avoid the payment of recovery costs.

Omni asserts that the fraudulent transfer claim asserted against it by the Government is barred by the applicable two-year statute of limitations. The Government opposes the motion. For the reasons that follow, the Court **DENIES** the motion because genuine issues of material

---

[1] LWG was formerly known as and is sometimes referred to in this litigation as "Green Industries."

fact remain in dispute.

I.      **FACTUAL BACKGROUND**

The Government's claim against Omni arises from the allegedly fraudulent transfer of a property identified herein as the Fairfield Property from Defendant LWG to Omni in 1994. As set forth in more detail below, the Government first learned in 1996 that LWG had "sold" the Fairfield Property to Omni. The Government now contends that the "sale" was fraudulent because Omni allegedly paid no consideration for the Fairfield Property; however, the Government maintains that it did not learn the facts supporting this contention that the transfer was fraudulent until 2002. Thus, the statement of facts below focuses on the details of what information the Government learned, and when, about the transfer of the Fairfield Property from LWG to Omni.[2]

LWG owned and operated the Sharonville Site from 1981 through 1988. In 1988, LWG sold the Sharonville Site to HRW Industries ("HRW"). HRW owned and operated the facility until it abandoned it in 1995. After it sold the Sharonville Site, LWG purchased 9461 Le Saint Drive, Fairfield, Ohio (the "Fairfield Property") in 1988.

In April 1994, LWG "sold" the Fairfield Property to Omni purportedly in exchange for Omni's assumption of an approximately $600,000 mortgage owed by LWG to First National Bank of Warren County. It is the position of the Government that Omni, in fact, did not assume liability for the mortgage or pay any other consideration as part of the transaction.

In May 1996, Defendant Daniel Green, the majority shareholder of and an executive

---

[2] The facts as stated are taken from Omni's Proposed Undisputed Facts (doc. 88-9) and the United States' Response to Proposed Undisputed Facts (doc. 89-11), except as otherwise noted.

officer with LWG, received a CERCLA § 104(e) Request for Information from the U.S. EPA concerning the Sharonville Site.  The request sought various information related to Daniel Green's and LWG's ability to pay the clean-up costs for the Sharonville Site.  On June 12, 1996, Daniel Green responded by producing, among other information, LWG corporate tax returns.  LWG's 1994 Corporate Tax Return listed the sale of the Fairfield Property for $612,043 as occurring in that year.

On November 22, 1996, Daniel Green was interviewed in a proffer session at the Potter Stewart U.S. Courthouse in Cincinnati, Ohio in connection with an unrelated criminal investigation.  Daniel Green informed the U.S. EPA during the interview that Omni had purchased the Fairfield Property from LWG in 1994 and that Samuel Green, his brother, owned Omni.  Daniel Green stated that he had no involvement in the transfer of the Fairfield Property.  He also stated that he may have received $15,000 from the transfer.  (Doc. 65-2.)

Daniel Green also informed the U.S. EPA at the 1996 proffer session that he had transferred $200,000, a house, and stock into an account or accounts in the name of his wife, Defendant Saundra Green.  (Id.)

On March 18, 1999, the Government interviewed Robin Grinstead, a disgruntled former employee of one of the Green companies, as part of its investigation of the claims in this matter.  Grinstead had been convicted in 1998 of embezzling funds from Green Industries.  Grinstead alleged the following in the March 1999 interview: Omni was owned by Samuel Green, Daniel Green's brother; she did not know if money changed hands when the Fairfield Property was sold from LWG to Omni; LWG had bought the Fairfield Property for almost one million dollars ($1,000,000) in 1987 and it was worth much more in 1997; Daniel Green had signature authority

3

for Omni and did in fact sign everything for Omni; and Daniel Green maintained the checkbook for Omni and Samuel Green never signed the checks. Omni disputes Grinstead's allegations, but offers the allegations for purpose of showing the Government's notice of the allegations.

In June 1999, the Government contracted for the performance of a title search related to the Fairfield Property. The title search revealed the following relevant information:

- An Open-End Mortgage for $640,000 was recorded for the Fairfield Property in 1991. The borrower was LWG, Co., Inc. and the lender was First National Bank of Warren County. The mortgage was transferred to Omni when Omni acquired the Property in 1994. Finally, Omni recorded a Conditional Assignment of Rents from the Property, naming First National Bank of Warren County as Assignee for the earlier mortgage.

- Samuel Green was the President of Omni and was a signatory to the aforementioned Conditional Assignment of Rents.

The title search was produced to Omni during discovery on March 27, 2006.

In August 1999, a Government investigator completed a report that indicated that LWG originally purchased the Fairfield Property in 1988 for $880,000. The report also stated that Omni was incorporated on September 9, 1993 and that Omni obtained the Fairfield Property in April 1994.

The Government filed its initial Complaint (doc. 1) against LWG, Daniel Green, and Daniel Green's father, Maurice Green on August 4, 2000 and an Amended Complaint (doc. 2) on October 16, 2000, but did not name Omni as a defendant in either pleading. The Amended Complaint added a fraudulent transfer claim against Saundra Green pursuant to the FDCPA. Saundra Green subsequently moved for summary judgment.

On November 28, 2000, the Government sent a letter to Omni, and to its attorney, informing Omni that the instant lawsuit had been commenced by the Government. The letter

4

also stated that the following:

> The United States is continuing its investigation into the relationship between Omni Industrial Properties, Inc. and the parties already named as defendants in this lawsuit [which included LWG]. Due to the complexity of the corporate relationships created by Daniel Green and Maurice Green, the United States has not yet stated a claim against Omni Industrial Properties, Inc. on a . . . fraudulent transfer theory or any other applicable legal theory.

(Doc. 88-6.) The letter further stated that the Government would seek to add Omni as a defendant in this lawsuit if information was discovered during the lawsuit that warranted such action.

On January 7, 2002, the Government filed a Second Amended Complaint (doc. 28), but it did not add Omni as a defendant.

In early February 2002, a copy of the Purchase and Sale Agreement and of the Loan Agreement regarding the 1994 transfer of the Fairfield Property were produced to the Government, in conjunction with the Daniel Green deposition taken in this case. Daniel Green was questioned about the documents and the sale at his deposition.

The Purchase and Sale Agreement for the Fairfield Property transfer was signed by Daniel Green on behalf of LWG and Samuel Green on behalf of Omni. The sale price on the property was $631,500 to be paid by Omni's assumption of a $631,500 mortgage lien on the property to First National Bank of Warren County. (Doc. 89-7.)

The Loan Agreement executed in conjunction with the transfer of the Fairfield Property, in apparent contradiction of the Purchase and Sale Agreement, states that LWG and Daniel Green (along with Maurice Green) remained liable to First National Bank for the approximately $631,500 indebtedness. The Loan Agreement also was signed by Daniel Green on behalf of LWG and Samuel Green on behalf of Omni. (Doc. 89-8.)

On February 9, 2004, the Government moved for leave to amend the Complaint for a third time to add Omni as a defendant, pursuant to Rule 19 of the Federal Rules of Civil Procedure, on the grounds that Omni is liable for a fraudulent transfer in connection with the Fairfield Property transfer from LWG.  (Doc. 63.)  Defendants collectively opposed the motion.  Defendants argued that the claim against Omni was barred by the FDCPA statute of limitations.

On July 20, 2004, the Court issued an Order Ruling on Motions for Summary Judgment as to Liability (doc. 67).  The Court held that the FDCPA statute of limitations applied to the fraudulent transfer claim against Saundra Green.

On April 6, 2005, the Court (per Judge Michael H. Watson) issued a Memorandum Opinion and Order (doc. 76) permitting the Government to amend its Complaint a third time and add Omni as a defendant.  The Court found that the Government did not discover the fraudulent nature of the 1994 Fairfield Property transfer until February 2002 when the purchase and loan documents were produced in conjunction with Daniel Green's deposition.  The Court found that the Government had unduly delayed since February 2002 in moving to add Omni as a defendant, but that Omni had not been prejudiced by the delay.  The Court also found that the two-year FDCPA statute of limitations, 28 U.S.C. § 3306(b), applied to the fraudulent transfer claim against Omni (as it had to the claim against Saundra Green), but that it did not bar the Government's claim against Omni.  The Court concluded that the Government could not have discovered the potentially fraudulent nature of the transfer until 2002.  The Court, therefore, permitted Omni leave to amend.

On April 14, 2005, the Government filed its Third Amended Complaint (doc. 77), naming as defendants Daniel Green, LWG f/k/a Green Industries, the Estate of Maurice Green,

Saundra Green, and Omni. The claim against Omni is for fraudulent transfer of assets in violation of the FDCPA, 28 U.S.C. § 3304(b), including but not necessarily limited to, the transfer of the Fairfield Property from LWG to Omni. (Doc. 77 at ¶¶ 39, 57-58.)

On May 30, 2006, the Court entered a Consent Decree (doc. 87) resolving all of Plaintiff's claims against Daniel Green and Saundra Green. Both the Estate of Maurice Green and LWG are insolvent.

## II.   STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the moving party has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The moving party may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e). The Court's task is not "to weigh the evidence and determine the truth

of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

## III.   ANALYSIS

Omni moves for summary judgment on the grounds that the claim against it is barred by the applicable two-year statute of limitations contained in the FDCPA. The Government contends that Omni is not entitled to summary judgment because Judge Watson previously determined in the Memorandum Opinion and Order that the claim against Omni was not time-barred. The Government further contends that the law of the case doctrine precludes this Court from reversing Judge Watson's determination on this issue absent exceptional circumstances that are not present here. In response, Omni posits that the law of the case doctrine does not apply to a non-dispositive district court opinion and that Judge Watson erred when he determined that the two-year statute of limitations did not preclude the claim against it.

The Court concludes, for the reasons stated below, (1) that the law of the case doctrine applies here, but does not wholly preclude reconsideration of Judge Watson's statute of limitations finding, and (2) that Omni is not entitled to summary judgment because material questions of fact remain .

### A.   Law of the Case Doctrine

The law of the case doctrine states that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Patterson v. Haskins, 470 F.3d 645, 660-61 (6th Cir. 2006) (citation omitted); Westside Mothers v. Olszewski, 454 F.3d 532, 538 (6th Cir. 2006). "Under this law-of-the-case doctrine, a prior

8

ruling may only be reconsidered where: (1) substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." U.S. v. Haynes, 468 F.3d 422, 426 (6th Cir. 2006) (internal quotation and citation omitted). The purpose of the doctrine is "to promote judicial comity, the judicial system's interest in finality, and the efficient administration of cases." In re George Worthington Co., 921 F.2d 626, 628-29 (6th Cir. 1990).

Omni contends that the law of the case doctrine is not applicable here because it applies only to rulings made by the circuit courts of appeal. This argument is attractive upon first glance. Numerous decisions contain language that might appear to support Omni's position. For example only, consider the following cases:

- "The law of the case doctrine precludes consideration of issues that have been *decided in a previous appeal*." Wilson v. Morgan, 477 F.3d 326, 334 (6th Cir. 2007) (emphasis added).

- "*Determinations by a Court of Appeals* become the law of the case and are binding on both the district court on remand and the Court of Appeals upon subsequent appeal." Haynes, 468 F.3d at 426 (emphasis added).

- "Pursuant to the law of the case doctrine, and the complementary 'mandate rule,' upon remand the trial court is bound to proceed in accordance *with the mandate and law of the case as established by the appellate court*." Westside Mothers, 454 F.3d at 538 (emphasis added) (internal quotation and citation omitted).

In none of these cases, however, was the Sixth Circuit purporting to address whether the law of the case doctrine also would apply to earlier rulings made by the district court or by a coordinate court.

In earlier Sixth Circuit and Supreme Court cases, where the courts were presented with this specific issue, the courts determined that the law of the case doctrine would apply to a

9

district court's earlier rulings.  The Supreme Court has stated that "the doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988).  Following that precedent, the Sixth Circuit stated in 1990 that the law of the case doctrine "applies with equal vigor to the decisions of a coordinate court in the same case and to a court's own decisions." U.S. v. Todd, 920 F.2d 399, 403 (6th Cir. 1990).   Relying on these two decisions, Chief Judge James G. Carr in the Northern District of Ohio recently rejected an argument that the doctrine "only applies to appellate decision on remand and not to the trial court's own prior decisions." League of Women Voters of Ohio v. Blackwell, 432 F.Supp.2d 742, 744 (N.D. Ohio 2006); see also In re Compuware Securities Lit., 386 F.Supp.2d 913, 919 (E.D. Mich. 2005) (stating that the law of case doctrine could bar reconsideration of an issue previously decided by the district court).  Based on these decisions, the Court holds that the law of the case doctrine does apply to a district court's own prior decisions.

In a related argument, Omni contends that the law of the case doctrine does not bar a district court from revisiting its prior interlocutory decisions based on Rule 54(b) of the Federal Rules of Civil Procedure.  Rule 54(b) authorizes a court to reconsider any order or opinion that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at any time before the entry of [final] judgment."  Fed. R. Civ. P. 54(b).  "Traditionally, courts will find justification for reconsidering interlocutory orders [under Rule 54(b)] when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice."  Rodriguez v. Tennessee Laborers Health & Welfare Fund, 89 Fed.Appx. 949, 959, 2004 WL 237651, *8 (6th Cir. Feb. 6, 2004); see also Rose v.

Davis, No. C-1-02-271, 2006 WL 1892655, *2 (S.D. Ohio July 10, 2006).  This standard for reconsidering interlocutory orders is so similar to the standard for exceptions to the law of the case doctrine that the distinction that Omni attempts to draw between the law of the case and Rule 54(b) is without meaning.  Under either Rule 54(b) or the law of the case doctrine, the Court must consider whether new evidence mandates a different ruling or whether Judge Watson made a clear error of law that could result in a manifest injustice.  Haynes, 468 F.3d at 426 (standard for exceptions to law of the case doctrine); Rodriguez, 2004 WL 237651, at *8 (Rule 54(b) standard).

**B.     FDCPA Statute of Limitations**

Omni claims that the Government's claim against it is time-barred by the two-year FDCPA statute of limitations.  The FDCPA provides in relevant part as follows:

> (b) Limitation.--A claim for relief with respect to a fraudulent transfer or obligation under this subchapter is extinguished unless action is brought--
>
> (1) under section 3304(b)(1)(A) within 6 years after the transfer was made or the obligation was incurred or, if later, within 2 years after the transfer or obligation was or could reasonably have been discovered by the claimant.

28 U.S.C. § 3306(b).  The Government filed the motion for leave to file the Third Amended Complaint and add Omni as a defendant on February 9, 2004.  Omni contends that the claims against it were time-barred because the Fairfield Property transfer itself had occurred almost 10 years earlier in April 1994 and the Government had first learned about the transfer approximately eight years earlier at the Daniel Green's 1996 proffer session.

The Court, per Judge Watson in the Memorandum Opinion and Order, held that the limitations period began to run only when the Government reasonably could have determined the fraudulent nature of the transfer, not when they simply learned that the transfer had occurred.

Judge Watson held that the Government could not reasonably have determined the fraudulent nature of the transfer of the Fairfield Property until February 2002 when the Government received, in conjunction with Daniel Green's deposition, a copy of the Purchase and Sale Agreement and the Loan Agreement for the Fairfield Property. Omni disagrees that the limitations period does not begin until the Government could have reasonably discovered the fraudulent nature of the transfer. Omni contends that the statute specifies that the limitations period begins to run when the Government discovers the transfer itself. It also disputes when the Government had knowledge that the transfer might be fraudulent. The Court will resolve the former contention and determine what is the triggering event for the limitations period under the FDCPA before addressing the latter contention.

        1.        **Interpretation of the Limitations Period**

Neither this Court, nor apparently the parties, were able to find any caselaw providing a definitive answer to whether § 3306(b)(1) should be interpreted to instruct that the two-year limitations period begins to run only upon discovery of the fraudulent nature of the transfer. Omni contends, based on the plain language of the statute, that the limitations period begins with discovery of the transfer itself. The Government relies on an analogous statutory scheme, the Uniform Fraudulent Transfer Act ("UFTA"), for which the limitations period has been held to run upon discovery of the fraudulent nature of the transfer.

A court in this District has found the FDCPA and the Ohio version of the UFTA to be substantially similar. U.S. v. Billheimer, 197 F.Supp.2d 1051, 1056 (S.D. Ohio 2002) (interpreting FDCPA and O.R.C. § 1336.01 *et seq.*). The UFTA, similar to the FDCPA, requires that suit be brought "within one year after the transfer . . . was or could reasonably have been

discovered by the claimant." O.R.C. § 1336.09(a); see also Fidelity Nat'l Ins. Co. v. Howard Sav. Bank, 436 F.3d 836, 839 (7th Cir. 2006) (same ) (quoting 740 Ill. Comp. Stat. 160/10); Wash. Rev. Code § 19.40.091(a) (same).

Several courts have held that the limitations periods under of the UFTA do not begin to run until the discovery of the fraudulent nature of the transfers. See e.g. Warfield v. Carnie, No. 3:04-cv-633-R, 2007 WL 1112591, *14 (N.D. Tex. Apr. 13, 2007) (holding that the limitations period does not begin under the Washington UFTA until "the 'fraudulent nature' of the transfer is discovered") (quoting Freitag v. McGhie, 947 P.2d 1186, 1190 (Wash. 1997)); In re Southwest Supermarkets, LLC, 315 B.R. 565, 577 (Bankr. D. Ariz. 2004) (holding that the limitations period does not begin under the Arizona UFTA until the creditor knows or has reason to know that the transfer was made with fraudulent intent); Rappleye v. Rappleye, 99 P.3d 348, 355 (Utah App. 2004) (applying the common law fraudulent concealment discovery rule to the Utah UFTA). The Illinois version of the UFTA has been interpreted to instruct that the limitations period for a statute does not begin to run until "discovery that the plaintiff has been wrongfully injured." Fidelity Nat'l Ins. Co., 436 F.3d at 839. The fact that the UFTA limitations periods have been interpreted to begin only upon the discovery of fraudulent nature of the transfer, and not simply discovery of the transfer itself, supports Judge Watson's conclusion that the FDCPA also does not begin until discovery of the fraudulent nature of the transfer.[3] The Court holds that Judge Watson's decision was not clearly erroneous in that he

---

[3] The Court does not purport to have conducted an exhaustive 50-state survey of the UFTA. It suffices to say that the cases cited above were easily found and they offer adequate support for Judge Watson's holding regarding the FDCPA that the Court can conclude that the holding was not clearly erroneous.

applied the correct legal standard.

### 2. Application of the Limitations Period

The application of a discovery rule standard in the FDCPA limitations period imposes upon the Government a corresponding duty to investigate. The limitations period is not simply "2 years after the [fraudulent nature of the] transfer" was discovered, but also "2 years after the [fraudulent nature] of the transfer . . . could reasonably have been discovered." 28 U.S.C. § 3306(b). Courts have imposed a duty to investigate upon potential plaintiffs in regards to other limitations periods containing similar phrases like "knew or should have known." See e.g. Wells v. Norfolk So. Ry. Co., No. 96-5267, 1997 WL 103319, *1 (6th Cir. Mar. 6, 1997) (quoting favorably from a case holding that the discovery rule in a Federal Employers' Liability Act imposes an "affirmative duty to investigate"); Adcor Indus., Inc. v. Bevcorp, LLC, 411 F.Supp.2d 778, 785-86 (N.D. Ohio 2005) (stating that the Ohio discovery rule imposes a duty to inquire and that a party is charged with the knowledge he would have acquired with reasonable inquiry); Ergon, Inc. v. Amoco Oil Co., 966 F.Supp. 577, 582 (W.D. Tenn. 1997) (holding that under Tennessee law the limitations period begins to run and the plaintiff has a duty to investigate after a suspicion of wrongdoing has arisen). Finally, the limitations period can be equitably tolled if despite the Government's diligent investigation, Omni acted to conceal the alleged fraud. See Hill v. U.S. Dept. of Labor, 65 F.3d 1331, 1335 (6th Cir. 1995) ("[A]pplication of equitable principles is warranted when a defendant fraudulently conceals its actions, misleading a plaintiff respecting the plaintiff's cause of action."); Jones v. TransOhio Savs. Ass'n, 747 F.2d 1037, 1039 (6th Cir. 1984) ("Repeatedly throughout our judicial history, the Supreme Court has approved the application of equitable tolling to statutes of limitations to

prevent unjust results . . . ."); Baden-Winterwood v. Life Time Fitness, – F.Supp.2d –, 2007 WL 1346572, *3 (S.D. Ohio May 1, 2007) ("[T]he equitable tolling doctrine is read into every federal statute.").

Accordingly, to overturn Judge Watson's decision, Omni must put forward new evidence that establishes that the Government knew or should have known about the allegedly fraudulent nature of the Fairfield Property transfer more than two years before it moved to have Omni named as a defendant in February 2004. Here, Omni contends that the Government plainly had knowledge that the transfer might be fraudulent at least since November 28, 2000. The argument is based on a letter dated November 28, 2000 from the Government to Omni.[4] The Government stated in the letter that it was investigating the relationship between Omni Industrial Properties, Inc. and the parties already named as defendants in this lawsuit, including LWG; that it had not stated a fraudulent transfer claim against Omni at that time due to the complexity of the corporate relationships created by the Greens; and that it would file suit in the future if it discovered facts that supported a lawsuit. The letter at the least can be read fairly to imply that the Government was suspicious of the connection between Omni and the then-existing defendants in this lawsuit. However, the letter can also be read to imply that the Government did not have sufficient information to name Omni as a fraudulent transfer defendant.

In any event, summary judgment is appropriate only if the material facts are not in dispute and Omni is entitled to judgment as a matter of law. The November 28, 2000 letter does

---

[4] The Court reads Omni's Reply brief to assert that this letter was produced during discovery in this case in the months prior to the filing of the summary judgment motion. (Doc. 90 at 4.) Further, the 2000 letter was not discussed in the parties' briefs concerning the Motion for Leave to File Third Amended Complaint nor in Judge Watson's Memorandum Opinion and Order.

15

not create an undisputed fact that the Government knew or reasonably could have known that the Fairfield Property transfer was fraudulent. Moreover, as Judge Watson suggested, there is evidence in the written report regarding Daniel Green's 1996 proffer statement that Daniel Green affirmatively misstated that (1) he and Maurice Green were not involved in the Fairfield Property transfer and (2) that he may have received a cash payment from the sale. The latter statement in particular suggests that Omni paid consideration for the transfer of the property. A jury might find this to be fraudulent concealment which would toll the application of the limitations period. The Government's 1999 property title search also indicated that Omni paid consideration–the assumption of the approximately $600,000 mortgage. This evidence was ultimately refuted (the Government believes) by the Purchase and Sale Agreement and the Loan Agreement, but these documents were not discovered until 2002. The Court concludes that the material facts presented, and the reasonable inferences arising from the facts, remain in genuine dispute and Omni is not entitled to summary judgment.

**IV.     CONCLUSION**

For the reasons stated above, the Court holds that genuine issues for trial remain. Defendant Omni Industrial Properties, Inc.'s Motion for Summary Judgment is **DENIED**.

IT IS SO ORDERED.

                ___s/Susan J. Dlott_____
                Susan J. Dlott
                United States District Judge