ELECTRONICALLY FILED

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>Plaintiff, )<br>)<br>) CIVIL ACTION NO. C-1-00-637<br>v. )<br>)<br>DANIEL GREEN, L.W.G. CO., )<br>INC. f/k/a GREEN INDUSTRIES ) Judge Susan J. Dlott<br>INC., THE ESTATE OF MAURICE GREEN )<br>and DANIEL GREEN IN HIS CAPACITY AS )<br>THE PERSONAL REPRESENTATIVE OF THE )<br>ESTATE OF MAURICE GREEN, )<br>)<br>Defendants )<br>and )<br>)<br>SAUNDRA GREEN, wife of )<br>DEFENDANT DANIEL GREEN, )<br>)<br>Rule 19 Defendant. ) | |

\* \* \* \* \* \* \* \* \* \*

**RULE 19 DEFENDANT OMNI INDUSTRIAL PROPERTIES, INC.
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

\* \* \* \* \* \* \* \* \* \*

Rule 19 Defendant Omni Industrial Properties, Inc. ("Omni") submits the following Proposed Findings of Fact and Conclusions of Law:

**PROPOSED FINDINGS OF FACT**

1.  From 1981 through 1988, L.W.G. Co., Inc. f/k/a Green Industries Inc. ("LWG") owned and operated a plating business at 3603 Kemper Road, Sharonville, Ohio (the "Sharonville Site").

2.    In 1988, LWG sold the Sharonville Site to HRW Industries, an entity not named in this litigation.  HRW owned and operated the facility as a plating business until it abandoned the facility in 1995.

3.    Subsequent to selling the Sharonville Site, LWG purchased the Fairfield Property in 1998.

4.    Approximately six years later, in April of 1994, LWG sold the Fairfield Property to Omni for $631,500.

5.    In May 1996, Defendant Daniel Green received a CERCLA §104(e) Request for Information from U.S. EPA concerning the Sharonville Site.  The request sought various information related to Daniel Green's and LWG's ability to pay for the United States' costs associated with its clean-up of the Sharonville Site.

6.    On June 12, 1996, Daniel Green responded by producing, among other information, LWG's corporate tax returns for various years including 1994.  LWG's 1994 Corporate Tax Return listed the sale of the Fairfield Property for a sale price of $612,043 as occurring in that year.

7.    On November 22, 1996 in connection with an unrelated criminal investigation, Daniel Green was interviewed in a proffer session at the United States Courthouse in Cincinnati, Ohio.  During that session, as documented by a confidential Memorandum Of Interview (previously submitted to the Court by the United States under seal for in camera review), Daniel Green notified the U.S. EPA that Omni Properties purchased the Fairfield Property from LWG in 1994 and that Samuel Green, Daniel Green's brother, was "the owner" of Omni Properties.

8. On March 18, 1999, a United States Enforcement investigator interviewed Ms. Robin Grinstead, a former disgruntled employee of one of the Green companies regarding various matters related to the United States' investigation of its claims in this matter. A memorandum of that interview, which was produced March 17, 2006 in this matter, details that during that interview, Ms. Grinstead made many allegations regarding the relationship between Omni and LWG and the legitimacy of the 1994 sale of the Fairfield Property to Omni, including comments that it was improper.

9. In June 1999, during its investigation of its potential enforcement claims in this matter, the United States contracted for the performance of a title search related to the Fairfield Property. In addition to other information regarding the property, that title search report details the following information:

- "An Open-end Mortgage for $640,000 was recorded [for the property] in 1991. The borrower was LWG, Co. Inc. and the lender was the First National Bank of Warren County. The mortgage was transferred to Omni when the company acquired the target property in 1994. Finally, Omni recorded a Conditional Assignment of Rents from the target property, naming the First National Bank (of Warren County) as Assignee for the earlier mortgage."
- Sam Green is the President of Omni and was a signatory to the aforementioned Conditional Assignment of Rents.

10. In August 1999, a United States Enforcement Investigator completed a report indicating that LWG originally purchased the Fairfield Property for $880,000.00 in 1988. That report also indicated that Omni was incorporated just prior to Omni's purchase of the Fairfield Property.

11. On August 4, 2000, Plaintiff filed its Complaint in this action. The Complaint contained no allegations against Omni.

12. On October 16, 2000, Plaintiff filed its First Amended Complaint, adding a fraudulent transfer claim against Saundra Green pursuant to the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. §§3001 et seq. The United States claimed that "in approximately 1990" Daniel Green fraudulently transferred certain assets to his wife. The First Amended Complaint contained no claims against Omni.

13. On November 28, 2000, Plaintiff sent a letter to Omni via certified mail, with a copy to the undersigned, stating "The United States is continuing its investigation into the relationship between Omni Industrial Properties, Inc. and the parties already named as defendants in this lawsuit [which included LWG]. Due to the complexity of the corporate relationships created by Daniel Green and Maurice Green, the United States has not yet stated a claim against Omni Industrial Properties, Inc. on a . . . fraudulent transfer theory or any other applicable legal theory."

14. On January 9, 2001, counsel for the United States and the United States EPA investigator, Arkell, conducted another interview of Ms. Robin Grinstead in connection with the further investigation of the United States' claims. Again Ms. Grinstead made several allegations regarding an improper relationship between Omni and LWG.

15. On January 7, 2002, Plaintiff again amended its Complaint, this time to join HST pursuant to a successor-in-interest theory.

16. In early February 2002, a copy of the LWG/Omni Properties April 1994 Purchase and Sale Agreement was produced to the United States. That same month, Daniel Green gave his deposition and was questioned at length regarding the sale.

17. On October 17, 2002, Saundra Green moved for summary judgment on the United States' fraudulent transfer claim against her on the grounds that the claims against her were barred by the FDCPA statute of limitations. (Docket Entry No. 42.) In its brief in response to that motion, the United States acknowledged that it became aware of the transfers that were the subject of the United States' claim in 1996, when Daniel Green testified regarding their occurrence in connection with the aforementioned 1996 proffer statement interview with U.S. EPA.

18. On February 9, 2004, the Plaintiff sought leave to amend for the third time, alleging that Omni was a party to a fraudulent transfer by purchasing the Fairfield Property from LWG. (U.S. Motion for Leave to Amend, Docket Entry No. 63). Defendants collectively opposed Plaintiff's motion, arguing that like the United States' claim against Saundra Green, the United States' claim against Omni was time-barred by the FDCPA and therefore leave to amend should be denied.

19. On July 20, 2004, the Court entered an "Order Ruling on Motions for Summary Judgment." The Court granted Hard Surface Technologies' motion for summary judgment and also ruled on Saundra Green's motion for summary judgment. With respect to the United States' claim against Saundra Green, the Court held that the FDCPA and not the CERCLA statute of limitations applied to the United States' fraudulent transfer claim against Ms. Green. (Order, Docket Entry No. 67 at p. 28). The Court ruled that the United States had conceded that Ms. Green would be entitled to summary judgment in her favor if the FDCPA statute of limitations

5

applied (since the Complaint alleged that the transfers occurred in 1990 and the United States conceded that it learned of the transfers in 1996, but the United States did not amend its Complaint to add a claim against Saundra until August 2000), but declined to dismiss Plaintiff's claims on the basis other asset transfers might be discovered later in discovery (Id. at p. 26, 28-29).

20. On April 6, 2005, the Court (after the matter was transferred to Judge Watson) issued a Memorandum Opinion and Order permitting the United States to amend its Complaint a third time to add Omni pursuant to a fraudulent transfer theory. (Order, Docket Entry No. 76). The Court ruled that, like the United States' claim against Saundra Green, the FDCPA statute of limitations set forth 28 U.S.C. Section 3304(b)(1)(A) and specifically the following statute of limitation: "within two years after the transfer was or could reasonably have been discovered by the claimant" applied. (Id., pp. 9-10). The Court ruled that on the limited facts before it on Plaintiff's Motion to Amend, there were insufficient facts to hold that the United States knew or should have known of the "potentially fraudulent nature of the transfer" and thus insufficient facts to hold that the United States knew or should have known of its potential claim, more than two years before it sought leave to add a claim against Omni in February 2004. (Id. at pp. 11-12). Accordingly, the Court granted leave to amend.

21. On May 30, 2006, the Court entered a Consent Decree resolving all of Plaintiff's claims against Daniel Green and Saundra Green in this matter. (Docket Entry No. 87). As both the Estate of Maurice Green and LWG are insolvent, the only viable claim existing in this matter is the United States' third party claim against Omni.

22. At the trial of this matter, there was no evidence introduced that would support a finding that LWG's transfer of the Fairfield Property to Omni was made with intent to hinder,

delay or defraud a creditor. To the contrary, the only evidence introduced was that due to circumstances surrounding Maurice Green's criminal convictions and the on-going plating operation at the Fairfield Property, the Fairfield Property's market value was diminished. Further, LWG was not aware of any creditors at the time of the sale.

23. There is no evidence to indicate that LWG, or for that matter, Daniel Green retained possession or control of the Fairfield Property after the sale. The company operated by Daniel Green, Hard Surface Technologies, did lease space (and others did as well) from Omni. There was no evidence that the lease arrangements between Omni and its tenants were anything other than arms-length transactions.

24. There was no evidence introduced that LWG had been sued or was threatened with a lawsuit before its sale of the Fairfield property to Omni. In fact, the evidence indicates that any legal disputes that LWG may have had were resolved prior to the time of the transfer.

25. None of Ms. Grinstead's allegations were substantiated.

26. It is uncontroverted that the sale of the Fairfield Property to Omni was a transparent sale in the public record. Moreover, the United States was in the process of multiple investigations of the Greens, and the Greens' companies and had multiple opportunities to ascertain the specific details of the transaction. Further, the United States went so far as to investigate through title searches and interviews of third parties, some of whom were former employees of Maurice and Daniel Green.

27. Given the circumstances surrounding Maurice Green's activities, there is no credible evidence to support a conclusion that the consideration received by LWG was inadequate for the Fairfield Property. The behavior of all the parties involved, Maurice Green,

7

Case 1:00-cv-00637-SJD   Document 99   Filed 07/10/2007   Page 8 of 11

Daniel Green, LWG, Sam Green, and Omni does not support the theory that LWG was attempting to fraudulently transfer an asset to defraud a creditor. First, the entire transaction was transparent and Daniel Green disclosed this transaction in early discussions with the United States. Further, title records clearly indicated the sale of LWG's asset to Omni and given the incredible amount of scrutiny that the United States and the Green related companies, it is clear that the United States either knew or should have known of the transfer of this property to Omni far sooner than the filing of the Third Amended Complaint. Further evidence that supports these conclusions are the November 28, 2000 letters that were sent by the United States to Omni as well as to Hard Surface Technologies and Green Properties, Inc. alleging that they were all subject to an investigation regarding, among other things, fraudulent transfers.

28.   The evidence, when taken as a whole, clearly demonstrates that the United States could reasonably have discovered the alleged fraudulent nature of a potential transfer from LWG to Omni.

29.   This Court finds that the United States cannot meet its burden of demonstrating that the transaction was fraudulent within the meaning of FDCPA, 28 U.S.C. § 3304(b)(1)(A).

30.   The Court finds that Omni purchased the Fairfield Property in good faith for a reasonably equivalent value since the Fairfield Property had diminished market value.

**PROPOSED CONCLUSIONS OF LAW**

1.   Plaintiff's Federal Debt Collection Act, fraudulent transfer claim is time-barred. The FDCPA contains the following statute of limitations:

> A claim for relief with respect to a fraudulent transfer or obligation
> under this subchapter is extinguished unless the action is brought -

>   (1) under section 3304(b)(1)(A) within 6 years after the transfer was made . . . or, if later, within 2 years after the transfer or obligation was or could reasonably have been discovered by the claimant;

28 U.S.C. § 3306(b).  The United States' FDCPA claim against Omni is brought pursuant to Section 3304(b)(1)(A) of the Act.  (See Third Amended Complaint, ¶¶ 64-67.)[1]

    2.    It is undisputed that LWG's sale of its Fairfield Property occurred in April 1994, over twelve years ago and well beyond the above referenced six year limitations period.  As the record clearly establishes, in 1996, the United States had direct knowledge of the 1994 sale to Omni.

    3.    The FDCPA's statute of limitations allows a claimant to file "…within 6 years after the transfer was made or the obligation was incurred or, if later, within 2 years after the transfer or obligation was or could reasonably have been discovered by the claimant…." 28 U.S.C. § 3306(b)(1)(A).  The language of the statute never mentions anything other than the discovery of the *transaction* as the start of the running of the statute.  The language instead indicates that it is the transfer—regardless of its nature or the details surrounding it—which triggers the running of the statute of limitations.  Congress did not intend to place a provision into the statute that purports to limit the time for bringing an action, but instead does nothing to require that the government take timely action to enforce its claims.

    4.    Barring the United State's claim based on the statute of limitations, in addition to being the correct decision under either interpretation of the applicable statute, also promotes the policies of fairness embodied in a statute of limitation.  As the Supreme Court has noted:

>   Statutes of limitation are primarily designed to assure fairness to defendants.  Such statutes "promote justice by preventing surprises

---

[1] The Court previously ruled that the U.S. could not pursue a claim under 28 U.S.C. 3304(b)(1)(B).

>through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."

Burnett v. New York Central Railroad Co., 380 U.S. 424 (1965) (quoting Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348-349 (1944)).

5.      Here, the interests of fairness and justice are threatened if the United States' claim against Omni is allowed to proceed. Nearly a decade passed between the activity that forms the basis of the United States' claim and the actual filing of that claim. During that time, Omni was not "on notice to defend" its actions. Here, justice must be promoted by barring this claim by the United States.

6.      The burden rests on the United States to demonstrate that LWG fraudulently transferred the Fairfield Property.

7.      In an action or proceeding for relief against a transfer, the United States, subject to section 3307 and to applicable principles of equity, may obtain: (a) avoidance of the transfer; (b) a remedy against the asset; or (c) any other relief the circumstances may require 28 U.S.C. § 3306(a). 28 U.S.C. § 3307 limits any remedy, however, to the value of the asset at the time of the transfer. Accordingly, the most the United States could hope to recover would be the difference between the amount paid and the market value of the asset in 1994. Section 28 U.S.C. § 3307(b) and (c).

8.      Omni was a purchaser in good faith for reasonably equivalent value pursuant to 28 U.S.C. § 3307(a).

        Respectfully submitted,

        /s/ David A. Owen
        David A. Owen
        Greenebaum Doll & McDonald PLLC
        300 W. Vine Street, Suite 1100
        Lexington, Kentucky 40507
        COUNSEL FOR THIRD PARTY DEFENDANT
        OMNI INDUSTRIAL PROPERTIES, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of July, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Gerald Francis Kaminski (Gerald.kaminski@usdoj.gov); David J. Schmitt (djs@corsbassett.com); Jeffrey A. Spector (Jeffrey.Spector@usdoj.gov); and Randall Stone (Randall.Stone@usdoj.gov).

I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to the following non-CM/ECF participants:

W. Benjamin Fisherow
Deputy Chief
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
Ben Franklin Station
P.O. Box 7611
Washington, DC 20004

Gregory G. Lockhart
United States Attorney
Southern District of Ohio
Office of the United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202

Richard R. Wagner
Associate Regional Counsel
U.S. Environmental Protection Agency – Region 5
77 West Jackson Blvd.
Chicago, IL 60604

        /s/ David A. Owen
        Counsel for Defendant
        Omni Industrial Properties, Inc.

1770285_1.doc